## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

MELINDA and MARK LOE, on their own
behalf and as next friends of their chil-
dren R.L. and O.L.; DAWN ERICKSON,
on her own behalf and as next friend of
her child J.G.; CROWN COLLEGE; and
UNIVERSITY OF NORTHWESTERN –
ST. PAUL,

     *Plaintiffs,*

  v.

TIM WALZ, in his official capacity as Gov-
ernor of Minnesota; WILLIE JETT, in his
official capacity as Minnesota Commis-
sioner of Education; and MINNESOTA
DEPARTMENT OF EDUCATION,

     *Defendants.*

Case No. _____

**VERIFIED COMPLAINT**

**DEMAND FOR
JURY TRIAL**

## INTRODUCTION

1.  For nearly 40 years, Minnesota's Postsecondary Enrollment Options program
(PSEO) has given high school students free access to college credits at a public or
private Minnesota school of their choice.

2.  The program improves equal access to higher education for all students by let-
ting them find a school that best fits their needs.

3.  But Minnesota has just imposed a new rule that bars religious students from
using PSEO funds at schools that uphold their faith, including Plaintiffs Crown Col-
lege and University of Northwestern – St. Paul.

4.  Over the course of more than 20 years, thousands of students have chosen Crown and Northwestern because of their religious beliefs. Indeed, Northwestern is one of the largest providers of PSEO in the state. In service of their campus Christian communities, Crown and Northwestern have always asked that all students in their on-campus programs share their Christian beliefs.

5.  Schools can apply almost any admissions criteria and still accept PSEO students. But under the new law, if they have a "faith statement" for students or select students based on "religion," they are barred from the PSEO program. H.F. 2497, 93rd Leg. (Minn. 2023).

6.  The Plaintiff Loe and Erickson families include parents and students who are now denied the right to use PSEO funds at the schools of their choice, Crown and Northwestern, simply because of their religious beliefs.

7.  Minnesota knowingly excluded Crown and Northwestern from the PSEO program because of their religious beliefs, even after being warned this was unconstitutional.

8.  In the last six years, the Supreme Court has three times held that once a state opens funding to private institutions, the First Amendment's Free Exercise Clause forbids excluding participants based on their religion or their religious use of the funds. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017); *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2262 (2020); *Carson v. Makin*, 142 S. Ct. 1987, 1997 (2022).

9.  States discriminating against religion have already struck out three times at the Supreme Court. Minnesota should not get a fourth attempt.

10.  Specifically in the education context, the Court has emphasized equal treatment because "religious schools and the families whose children attend them . . . are 'member[s] of the community too.'" *Espinoza*, 140 S. Ct. at 2262.

11.  Plaintiffs bring this civil rights action to stop Minnesota from enforcing its discriminatory law against religious students and schools.

12.  Excluding religious communities from government programs because of their beliefs is "odious to our Constitution . . . and cannot stand." *Trinity Lutheran*, 582 U.S. at 467.

## THE PARTIES

13.  Plaintiffs Mark and Melinda Loe are residents of Excelsior, Minnesota. Their child R.L. is 16 years old and eligible to participate in the PSEO program. Their child O.L. is 13 years old and will be eligible to participate in the PSEO program in two years.

14.  Plaintiff Dawn Erickson is a resident of Arden Hills, Minnesota. Her child J.G. is 16 years old and eligible to participate in the PSEO program.

15.  Plaintiff Crown College is a Christian college located in Saint Bonifacius, Minnesota that requires a statement of faith from its on-campus students.

16.  Plaintiff University of Northwestern – St. Paul is a Christian university located in St. Paul, Minnesota that requires a statement of faith from its on-campus students.

17.   Defendant Tim Walz is the Governor of Minnesota. He is sued in his official capacity.

18.   Defendant Willie Jett is the Minnesota Commissioner of Education. He is sued in his official capacity.

19.   Defendant Minnesota Department of Education is an agency of the State of Minnesota, established and empowered to "carry out the provisions of chapters 120A to 129C and other related education provisions under law." Minn. Stat. § 120A.02. The Department is headquartered in Minneapolis, Minnesota.

## JURISDICTION AND VENUE

20.   This action arises under the Constitution and laws of the United States. The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

21.   The Court has supplemental jurisdiction over Count IX under 28 U.S.C. § 1367(a) for claims brought under the Constitution and laws of Minnesota.

22.   The Court has authority to issue the declaratory and injunctive relief sought under 28 U.S.C. §§ 2201 and 2202.

23.   Venue lies in this district under 28 U.S.C. § 1391(b)(1) because all Defendants reside in the District of Minnesota.

24.   Venue also lies in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred in the District of Minnesota.

## FACTUAL ALLEGATIONS

### *The Minnesota PSEO Program*

25.    In 1985, Minnesota enacted the Postsecondary Enrollment Options Act, creating the PSEO program. Minn. Stat. § 124D.09.

26.    The PSEO program's purpose is to promote "rigorous academic pursuits" and to provide "a wider variety of options" to high school students by enabling them to enroll full time or part time in classes at eligible postsecondary institutions. Minn. Stat. § 124D.09, Subd. 2.

27.    Under the PSEO program, students can simultaneously earn both high school and college credit, cost-free. *See* Minn. Stat. § 124D.09, Subds. 3(c), 12, 13; *see also* Minnesota Department of Education, *Postsecondary Enrollment Options (PSEO) Reference Guide* 5 (2021).

28.    In most cases, the postsecondary institution provides textbooks and other course materials, and the Minnesota Department of Education reimburses the institution for costs and covers a certain percentage of the tuition per credit hour. *PSEO Reference Guide*, *supra*, at 19-20, 26-27; *see* Minn. Stat. § 124D.09, Subds. 13-21.

29.    Minnesota high schoolers are eligible to participate in the PSEO program whether they attend "a public school district, charter school, home school or nonpublic school in Minnesota," and in some instances even if they attend school out of state. *PSEO Reference Guide*, *supra*, at 8-9, 14.

30.    To enroll, students apply directly to their choice of "Eligible Institution[s]," as defined by the Act.

31.  Once a PSEO student is admitted to an Eligible Institution, the student chooses which offered courses to take.

32.  The PSEO program gives postsecondary institutions discretion to "determine admission standards to participate in specific PSEO programs and courses." *PSEO Reference Guide*, *supra*, at 17, 25; Minn. Stat. § 124D.09, Subd. 9(b).

33.  "All courses taken in PSEO must meet graduation requirements at the high school." *PSEO Reference Guide*, *supra*, at 15, 17, 24; *see* Minn. Stat. § 124D.09, Subd. 12(d).

34.  Until today, Minn. Stat. § 124D.09, subd. 3(a), defined "Eligible Institution" broadly: "a Minnesota public postsecondary institution, a private, nonprofit two-year trade and technical school granting associate degrees, an opportunities industrialization center accredited by an accreditor recognized by the United States Department of Education, or a private, residential, two-year or four-year, liberal arts, degree-granting college or university located in Minnesota."

35.  Secular and religious schools have historically qualified, although religious schools must exclude courses that are "sectarian in nature" from their PSEO offerings. *PSEO Reference Guide*, *supra*, at 17; *see* Minn. Stat. § 124D.09, Subd. 2 ("non-sectarian courses or programs").

36.  The Minnesota Department of Education is the state agency responsible for carrying out the provisions of Minnesota's Education Code (chapters 120A to 129C), including the PSEO program. Minn. Stat. § 120A.02(b).

37.  Commissioner Jett is responsible for enforcing PSEO requirements.

6

38.    On information and belief, the Commissioner of Education approves or denies a postsecondary institution's request to be an Eligible Institution.

### *The Exclusion of Religious Educational Communities from PSEO*

39.    On May 17, 2023, the Minnesota Legislature passed a law redefining the PSEO Act's term "Eligible Institution" to explicitly exclude institutions on the basis of faith.

40.    Governor Walz signed the bill into law today, on May 24, 2023, and the law will take effect July 1, 2023.

41.    The text of the law makes clear that it targets religious institutions that promote religious community on their campuses, stating:

> An eligible institution must not require a faith statement from a secondary student seeking to enroll in a postsecondary course under this section during the application process or base any part of the admission decision on a student's race, creed, ethnicity, disability, gender, or sexual orientation or *religious beliefs or affiliations*.

H.F. 2497, 93rd Leg. (Minn. 2023) (emphasis added).

42.    The effect of the amendment is to force religious families like the Loes and the Ericksons to forgo using PSEO funds within the religious environment provided by the religious schools of their choice.

43.    It likewise forces institutions like Crown and Northwestern to choose between their religious practices of requiring a statement of faith on campus and admitting high school students to their on-campus PSEO programs.

44.    The legislative history confirms that amendment's point was to single out these religious institutions.

45.     Representative Laurie Pryor, the author of the of the bill in the House, acknowledged that she knew that Crown and Northwestern would be affected by the law. Minnesota House of Representatives, *House Floor Session 4/20/23 – Part 2*, YouTube, at 3:22:55-3:23:30 (Apr. 20, 2023), https://www.youtube.com/watch?v=Klc95g-ovm4.

46.     Representative Pryor further acknowledged that both institutions shared a common faith tradition, namely "a particular understanding of the Christian faith." *Id.* at 3:25:00-3:25:20.

47.     Representative Pryor also explained that both the faith-statement provision and the antidiscrimination provision were included in the amendment to force schools to admit students without regard to their religious beliefs. *Id.* at 3:15:00-3:16:18.

48.     Other legislators echoed the intent to suppress the schools' religious exercise of providing education within a community of faith.

49.     During the floor debate, Representative Pryor and others unfavorably compared institutions like Crown and Northwestern that require faith statements to other religious institutions that do not. Representative Pryor suggested that Crown and Northwestern do not need a faith statement because "many, many faith institutions across the country, and in Minnesota, are able to be true to their faith and their mission and still accept students without compelling them to sign a statement." *Id.* at 3:23:56-3:24:14.

50.     Representative Pryor and others also expressed their disapproval of institutions that require faith statements because the legislators disagreed with the beliefs those institutions embrace.

51.     Upon learning of the proposed amendment language, Plaintiffs Crown and Northwestern understandably were concerned that they would be forced to choose between maintaining a faith-based campus community and participating in the PSEO program.

52.     Crown and Northwestern representatives met with state officials on multiple occasions and explained that they could not alter their religious practice of requiring students to sign their statement of faith.

53.     In one instance, a Crown representative met with Eric Taubel, the Department's General Counsel; Adosh Unni, the Department's Director of Government Relations; and Sydney Spreck, a policy advisor to Governor Walz.

54.     Crown asked for the government's reason behind the amendment. Ms. Spreck responded that public education dollars should stay within the public education system.

55.     The amendment does not, however, limit PSEO access to all public education.

56.     Instead, the new exclusions are focused on two faith-based institutions: Crown and Northwestern.

57. Indeed, during meetings of the Senate Committee on Education Policy, members of the committee stated clearly their intent to exclude religious schools from receiving public dollars.

### The Loe Family

58. Mark and Melinda Loe are residents of Excelsior, Minnesota. They are the parents of seven children, and they are suing on behalf of two of their minor children, R.L. and O.L.

59. The Loes are a Christian family, and they include Jesus Christ and His teachings at the center of everything they do.

60. The Loes have homeschooled each of their children to provide a Christ-centered learning environment through their children's formative years.

61. The Loes's two oldest children participated in the PSEO program. Their oldest child took courses through Crown, and their second oldest through Northwestern.

62. Their child R.L. will be a junior in high school during the 2023-24 school year. R.L. is eligible to participate in the PSEO program.

63. R.L. has applied for the on-campus PSEO program at Northwestern because R.L. wants to be part of a faith-based community that offers the opportunity to join with fellow believers in receiving a quality, Christ-centered education.

64. R.L. intends to study nursing at Northwestern. To do so, R.L. will need to attend classes in person, rather than online, because certain courses have laboratory components that are not offered remotely.

65.   R.L. has been accepted into Northwestern's on-campus PSEO program and intends to enroll for both the 2023-24 and 2024-25 school years.

66.   O.L. will be a junior in high school during the 2025-26 school year and will be eligible to participate in the PSEO program at that time.

67.   O.L. hopes to apply for the on-campus PSEO program offered at Crown or Northwestern because of their on-campus faith communities and, if accepted, would plan to enroll for two years.

68.   Because of the amendment, however, Crown and Northwestern no longer qualify as Eligible Institutions for their on-campus PSEO programs.

69.   The Loes are therefore unable to use PSEO funding to participate in either Crown's or Northwestern's on-campus programs.

### *The Erickson Family*

70.   Dawn Erickson resides in Arden Hills, Minnesota. She is the mother of four children, and she is suing on her own behalf and on behalf of her child, J.G.

71.   Ms. Erickson has homeschooled her children to educate them in a Christian learning environment. She and her children have participated in a homeschool co-op with other Christian families.

72.   Ms. Erickson's three oldest children participated in the PSEO program at Northwestern.

73.   Her oldest child did PSEO for two years at Northwestern and was then able to finish college in two and a half years, with significant financial savings.

74.   Ms. Erickson's second child is currently a junior at Northwestern after completing two years of PSEO there.

75.   He initially planned to do two years of PSEO, then attend college out of state. But after his first day of orientation at Northwestern's PSEO program, he told his mother he had changed his mind—he knew Northwestern was the school for him.

76.   He now plans to graduate from Northwestern next year.

77.   Ms. Erickson's third child is currently completing his second year in the PSEO program at Northwestern.

78.   J.G., Ms. Erickson's youngest child, is 16 years old and is homeschooled. J.G. attends selected classes at the local public school.

79.   J.G. is eligible for the PSEO program and hopes to participate in the program at Northwestern as a high school senior.

80.   Because of the amendment, however, Northwestern no longer qualifies as an Eligible Institution for its on-campus PSEO program.

81.   The Erickson family is therefore unable to use PSEO funding to participate in Northwestern's on-campus program.

### *Crown College*

82.   Crown College is a Christian college located in Saint Bonifacius, Minnesota.

83.   Crown was founded in 1916 when a local farmer asked Reverend J.D. Williams and his wife to teach him the word of God.

84.   Reverend Williams began teaching evening classes with just over 40 students. He soon created an official school, known as the Alliance Training Home.

85. Since its founding, the school that became Crown College has been aligned with the Christian and Missionary Alliance denomination.

86. Crown is one of four Christian and Missionary Alliance colleges in the United States. The Alliance seeks to build up Christ's church by carrying His gospel to every nation, building Christian disciples, and teaching them to obey God's commandments.

87. "The mission of Crown College is to provide a biblically-based education for Christian leadership in the Christian and Missionary Alliance, the Church-at-large, and the world." *About—History*, Crown College, https://perma.cc/TUD7-W9KD.

88. This mission permeates all that Crown does. For example, on-campus undergraduate Crown students participate in a "Spiritual Formation Program."

89. This program fosters faith formation by encouraging students to participate in chapel services and other biblical study groups as well as community service. Prayer and worship are part of the day-to-day life for the campus community, with classes and meetings beginning with prayer.

90. Crown fosters a culture of worship, prayer, and service for all students, faculty, and staff.

91. Because Crown seeks to be a Christ-centered community, all students who attend Crown on-campus must sign its Statement of Faith and Community Covenant, which affirm Crown's Christian beliefs.

92.     Crown believes that requiring all members of the on-campus community to sign the statement of faith fosters a strong Christian community and creates a Christ-focused culture.

93.     All members of the Crown on-campus community, including students, "commit to the Lordship of Christ" by committing themselves "to His Church, to prayer, worship, Bible study, fasting, discipleship, witnessing, and using [their] time, gifts, and finances for His glory." *Our Beliefs*, Crown College, https://perma.cc/JW4V-93U4.

94.     Members of the Crown campus community are called to "live out Christian character toward one another" by "develop[ing] spiritually, physically, intellectually, emotionally, and socially." *Id.*

95.     They also commit to "[l]iving out Christ's character" by avoiding certain behaviors, including "sexually immoral behavior (e.g., all sexual relations outside the bounds of marriage between a man and a woman)." *Id.*

96.     These requirements apply only to Crown's on-campus students. Because remote students do not share in the community in the same way that on-campus students do, remote students are not required to sign Crown's Statement of Faith or Community Covenant.

97.     Crown thus allows all students, regardless of their religious beliefs, to take courses remotely.

98.     Remote courses still uphold Crown's Christian values and present subjects in a manner consistent with Crown's beliefs and practices.

99.  Crown has participated as an Eligible Institution in the PSEO program since 2002, when the Department first approved it.

100.  Crown has complied with all eligibility requirements since its initial approval for the program.

101.  Since the time it was approved as an Eligible Institution, Crown has required on-campus PSEO students to sign Crown's Statement of Faith and Community Covenant.

102.  Crown currently participates in the PSEO program by offering 310 PSEO-eligible courses.

103.  In addition to its PSEO-eligible courses, Crown offers high school students the opportunity to take dual credit courses that are not PSEO-eligible at a reduced cost. The Department does not reimburse Crown for these courses.

104.  The number of students that Crown admits for PSEO on campus has grown in recent years. It currently admits up to 70 on-campus students each year.

105.  These students are welcomed and integrated into the Crown campus community. They are encouraged to participate in campus events and clubs and are made to feel as much a part of the community as any other student.

106.   PSEO students can also participate through online courses or courses offered through a high school partnership.

107.  In 2020, Crown provided PSEO students with more than 4,393 total credit hours. *See* Minnesota Department of Education, *Rigorous Course Taking: Advanced*

*Placement, International Baccalaureate, Concurrent Enrollment and Postsecondary Enrollment Options Programs*, 55 (2022), https://perma.cc/KCS8-PVPU.

108.  An average of 29 percent of on-campus PSEO students have matriculated to Crown as undergraduate students after high school over the past nine years.

109.  Providing a Christ-focused environment for its students is a core part of Crown's religious mission. As the school tries to carry out Christ's Great Commission to "make disciples of all nations," *Matthew* 28:19 (NIV), it believes that its own community must be a bastion of Christian discipleship. Having a strong, faithful community and educational experience equips Crown's graduates to go into the world as Christian leaders and build the Church wherever they may go.

110.  Crown thus intends to continue requiring all on-campus students—including on-campus PSEO students—to sign and live by its Statement of Faith and Community Covenant.

111.  Due solely to the amendment's exclusion of religious institutions, and despite being otherwise qualified, after July 1, 2023, Crown will no longer be eligible to receive PSEO funds for its on-campus courses.

112.  Crown wants to continue to participate in the program and offer on-campus PSEO students a unique, religious educational experience.

113.  Crown has admitted 70 on-campus PSEO students for the 2023-24 school year. It does not intend to admit any on-campus PSEO students for the following year if the amendment remains in effect.

114.   Although Crown will no longer qualify for PSEO reimbursement for its on-campus courses after July 1, 2023, it has decided to honor its commitments to students already admitted on-campus for the 2023-24 school year by offering them dual-credit courses and risking the possibility that it will not be reimbursed.

115.   But after next year, Crown cannot sustain the cost of admitting on-campus PSEO students and must either decline admission or charge high school students full tuition.

116.   Losing the on-campus PSEO program would cause significant harm to Crown in the form of lost revenue and recruiting opportunities.

117.   While high school students could still enroll in dual-credit courses at their own expense, many would not choose to do so because of the cost. They may also not be able to receive high school credit for such courses.

118.   The Crown campus community would also suffer because of the loss of the on-campus PSEO program.

119.   PSEO students are integrated into many extracurricular activities across the campus, including the worship team, the communications and videography team, the choir, and sports teams.

120.   Losing the on-campus PSEO program would also harm Crown's recruitment efforts. Besides the significant number of PSEO students that ultimately matriculate as undergraduate students, many students learn about Crown because of its PSEO offerings.

121.   Even if those students are not admitted as PSEO students, many still attend after graduating high school because they formed a good opinion of the school while considering and applying for Crown's on-campus PSEO program.

122.   On information and belief, some high school guidance counselors heard about the amendment before it was passed and told students they should not apply for Crown's on-campus PSEO program.

123.   This hurt Crown's ability to communicate with and recruit these students for its on-campus community.

### *University of Northwestern – St. Paul*

124.   Northwestern is a Christian university located in St. Paul, Minnesota.

125.   Originally known as Northwestern Bible and Missionary Training School, Northwestern was founded in 1902 by well-known pastor and evangelist William Bell Riley.

126.   Northwestern's second president, Reverend Billy Graham, helped the school expand, gain national prominence, and eventually move to its own campus near Loring Park in Minneapolis, Minnesota.

127.   After a brief closure for restructuring and relocation, Northwestern opened its current location in St. Paul.

128.   There, under the guidance of many faithful leaders, the school has continued to flourish and provide a Christian education to thousands of students.

129.   Northwestern "exists to provide Christ-centered higher education equipping students to grow intellectually and spiritually, to serve effectively in their professions, and to give God-honoring leadership in the home, church, community and world." *Mission and Vision*, University of Northwestern – St. Paul, https://perma.cc/CJ7P-8YFL.

130.   Northwestern incorporates its religious mission into everything it does.

131.   For example, the school provides regular chapel services and other faith-formation events for campus community members. Faculty and students pray to begin classes and staff meetings. And the school encourages students to continually worship God and to serve the community in accordance with their Christian beliefs.

132.   All students who attend Northwestern on-campus must sign its Declaration of Christian Community, which affirms Northwestern's Christian beliefs.

133.   Members of the Northwestern community, including students, declare that their "relationship to Jesus Christ and commitment to obey God's Word will be at the very center" of all that they do. *Declaration of Christian Community*, University of Northwestern – St. Paul, https://perma.cc/538P-YVKX.

134.   Students and other Northwestern community members "strive to create an atmosphere of Christ-centered community" and "put [their] relationship to Jesus Christ at the center of [their] lives and [their] studies." *Id.*

135.   This leads members of the Northwestern community, including students, to "condemn oppression" in all forms and to "humbly work[] toward loving all people with the genuine love of Christ." *Id.*

136. Members of the Northwestern community also affirm that they "support the sanctity of marriage . . . [and] define marriage as being a covenant between one man and one woman." *Id.*

137. These requirements do not apply to Northwestern's online program offerings because students attending online courses do not live in this Christian community like students who attend in person.

138. Northwestern thus allows any student to enroll in its online course offerings without regard to religious belief.

139. Northwestern continues, however, to uphold its Christian values in its online courses and teach in light of its Christian beliefs and practices.

140. Northwestern has participated in the PSEO program as an Eligible Institution for over 25 years.

141. Northwestern has complied with all eligibility requirements since its initial approval for the program.

142. Since the time it was approved as an Eligible Institution, Northwestern has required on-campus PSEO students to sign Northwestern's Declaration of Christian Community.

143. Northwestern currently participates in the Minnesota PSEO program by offering 515 PSEO-eligible courses.

144. In addition to its PSEO-eligible courses, Northwestern offers high school students the opportunity to take dual credit courses that are not PSEO-eligible at a reduced cost. The Department does not reimburse Northwestern for these courses.

145.  In 2020, Northwestern provided more PSEO credits than any other postsecondary institution in Minnesota.

146.  Of the over 170,000 credit hours submitted for reimbursement to the Department, Northwestern provided 24,947 credit hours—nearly 15 percent of the total. *See* Minnesota Department of Education, *Rigorous Course Taking: Advanced Placement, International Baccalaureate, Concurrent Enrollment and Postsecondary Enrollment Options Programs*, 56 (2022), https://perma.cc/KCS8-PVPU.

147.  Northwestern admits between 200 and 300 on-campus PSEO students each year.

148.   Approximately 1200 to 1300 PSEO students participate each year through online courses or courses offered through a high school partnership. These students are not required to sign Northwestern's statement of faith.

149.  Approximately 40 percent of PSEO students ultimately matriculate to Northwestern as undergraduate students after high school.

150.  Northwestern intends to continue to require all students on their campus—including PSEO students—to sign and live by its Declaration of Christian Community.

151.  Due to the amendment's exclusion of religious institutions, and despite being otherwise qualified, Northwestern will no longer be eligible to offer on-campus PSEO courses after July 1, 2023.

152.  Northwestern wants to continue participating in the program and offering on-campus PSEO students a unique educational experience.

153.  Northwestern has already admitted 183 on-campus PSEO students for the 2023-24 school year.

154.  Although Northwestern will no longer qualify for reimbursement under the PSEO program after July 1, 2023, the school has decided to offer dual-credit courses for the PSEO students already admitted for the 2023-24 school year at the risk of not being reimbursed by the Department.

155.  For all subsequent years, Northwestern will not be able to offer on-campus PSEO courses.

156.  Students and their families will instead need to pay for courses or participate in online courses and forgo the religious community at Northwestern.

157.  Losing the on-campus PSEO program would cause significant harm to Northwestern in the form of lost revenue and recruiting opportunities.

158.  While high school students could still enroll in dual-credit courses at their own expense, many would not choose to do so because of the cost.

159.  Losing the on-campus PSEO program would also harm Northwestern's recruitment efforts. Besides the significant number of PSEO students that ultimately matriculate as undergraduate students, many other students learn about Northwestern because of its PSEO offerings.

160.  Even if those students are not admitted as PSEO students while in high school, many still attend Northwestern after graduation because of the positive experiences they had while considering and applying for Northwestern's on-campus PSEO program.

## CLAIMS FOR RELIEF

### Count I

**42 U.S.C. § 1983**
**Free Exercise Violation**
**Categorical Exclusion from Otherwise-**
**Available Government Benefits**

161.  All preceding paragraphs are realleged and incorporated herein by reference.

162.  The Free Exercise Clause of the First Amendment provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.

163.  The Free Exercise Clause applies to states and their subdivisions and municipalities through the Fourteenth Amendment to the U.S. Constitution.

164.  Under the Free Exercise Clause, imposing "special disabilities on the basis of religious views or religious status" triggers strict scrutiny. *Trinity Lutheran*, 582 U.S. at 460-61 (quoting *Emp. Div. v. Smith*, 494 U.S. 872, 877 (1990)).

165.  Thus, a system that precludes religious entities from obtaining generally available state benefits solely because of an organization's religious character or conduct is unconstitutional unless the government can satisfy strict scrutiny. *Espinoza*, 140 S. Ct. at 2261.

166.  Here, Plaintiffs Crown's and Northwestern's Christian beliefs and identity permeate their entire schools and missions. Offering education from a Christian perspective is a core part of their religious exercise.

167. The Loe family's sincerely held beliefs motivate them to provide their children with a Christian education and motivate the students to seek a Christian education.

168. Ms. Erickson's sincerely held beliefs motivate her to provide her children with a Christian education. J.G.'s sincerely held religious beliefs motivate him to seek a Christian education.

169. Minnesota offers a public benefit through the PSEO program, providing funding for high school students to earn concurrent high school and college credit tuition free from Eligible Institutions.

170. Minnesota amended the definition of an "Eligible Institution" to exclude any institution that "require[s] a faith statement from a secondary student seeking to enroll in a postsecondary course" through the program or that "base[s] any part of the admission decision on a student's race, creed, ethnicity, disability, gender, or sexual orientation or religious beliefs or affiliations."

171. The amendment discriminates against religion on its face because it (1) disqualifies religious postsecondary institutions, like Crown and Northwestern, that require faith statements for enrollment from participating in the PSEO program and (2) prevents parents of eligible high school students from enrolling their children in these otherwise-eligible institutions, tuition free, under the PSEO program.

172. The amendment requires Plaintiffs Crown and Northwestern to choose between maintaining their religious identities and receiving an otherwise available benefit for which they have been eligible for decades.

173.  It likewise forces the Loe family and the Erickson family to either forgo receipt of an otherwise-available benefit or forgo their right to seek an education in accordance with their religious beliefs.

174.  Plaintiffs are thus "disqualified from this generally available benefit 'solely because of their religious character.'" *Carson*, 142 S. Ct. at 1997(quoting *Trinity Lutheran*, 582 U.S. at 462).

175.  "By condition[ing] the availability of benefits in that manner," Minnesota's PSEO program "effectively penalizes the free exercise of religion." *Id.* (internal quotations omitted).

176.  The amendment serves no compelling, substantial, or legitimate government interest.

177.  The amendment is not narrowly tailored to achieve, nor is it rationally related to, any government interest.

178.  Defendants are persons within the meaning of 42 U.S.C. § 1983.

179.  Plaintiffs have suffered and will suffer harm absent relief.

### Count II

**42 U.S.C. § 1983**
**Free Exercise Violation**
**Not Generally Applicable**

180.  All preceding paragraphs are realleged and incorporated herein by reference.

181.  State action "burdening religious practice must be of general applicability." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542 (1993).

182.   A law is not generally applicable if it treats "*any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curiam); *see also Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021); *Lukumi*, 508 U.S. at 542-46.

183.   Under this rule, the amendment is not neutral or generally applicable on its face. The amendment punishes faith-based institutions for requiring PSEO students to sign their statement of faith.

184.   But it does not prohibit secular institutions from requiring PSEO students to affirm their agreement with the institution's secular ideologies or mission statements.

185.   The amendment further punishes religious institutions for giving admissions preference to PSEO students who share the institution's faith.

186.   But it does not prohibit secular institutions from giving admission preference to PSEO students who share the institution's secular ideology.

187.   The amendment must thus satisfy strict scrutiny.

188.   Discriminating against religious postsecondary schools is not the least restrictive means of furthering a compelling governmental interest.

189.   Defendants are persons within the meaning of 42 U.S.C. § 1983.

190.   Plaintiffs have suffered, are suffering, and will suffer harm absent relief.

### Count III

**42 U.S.C. § 1983**
**Free Exercise/Establishment Clause Violation**
**Discrimination Between Religious Groups**

191.  All preceding paragraphs are realleged and incorporated herein by reference.

192.  The Free Exercise Clause and Establishment Clause of the First Amendment mandate the equal treatment of all religious faiths without discrimination or preference.

193.  The amendment excludes from PSEO benefits schools whose beliefs require that they build a campus community of like-minded believers, while religious schools with different religious beliefs are included in the program.

194.  Likewise, religious students who wish to participate in Crown and Northwestern's campus community of believers who share their faith are excluded by the amendment's provisions, while students with different religious beliefs remain free to attend schools that accord with their faith.

195.  By design, the amendment denies government benefits to certain religious individuals and institutions but not others, resulting in discrimination among religions on the basis of religious views or religious status.

### Count IV

**42 U.S.C. § 1983**
**Free Exercise/Establishment Clause Violation**
**Religious Autonomy**

196.  All preceding paragraphs are realleged and incorporated herein by reference.

197.  "The First Amendment protects the right of religious institutions 'to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'" *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S.

Ct. 2049, 2055 (2020) (quoting *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952)).

198.  The First Amendment thus prohibits a state from interfering with a religious organization's internal affairs—including the behavioral standards that the organization sets for its members and matters of faith and doctrine.

199.  To participate in the PSEO program, Plaintiffs Crown and Northwestern would need to abandon their religious requirement that admitted PSEO students sign the schools' faith statements and agree to abide by the schools' doctrinal beliefs and religiously motivated tenets.

200.  The amendment thus interferes with the ability of religious organizations like Plaintiffs Crown and Northwestern to manage their own internal, religious affairs, instead requiring them to conform their religious beliefs, practices, and membership requirements to the state's criteria in order to receive an otherwise-available public benefit.

201.  Such coercion violates Plaintiffs Crown's and Northwestern's right to religious autonomy.

202.  Defendants are persons within the meaning of 42 U.S.C. § 1983.

203.  Plaintiffs Crown and Northwestern have suffered and will suffer harm absent relief.

## Count V

### 42 U.S.C. § 1983
### Free Exercise Violation
### Religious Targeting

204.  All preceding paragraphs are realleged and incorporated herein by reference.

205.  "[A] law targeting religious beliefs as such is never permissible." *Trinity Lutheran*, 582 U.S. at 466 n.4 (quoting *Lukumi*, 508 U.S. at 533).

206.  Because "[t]he Free Exercise Clause bars even 'subtle departures from neutrality' on matters of religion," the government "cannot impose regulations that are hostile to the religious beliefs of affected citizens and cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices," *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1731 (2018).

207.  Defendants have targeted religious beliefs by categorically excluding a subset of religious institutions from participating in the PSEO program.

208.  Defendants targeted these religious institutions for disfavored treatment based on disagreement with their religious beliefs.

209.  Defendants do not have a compelling reason for targeting this subset of religious institutions, and they have not selected the means least restrictive of religious to further their interests.

210.  Defendants are persons within the meaning of 42 U.S.C. § 1983.

211.  Plaintiffs have suffered and will suffer harm absent relief.

## Count VI

### 42 U.S.C. § 1983
### First Amendment Violation
### Unconstitutional Conditions

212.  All preceding paragraphs are realleged and incorporated herein by reference.

213.  The "unconstitutional conditions doctrine . . . vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013).

214.  "The 'unconstitutional conditions' doctrine limits the government's ability to exact waivers of rights as a condition of benefits, even when those benefits are fully discretionary." *United States v. Scott*, 450 F.3d 863, 866 (9th Cir. 2006) (citations omitted); *see also Koontz*, 570 U.S. at 608 ("[W]e have repeatedly rejected the argument that if the government need not confer a benefit at all, it can withhold the benefit because someone refuses to give up constitutional rights." (citations omitted)).

215.  To participate in Minnesota's PSEO program, Plaintiffs Crown and Northwestern must give up their religious identity by abandoning faith-based requirements for on-campus admission.

216.  To participate in Minnesota's PSEO program, the Loe family and the Erickson family must forfeit their religious convictions to seek and provide their children with a religious education.

217.  Such requirements violate the unconstitutional conditions doctrine.

218.  Defendants are persons within the meaning of 42 U.S.C. § 1983.

219.  Plaintiffs have suffered and will suffer harm absent relief.

## Count VII

### 42 U.S.C. § 1983
### Free Speech Violation
### Compelled Speech and Expressive Association

220.  All preceding paragraphs are realleged and incorporated herein by reference.

221.  Using government power to force a group that is formed for expressive purposes to include a message not its own "violates the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995).

222.  The Free Speech Clause prohibits the government from compelling people to speak messages against their will.

223.  The Free Speech Clause also prohibits the government from forcing a group formed for expressive purposes to accept members who oppose those purposes. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648, 650, 659 (2000).

224.  Crown and Northwestern were formed for the expressive purpose of providing a Christ-centered higher education. They are expressive associations within the meaning of *Hurley* and *Dale*.

225.  Minnesota amended its PSEO law in a way that would require religious schools that participate in the program to admit students who are opposed to the school's religious views and message.

31

226. The amendment would also prohibit schools like Crown and Northwestern from asking students in the PSEO program to support the school's religious views and message.

227. These rules would alter the content of Crown's and Northwestern's religious messages.

228. These rules would therefore "significantly affect" Crown's and Northwestern's "ability to advocate" for their religious "viewpoints." *Dale*, 530 U.S. at 650.

229. The amendment must thus satisfy strict scrutiny.

230. Coercing religious schools into altering their religious speech and expression serves no compelling government interest.

231. Minnesota has not selected the means least restrictive of religious speech to further its interests.

232. Defendants are persons within the meaning of 42 U.S.C. § 1983.

233. Crown and Northwestern have suffered and will suffer harm absent relief.

### Count VIII

**42 U.S.C. § 1983**
**Equal Protection Violation**
**Discrimination Based on Religion**

234. All preceding paragraphs are realleged and incorporated herein by reference.

235. The Equal Protection Clause prohibits discrimination on the basis of religion.

236. The amendment discriminates against religion on its face because it (1) denies PSEO eligibility to religious postsecondary schools like Crown and Northwestern

while providing eligibility to secular institutions and (2) denies PSEO-eligible individuals like the Loe family and the Erickson family access to a subset of religious institutions while still permitting access to other, secular schools that participate in Minnesota's PSEO program.

237.   The amendment must thus satisfy strict scrutiny.

238.   Defendants do not have a compelling interest in discriminating on the basis of religion and denying religious schools and individuals equal protection.

239.   Defendants' religious discrimination is not the least restrictive means to further any governmental interest.

240.   Defendants are persons within the meaning of 42 U.S.C. § 1983.

241.   Plaintiffs have suffered and will suffer harm absent relief.

### Count IX

### Minn. Const. Art. I, § 16
### Minnesota Free Exercise

242.   All preceding paragraphs are realleged and incorporated herein by reference.

243.   The Minnesota Constitution provides that "any control of or interference with the rights of conscience" shall not "be permitted, or any preference be given by law to any religious establishment or mode of worship;" except in the interests of "the peace or safety of the state." Minn. Const. Art. I, § 16.

244.   The amendment burdens Plaintiffs' sincere religious beliefs by forcing them to choose between their religious convictions and a state benefit.

33

245. The State must thus demonstrate that the amendment is the least restrictive means of pursuing a compelling governmental interest. *State v. Hershberger*, 462 N.W.2d 393, 398 (Minn. 1990).

246. The amendment interferes with the Plaintiffs' right of conscience by conditioning a benefit on abandoning Plaintiff schools' religious principles and community standards and by denying the Loe family's, Ms. Erickson's, and J.G.'s ability to attend the school of their choice on the basis of religion.

247. The Defendants cannot show a compelling interest in excluding Plaintiffs from the PSEO program on the basis of their religious beliefs and practices and it cannot show that their exclusion is the least restrictive means of advancing a compelling interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that the Court:

a. Declare that the amendment to Minn. Stat. § 124D.09, Subd. 3(a), facially violates the Free Exercise, Establishment, and Free Speech Clauses of the First Amendment to the U.S. Constitution;

b. Declare that the amendment to Minn. Stat. § 124D.09, Subd. 3(a), facially violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution;

c. Declare that the amendment to Minn. Stat. § 124D.09, Subd. 3(a), facially violates the Minnesota Constitution;

d. Issue preliminary and permanent injunctive relief prohibiting Defendants from enforcing the amendment to Minn. Stat. § 124D.09, Subd. 3(a), or otherwise denying PSEO program eligibility to Plaintiffs Crown and Northwestern, as well as other similar institutions;

e. Award actual damages in an amount to be determined;

f. Award nominal damages;

g. Award reasonable attorneys' fees and costs, upon a post-judgment application for the same, pursuant to 42 U.S.C. § 1988 and Minn. Stat. § 15.471; and

h. Award all such other relief as the Court may deem proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

Dated: May 24, 2023

Diana Verm Thomson*
  (DC Bar No. 1011222)
Eric S. Baxter*
  (DC Bar No. 479221)
Benjamin A. Fleshman*
  (DC Bar No. 1781280)
The Becket Fund for Religious Liberty
  1919 Pennsylvania Ave, N.W.
Suite 400
Washington, D.C. 20006
(202) 955-0095
dthomson@becketlaw.org
*_Pro hac vice_ application forthcoming

s/ Emily E. Mawer
Emily E. Mawer  (No. 0396329)
Lathrop GPM LLP
80 South Eighth Street
500 IDS Center
Minneapolis, MN 55402
Emily.mawer@lathropgpm.com

## VERIFICATION OF COMPLAINT ACCORDING TO 28 U.S.C. § 1746

I, Melinda Loe, declare under penalty of perjury that the foregoing allegations that pertain to me and my family are true and correct to the best of my knowledge.

Dated: 5·23·2023

Melinda Loe

## VERIFICATION OF COMPLAINT ACCORDING TO 28 U.S.C. § 1746

I, Mark Loe, declare under penalty of perjury that the foregoing allegations that pertain to me and my family are true and correct to the best of my knowledge.

Dated: 05/23/2023

_____

Mark Loe

## VERIFICATION OF COMPLAINT ACCORDING TO 28 U.S.C. § 1746

I, Dawn Erickson, declare under penalty of perjury that the foregoing allegations that pertain to me and my family are true and correct to the best of my knowledge.

Dated: _5/23/23_

_Dawn Erickson_

Dawn Erickson

**VERIFICATION OF COMPLAINT ACCORDING TO 28 U.S.C. § 1746**

I, Dr. Andrew C. Denton, declare under penalty of perjury that the foregoing allegations that pertain to Crown College are true and correct to the best of my knowledge.

Dated: 5-23-2023

Dr. Andrew C. Denton
President
Crown College

**VERIFICATION OF COMPLAINT ACCORDING TO 28 U.S.C. § 1746**

I, Dr. Greg Johnson, declare under penalty of perjury that the foregoing allegations that pertain to University of Northwestern – St. Paul are true and correct to the best of my knowledge.

Dated: _5·23·23_

Dr. Greg Johnson
Vice President for Strategy & Chief of
Staff
University of Northwestern – St. Paul