## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Melinda and Mark Loe, on their own
behalf and as next friends of their
children R.L. and O.L.; Dawn Erickson,
on her own behalf and as next friend of
her child J.G.; Crown College; and
University of Northwestern – St. Paul,

               Plaintiffs,

vs.

Willie Jett, in his official capacity as
Minnesota Commissioner of Education;
and Minnesota Department of Education,

               Defendants.

Case No. 23-cv-1527 (NEB/JFD)


**DEFENDANTS' AMENDED ANSWER
AND DEFENDANT MINNESOTA
DEPARTMENT OF EDUCATION'S
COUNTERCLAIM**

---

For their Answer to the Complaint in the above-entitled action, Commissioner

Willie Jett[1] and the Minnesota Department of Education ("MDE"; collectively,

"Defendants") state as follows. Except as hereinafter expressly admitted, qualified, denied,

or otherwise answered, Defendants deny each and every allegation in the Complaint.

    1.    For nearly 40 years, Minnesota's Postsecondary Enrollment Options
program (PSEO) has given high school students free access to college credits at a public
or private Minnesota school of their choice.

**ANSWER:**    Answering paragraph 1 of the Complaint, Defendants admit that Minnesota's

Postsecondary Enrollment Options ("PSEO") dual credit program was enacted in 1985 and

currently allows 10th-, 11th-, and 12th-grade students to earn college credit at no cost to

---

[1] On July 6, 2023, Plaintiffs dismissed Governor Walz as a Defendant in a Fed. R. Civ. P.
41(a)(1) Notice, ECF Doc. No. 23.

the student while still in high school, through enrollment in and successful completion of courses at eligible public and private postsecondary institutions.

2.     The program improves equal access to higher education for all students by letting them find a school that best fits their needs.

**ANSWER:**  Answering paragraph 2 of the Complaint, Defendants admit that the PSEO program provides opportunities for qualifying students to earn dual credits at eligible public and private postsecondary institutions.

3.     But Minnesota has just imposed a new rule that bars religious students from using PSEO funds at schools that uphold their faith, including Plaintiffs Crown College and University of Northwestern – St. Paul.

**ANSWER:**  Defendants deny paragraph 3 of the Complaint.

4.     Over the course of more than 20 years, thousands of students have chosen Crown and Northwestern because of their religious beliefs.  Indeed, Northwestern is one of the largest providers of PSEO in the state. In service of their campus Christian communities, Crown and Northwestern have always asked that all students in their on-campus programs share their Christian beliefs.

**ANSWER:**  Defendants presently lack knowledge and information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 4 of the Complaint, and on that basis, deny them. Defendants admit the second sentence of paragraph 4 of the Complaint. Answering the third sentence of paragraph 4 of the Complaint, Defendants admit that Plaintiff Crown College ("Crown") and Plaintiff University of Northwestern – St. Paul ("Northwestern") mandate that high school students agree to a faith statement to take PSEO classes on their campuses.

5.     Schools can apply almost any admissions criteria and still accept PSEO students. But under the new law, if they have a "faith statement" for students or select students based on "religion," they are barred from the PSEO program. H.F. 2497, 93rd Leg. (Minn. 2023).

**ANSWER:**   Answering the first sentence of paragraph 5 of the Complaint, Defendants admit only that postsecondary institutions participating in the PSEO program determine their own admission standards. Answering the second sentence of paragraph 5 of the Complaint, Defendants state that the provisions of Act of May 24, 2023, ch. 55, Art. 2, sec. 45 (hereinafter, the "Amendment") speak for themselves.

6.      The Plaintiff Loe and Erickson families include parents and students who are now denied the right to use PSEO funds at the schools of their choice, Crown and Northwestern, simply because of their religious beliefs.

**ANSWER:**   Defendants deny paragraph 6 of the Complaint.

7.      Minnesota knowingly excluded Crown and Northwestern from the PSEO program because of their religious beliefs, even after being warned this was unconstitutional.

**ANSWER:**   Defendants deny paragraph 7 of the Complaint.

8.      In the last six years, the Supreme Court has three times held that once a state opens funding to private institutions, the First Amendment's Free Exercise Clause forbids excluding participants based on their religion or their religious use of the funds. *See Trinity Lutheran Church of Columbia, Inc. v. Comer,* 582 U.S. 449 (2017); *Espinoza v. Mont. Dep't of Revenue,* 140 S. Ct. 2246, 2262 (2020); *Carson v. Makin*, 142 S. Ct. 1987, 1997 (2022).

**ANSWER:**   Answering paragraph 8 of the Complaint, Defendants state that the United States Supreme Court precedent cited therein speaks for itself.

9.      States discriminating against religion have already struck out three times at the Supreme Court. Minnesota should not get a fourth attempt.

**ANSWER:**   Paragraph 9 of the Complaint contains arguments of counsel to which no response is required. To the extent a response is deemed necessary, Defendants deny that they have discriminated against Plaintiffs in any manner whatsoever.

10.     Specifically in the education context, the Court has emphasized equal treatment because "religious schools and the families whose children attend them…are 'member[s] of the community too.'" *Espinoza*, 140 S. Ct. at 2262.

**ANSWER:**  Answering paragraph 10 of the Complaint, Defendants state that the United States Supreme Court precedent quoted therein speaks for itself.

11.     Plaintiffs bring this civil rights action to stop Minnesota from enforcing its discriminatory law against religious students and schools.

**ANSWER:**  Answering paragraph 11 of the Complaint, Defendants admit that Plaintiffs purport to state claims under 42 U.S.C. § 1983, but deny that any act or omission occurred that would give rise to a civil rights claim.

12.     Excluding religious communities from government programs because of their beliefs is "odious to our Constitution…and cannot stand." *Trinity Lutheran*, 582 U.S. at 467.

**ANSWER:**  Answering paragraph 12 of the Complaint, Defendants state that the United States Supreme Court precedent cited therein speaks for itself.

13.     Plaintiffs Mark and Melinda Loe are residents of Excelsior, Minnesota. Their child R.L. is 16 years old and eligible to participate in the PSEO program. Their child is 13 years old and will be eligible to participate in the PSEO program in two years.

**ANSWER:**  Defendants presently lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint, and on that basis, deny them.

14.     Plaintiff Dawn Erickson is a resident of Arden Hills, Minnesota. Her child JG. Is 16 years old and eligible to participate in the PSEO program.

**ANSWER:** Defendants presently lack knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Complaint, and on that basis, deny them.

15.     Plaintiff Crown College is a Christian college located in Saint Bonifacius, Minnesota that requires a statement of faith from its on-campus students.

**ANSWER:** Defendants admit paragraph 15 of the Complaint.

16.     Plaintiff University of Northwestern – St. Paul is a Christian university located in St. Paul, Minnesota that requires a statement of faith from its on-campus students.

**ANSWER:** Defendants admit paragraph 16 of the Complaint.

17.     Defendant Tim Walz is the Governor of Minnesota. He is sued in his official capacity.

**ANSWER:** Defendants admit in paragraph 17 that Tim Walz is the Governor of Minnesota, but deny that he is a Defendant or sued in his official capacity as Plaintiffs have dismissed the Governor as a party.

18.     Defendant Willie Jett is the Minnesota Commissioner of Education. He is sued in his official capacity.

**ANSWER:** Defendants admit paragraph 18 of the Complaint.

19.     Defendant Minnesota Department of Education is an agency of the State of Minnesota, established and empowered to "carry out the provisions of chapters 120A to 129C and other related education provisions under law." Minn. Stat. § 120A.02. The Department is headquartered in Minneapolis, Minnesota.

**ANSWER:** Defendants admit paragraph 19 of the Complaint.

20.     This action arises under the Constitution and laws of the United States. The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

**ANSWER:** Defendants admit paragraph 20 of the Complaint.

21.     The Court has supplemental jurisdiction over Count IX under 28 U.S.C. § 1367(a) for claims brought under the Constitution and laws of Minnesota.

**ANSWER:** Defendants deny paragraph 21 of the Complaint.

22. The Court has authority to issue the declaratory and injunctive relief sought under 28 U.S.C. §§ 2201 and 2202.

**ANSWER:** Paragraph 22 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants state that the provisions of 28 U.S.C. §§ 2201 and 2202 speak for themselves.

23. Venue lies in this district under 28 U.S.C. § 1391(b)(1) because all Defendants reside in the District of Minnesota.

**ANSWER:** Defendants admit paragraph 23 of the Complaint.

24. Venue also lies in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred in the District of Minnesota.

**ANSWER:** Defendants admit paragraph 24 of the Complaint.

25. In 1985, Minnesota enacted the Postsecondary Enrollment Options Act, creating the PSEO program. Minn. Stat. § 124D.09.

**ANSWER:** Defendants admit paragraph 25 of the Complaint.

26. The PSEO program's purpose is to promote "rigorous academic pursuits" and to provide "a wider variety of options" to high school students by enabling them to enroll full time or part time in classes at eligible postsecondary institutions. Minn. Stat. § 124D.09, Subd. 2.

**ANSWER:** Answering paragraph 26 of the Complaint, Defendants state that Minn. Stat. § 124D.09, subd. 2 speaks for itself.

27. Under the PSEO program, students can simultaneously earn both high school and college credit, cost-free. *See* Minn. Stat. § 124D.09, Subds. 3(c), 12, 13; *see also* Minnesota Department of Education, *Postsecondary Enrollment Options (PSEO) Reference Guide 5* (2021).

**ANSWER:** Defendants admit paragraph 27 of the Complaint.

28.     In most cases, the postsecondary institution provides textbooks and other course materials, and the Minnesota Department of Education reimburses the institution for costs and covers a certain percentage of the tuition per credit hour. *PSEO Reference Guide, supra,* at 19-20, 26-27; *see* Minn. Stat. § 124D.09, Subds. 13-21.

**ANSWER:**   Defendants admit paragraph 28 of the Complaint.

29.     Minnesota high schoolers are eligible to participate in the PSEO program whether they attend "a public school district, charter school, home school or nonpublic school in Minnesota," and in some instances even if they attend school out of state. *PSEO Reference Guide, supra,* at 8-9, 14.

**ANSWER:**   Defendants admit paragraph 29 of the Complaint.

30.     To enroll, students apply directly to their choice of "Eligible Institution[s]," as defined by the Act.

**ANSWER:**   Defendants admit paragraph 30 of the Complaint.

31.     Once a PSEO student is admitted to an Eligible Institution, the student chooses which offered courses to take.

**ANSWER:**   Defendants deny paragraph 31 of the Complaint as Minn. Stat. § 124D.09, subds. 2, 5, and 5b require that any course taken be non-sectarian; Minn. Stat. § 124D.09, subd. 9(b) prohibits PSEO enrollment in remedial, developmental, or non-college level courses; and Minn. Stat. § 124D.09, subd. 12(d) requires that courses selected count towards a graduation requirement.

32.     The PSEO program gives postsecondary institutions discretion to "determine admission standards to participate in specific PSEO programs and courses." *PSEO Reference Guide, supra,* at 17, 25; Minn. Stat. § 124D.09, Subd. 9(b).

**ANSWER:**   Answering paragraph 32 of the Complaint, Defendants state that the materials referenced therein speak for themselves. To the extent a further response is

deemed necessary, Defendants admit that paragraph 32 accurately quotes the PSEO Reference Guide.

33. "All courses taken in PSEO must meet graduation requirements at the high school." *PSEO Reference Guide, supra,* at 15, 17, 24; *see* Minn. Stat. § 124D.09, Subd. 12(d).

**ANSWER:**   Defendants admit paragraph 33 of the Complaint.

34. Until today, Minn. Stat. § 124D.09, subd. 3(a), defined "Eligible Institution" broadly: "a Minnesota public postsecondary institution, a private, nonprofit two-year trade and technical school granting associate degrees, an opportunities industrialization center accredited by an accreditor recognized by the United States Department of Education, or a private, residential, two-year or four-year, liberal arts, degree-granting college or university located in Minnesota."

**ANSWER:**   Answering paragraph 34 of the Complaint, Defendants admit that it accurately quotes the current version of Minn. Stat. § 124D.09, subd. 3(a), as last amended by the Legislature in 2019, and state further that the Amendment has not yet taken effect.

35. Secular and religious schools have historically qualified, although religious schools must exclude courses that are "sectarian in nature" from their PSEO offerings. *PSEO Reference Guide, supra,* at 17; *see* Minn. Stat. § 124D.09, Subd. 2 ("non-sectarian courses or programs").

**ANSWER:**   Defendants admit paragraph 35 of the Complaint.

36. The Minnesota Department of Education is the state agency responsible for carrying out the provisions of Minnesota's Education Code (chapters 120A to 129C), including the PSEO program.  Minn. Stat. § 120A.02(b).

**ANSWER:**   Defendants admit paragraph 36 of the Complaint.

37. Commissioner Jett is responsible for enforcing PSEO requirements.

**ANSWER:**   Answering paragraph 37 of the Complaint, Defendants admit that Commissioner Jett is responsible for administrative control of the Minnesota Department of Education ("MDE"). *See* Minn. Stat. § 127A.0, subd. 1.

38.    On information and belief, the Commissioner of Education approves or denies a postsecondary institution's request to be an Eligible Institution.

**ANSWER:**  Answering paragraph 38 of the Complaint, Defendants admit that a postsecondary institution must make a request in writing to the Commissioner of Education asking to be recognized as an approved institution for participation in the PSEO program.

39.    On May 17, 2023, the Minnesota Legislature passed a law redefining the PSEO Act's term "Eligible Institution" to explicitly exclude institutions on the basis of faith.

**ANSWER:**  Answering paragraph 39 of the Complaint, Defendants state that the provisions of the Amendment speak for themselves.

40.    Governor Walz signed the bill into law today, on May 24, 2023, and the law will take effect July 1, 2023.

**ANSWER:**  Answering paragraph 40 of the Complaint, Defendants admit that Governor Walz signed H.F. 2497 into law on May 24, 2023, and the Amendment was set to take effect on July 1, 2023. Defendants state further that the Amendment has been held in abeyance during the course of this litigation by stipulation of the parties.

41.    The text of the law makes clear that it targets religious institutions that promote religious community on their campuses, stating:

> An eligible institution must not require a faith statement from a secondary student seeking to enroll in a postsecondary course under this action during the application process or base any part of the admission decision on a student's race, creed, ethnicity, disability, gender, or sexual orientation or *religious beliefs or affiliations*.

H.F. 2497, 93rd Leg. (Minn. 2023) (emphasis added).

**ANSWER:** Answering paragraph 41 of the Complaint, Defendants admit that it accurately quotes the Amendment but deny that the Amendment targets religious institutions.

42. The effect of the amendment is to force religious families like the Loes and the Ericksons to forgo using PSEO funds within the religious environment provided by the religious schools of their choice.

**ANSWER:** Defendants deny paragraph 42 of the Complaint.

43. It likewise forces institutions like Crown and Northwestern to choose between their religious practices of requiring a statement of faith on campus and admitting high school students to their on-campus PSEO programs.

**ANSWER:** Answering paragraph 43 of the Complaint, Defendants admit only that the Amendment states in part that "[a]n eligible institution must not require a faith statement from a secondary student seeking to enroll in a postsecondary" PSEO course, and deny the remainder of the allegations in paragraph 43 of the Complaint.

44. The legislative history confirms that amendment's point was to single out these religious institutions.

**ANSWER:** Defendants deny paragraph 44 of the Complaint.

45. Representative Laurie Pryor, the author of the bill in the House, acknowledged that she knew that Crown and Northwestern would be affected by the law. Minnesota House of Representatives, *House Floor Session 4/20/23 – Part 2,* YouTube, at 3:22:55-3:23:30 (Apr. 20, 2023), https://www.youtube.com/watch?v=Klc95g-ovm4.

**ANSWER:** Answering paragraph 45 of the Complaint, Defendants state that the video referenced therein speaks for itself.

46. Representative Pryor further acknowledged that both institutions shared a common faith tradition, namely "a particular understanding of the Christian faith." *Id.* At 3:25:00-3:25:20.

**ANSWER:** Answering paragraph 46 of the Complaint, Defendants state that the video referenced therein speaks for itself.

47. Representative Pryor also explained that both the faith-statement provision and the antidiscrimination provision were included in the amendment to force schools to admit students without regard to their religious beliefs. *Id.* At 3:15:00-3:16:18.

**ANSWER:** Answering paragraph 47 of the Complaint, Defendants state that the video referenced therein speaks for itself.

48. Other legislators echoed the intent to suppress the schools' religious exercise of providing education within a community of faith.

**ANSWER:** Answering paragraph 48 of the Complaint, Defendants state that the video alluded to therein speaks for itself.

49. During the floor debate, Representative Pryor and others unfavorable compared institutions like Crown and Northwestern that require faith statements to other religious institutions that do not. Representative Pryor suggested that Crown and Northwestern do not need a faith statement because "many, many faith institutions across the country, and in Minnesota, are able to be true to their faith and their mission and still accept students without compelling them to sign a statement." *Id*. At 3:23:56-3:24:14.

**ANSWER:** Answering paragraph 49 of the Complaint, Defendants state that the video referenced therein speaks for itself.

50. Representative Pryor and others also expressed their disapproval of institutions that require faith statements because the legislators disagreed with the beliefs those institutions embrace.

**ANSWER:** Answering paragraph 50 of the Complaint, Defendants state that the video alluded to therein speaks for itself.

51. Upon learning of the proposed amendment language, Plaintiffs Crown and Northwestern understandably were concerned that they would be forced to choose between maintaining a faith-based campus community and participating in the PSEO program.

**ANSWER:** Answering paragraph 51 of the Complaint, Defendants admit only that Crown and Northwestern expressed their concerns about the Amendment before it was enacted. The remaining allegations in paragraph 51 of the Complaint are arguments of counsel to which no response is required.

52. Crown and Northwestern representatives met with state officials on multiple occasions and explained that they could not alter their religious practice of requiring students to sign their statement of faith.

**ANSWER:** Answering paragraph 52 of the Complaint, Defendants admit only that representatives of Crown and Northwestern met with state staff to discuss their concerns about the Amendment before it was enacted.

53. In one instance, a Crown representative met with Eric Taubel, the Department's General Counsel; Adosh Unni, the Department's Director of Government Relations; and Sydney Spreck, a policy advisor to Governor Walz.

**ANSWER:** Defendants admit paragraph 53 of the Complaint.

54. Crown asked for the government's reason behind the amendment. Ms. Spreck responded that public education dollars should stay within the public education system.

**ANSWER:** Defendants deny paragraph 54 of the Complaint and state further that the Minnesota Legislature established the reasoning for the Amendment, not Sydney Spreck.

55. The amendment does not, however, limit PSEO access to all public education.

**ANSWER:** Answering paragraph 55 of the Complaint, Defendants state that the provisions of the Amendment speak for themselves.

56. Instead, the new exclusions are focused on two faith-based institutions: Crown and Northwestern.

**ANSWER:** Answering paragraph 56 of the Complaint, Defendants state that the provisions of the Amendment speak for themselves.

57. Indeed, during meetings of the Senate Committee on Education Policy, members of the committee stated clearly their intent to exclude religious schools from receiving public dollars.

**ANSWER:** Answering paragraph 57 of the Complaint, Defendants state that recordings of the committee meetings referenced therein speak for themselves.

58. Mark and Melinda Loe are residents of Excelsior, Minnesota. They are the parents of seven children, and they are suing on behalf of two of their minor children, R.L. and O.L.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58 of the Complaint, and on that basis, deny them.

59. The Loes are a Christian family, and they include Jesus Christ and His teachings at the center of everything they do.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59 of the Complaint, and on that basis, deny them.

60. The Loes's two oldest children participated in the PSEO program. Their oldest child took courses through Crown, and their second oldest through Northwestern.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60 of the Complaint, and on that basis, deny them.

61. The Loes's two oldest children participated in the PSEO program. Their oldest child took courses through Crown, and their second oldest through Northwestern.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61 of the Complaint, and on that basis, deny them.

62. Their child R.L. will be a junior in high school during the 2023-24 school year. R.L. is eligible to participate in the PSEO program.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62 of the Complaint, and on that basis, deny them.

63. R.L. has applied for the on-campus PSEO program at Northwestern because R.L. wants to be part of a faith-based community that offers the opportunity to join with fellow believers in receiving a qualify, Christ-centered education.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 of the Complaint, and on that basis, deny them.

64. R.L. intends to study nursing at Northwestern. To do so, R.L. will need to attend classes in person, rather than online, because certain courses have laboratory components that are not offered remotely.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64 of the Complaint, and on that basis, deny them.

65. R.L. has been accepted into Northwestern's on-campus PSEO program and intends to enroll for both the 2023-24 and 2024-25 school years.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65 of the Complaint, and on that basis, deny them.

66.     O.L will be a junior in high school during the 2025-26 school year and will be eligible to participate in the PSEO program at that time.

**ANSWER:**  Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66 of the Complaint, and on that basis, deny them.

67.     O.L. hopes to apply for the on-campus PSEO program offered at Crown or Northwestern because of their on-campus faith communities and, if accepted, would plan to enroll for two years.

**ANSWER:**  Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67 of the Complaint, and on that basis, deny them.

68.     Because of the amendment, however, Crown and Northwestern no longer qualify as Eligible Institutions for their on-campus PSEO programs.

**ANSWER:**  Answering paragraph 68 of the Complaint, Defendants state that Crown and Northwestern will qualify as "Eligible Institutions" as long as they meet the requirements of Minn. Stat. § 124D.09.

69.     The Loes are therefore unable to use PSEO funding to participate in either Crown's or Northwestern's on-campus programs.

**ANSWER:**  Answering paragraph 69 of the Complaint, Defendants state that R.L. and O.L. may use public funding to attend on-campus PSEO classes at Crown or Northwestern as long as they satisfy applicable statutory and institutional criteria and Crown and Northwestern meet the requirements of Minn. Stat. § 124D.09.

70.     Dawn Erickson resides in Arden Hills, Minnesota. She is the mother of four children, and she is suing on her own behalf and on behalf of her child, J.G.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70 of the Complaint, and on that basis, deny them.

71. Ms. Erickson has homeschooled her children to educate then in in a Christian learning environment. She and her children have participated in a homeschool co-op with other Christian families.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 71 of the Complaint, and on that basis, deny them.

72. Ms. Erickson's three oldest children participated in the PSEO program at Northwestern.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 72 of the Complaint, and on that basis, deny them.

73. Her oldest child did PSEO for two years at Northwestern and was then able to finish college in two and a half years, with significant financial savings.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73 of the Complaint, and on that basis, deny them.

74. Ms. Erickson's second child is currently a junior at Northwestern after completing two years of PSEO there.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74 of the Complaint, and on that basis, deny them.

75.     He initially planned to do two years of PSEO, then attend college out of state. But after his first day of orientation at Northwestern's PSEO program, he told his mother he had changed his mind—he knew Northwestern was the school for him.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 75 of the Complaint, and on that basis, deny them.

76.     He now plans to graduate from Northwestern next year.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76 of the Complaint, and on that basis, deny them.

77.     Ms. Erickson's third child is currently completing his second year in the PSEO program at Northwestern.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77 of the Complaint, and on that basis, deny them.

78.     J.G., Ms. Erickson's youngest child, is 16 years old and is homeschooled. J.G. attends selected classes at the local public school.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78 of the Complaint, and on that basis, deny them.

79.     J.G. is eligible for the PSEO program and hopes to participate in the program at Northwestern as a high school senior.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79 of the Complaint, and on that basis, deny them.

80. Because of the amendment, however, Northwestern no longer qualifies as an Eligible Institution for its on-campus PSEO program.

**ANSWER:** Answering paragraph 80 of the Complaint, Defendants state that Northwestern will qualify as an "Eligible Institution" as long as it meets the requirements of Minn. Stat. § 124D.09.

81. The Erickson family is therefore unable to use PSEO funding to participate in Northwestern's on-campus program.

**ANSWER:** Answering paragraph 81 of the Complaint, Defendants state that J.G. may use public funding to attend on-campus PSEO classes at Northwestern as long as he satisfies applicable statutory and institutional criteria and Northwestern meets the requirements of Minn. Stat. § 124D.09.

82. Crown College is a Christian college located in Saint Bonifacius, Minnesota.

**ANSWER:** Defendants admit paragraph 82 of the Complaint.

83. Crown was founded in 1916 when a local farmer asked Reverend J.D. Williams and his wife to teach him the word of God.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 83 of the Complaint, and on that basis, deny them.

84. Reverend Williams began teaching evening classes with just over 40 students. He soon created an official school, known as the Alliance Training Home.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 84 of the Complaint, and on that basis, deny them.

85.     Since its founding, the school that became Crown College has been aligned with the Christian and Missionary Alliance denomination.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 85 of the Complaint, and on that basis, deny them.

86.     Crown is one of four Christian and Missionary Alliance colleges in the United States. The Alliance seeks to build up Christ's church by carrying His gospel to every nation, building Christian disciples, and teaching them to obey God's commandments.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86 of the Complaint, and on that basis, deny them.

87.     "The mission of Crown College is to provide a biblically-based education for Christian leadership in the Christian and Missionary Alliance, the Church-at-large, and the world." *About—History*, Crown College, https://perma.cc/TUD7-W9KD.

**ANSWER:** Answering paragraph 87 of the Complaint, Defendants state that the website referenced therein speaks for itself.

88.     This mission permeates all that Crown does. For example, on-campus undergraduate Crown students participate in a "Spiritual Formation Program."

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 88 of the Complaint, and on that basis, deny them.

89. This program fosters faith formation by encouraging students to participate in chapel services and other biblical study groups as well as community service. Prayer and worship are part of the day-to-day life for the campus community, with classes and meetings beginning with prayer.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 89 of the Complaint, and on that basis, deny them.

90. Crown fosters a culture of worship, prayer, and service for all students, faculty, and staff.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 90 of the Complaint, and on that basis, deny them.

91. Because Crown seeks to be a Christ-centered community, all students who attend Crown on-campus must sign its Statement of Faith and Community Covenant, which affirm Crown's Christian beliefs.

**ANSWER:** Answering paragraph 91 of the Complaint, Defendants admit only that high school students taking on-campus PSEO courses at Crown have previously been required to sign a faith statement.

92. Crown believes that requiring all members of the on-campus community to sign the statement of faith fosters a strong Christian community and creates a Christ-focused culture.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92 of the Complaint, and on that basis, deny them.

93. All members of the Crown on-campus community, including students, "commit to the Lordship of Christ" by committing themselves "to His Church, to prayer,

worship, Bible study, fasting, discipleship, witnessing, and using [their] time, gifts, and finances for His glory." *Our Beliefs*, Crown College, https://perma.cc/JW4V-93U4.

**ANSWER:**   Answering paragraph 93 of the Complaint, Defendants state that the website referenced therein speaks for itself.

94.    Members of the Crown campus community are called to "live out Christian character toward one another" by develop[ing] spiritually, physically, intellectually, emotionally, and socially." *Id.*

**ANSWER:**   Answering paragraph 94 of the Complaint, Defendants state that the website referenced therein speaks for itself.

95.    They also commit to "[l]iving out Christ's character" by avoiding certain behaviors, including "sexually immoral behavior (e.g, all sexual relations outside the bounds of marriage between a man and a woman)." *Id.*

**ANSWER:**   Answering paragraph 95 of the Complaint, Defendants state that the website referenced therein speaks for itself.

96.    These requirements apply only to Crown's on-campus students. Because remote students do not share in the community in the same way that on-campus students do, remote students are not required to sign Crown's Statement of Faith or Community Covenant.

**ANSWER:**   Answering paragraph 96 of the Complaint, Defendants admit only that high school students taking online PSEO courses have not previously been required by Crown to sign a faith statement.

97.    Crown thus allows all students, regardless of their religious beliefs, to take courses remotely.

**ANSWER:**   Answering paragraph 97 of the Complaint, Defendants admit only that high school students taking online PSEO courses have not previously been required by Crown to sign a faith statement.

98.     Remote courses still uphold Crown's Christian values and present subjects in a manner consistent with Crown's beliefs and practices.

**ANSWER:**  Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 98 of the Complaint, and on that basis, deny them.

99.     Crown has participated as an Eligible Institution in the PSEO program since 2002, when the Department first approved it.

**ANSWER:**  Defendants admit paragraph 99 of the Complaint.

100.    Crown has complied with all eligibility requirements since its initial approval for the program.

**ANSWER:**  Answering paragraph 100 of the Complaint, Defendants admit that Crown has remained an Eligible Institution since its initial authorization for participation in the PSEO program.

101.    Since the time it was approved as an Eligible Institution, Crown has required on-campus PSEO students to sign Crown's Statement of Faith and Community Covenant.

**ANSWER:**  Answering paragraph 101 of the Complaint, Defendants admit only that high school students taking on-campus PSEO courses have previously been required by Crown to sign a faith statement.

102.    Crown currently participates in the PSEO program by offering 310 PSEO-eligible courses.

**ANSWER:**  Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 102 of the Complaint, and on that basis, deny them

103.    In addition to its PSEO-eligible courses, Crown offers high school students the opportunity to take dual credit courses that are not PSEO-eligible at a reduced cost. The Department does not reimburse Crown for these courses.

**ANSWER:**  Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 103 of the Complaint, and on that basis, deny them. Furthering answering paragraph 103 of the Complaint, Defendants state that PSEO tuition reimbursement is available only for authorized PSEO courses.

104.    The number students that Crown admits for PSEO on campus has grown in recent years. It currently admits up to 70 on-campus students each year.

**ANSWER:**  Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104 of the Complaint, and on that basis, deny them

105.    These students are welcomed and integrated into the Crown campus community. They are encouraged to participate in campus events and clubs and are made to feel as much a part of the community as any other student.

**ANSWER:**  Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 105 of the Complaint, and on that basis, deny them.

106.    PSEO students can also participate through online courses or courses offered through a high school partnership.

**ANSWER:**  Defendants deny paragraph 106 of the Complaint.

107.    In 2020, Crown provided PSEO students with more than 4,393 total credit hours. *See* Minnesota Department of Education, *Rigorous Course Taking:  Advanced Placement, International Baccalaureate, Concurrent Enrollment and Postsecondary Enrollment Options Programs*, 55 (2022), https://perma.cc/KCS8-PVPU.

**ANSWER:**  Defendants admit paragraph 107 of the Complaint.

108.    An average of 29 percent of on-campus PSEO students have matriculated to Crown as undergraduate students after high school over the past nine years.

**ANSWER:**  Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108 of the Complaint, and on that basis, deny them.

109.    Providing a Christ-focused environment for its students is a core part of Crown's religious mission. As the school tries to carry out Christ's Great Commission to "make disciples of all nations," *Matthew* 28:19 (NIV), it believes that its own community must be a bastion of Christian discipleship. Having a strong, faithful community and educational experience equips Crown's graduates to go into the world as Christian leaders and build the Church wherever they may go.

**ANSWER:**  Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 109 of the Complaint, and on that basis, deny them.

110.    Crown thus intends to continue requiring all on-campus students—including on-campus PSEO students—to sign and live by its Statement of Faith and Community Covenant.

**ANSWER:**  Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 110 of the Complaint, and on that basis, deny them.

111.    Due solely to the amendment's exclusion of religious institutions, and despite being otherwise qualified, after July 1, 2023, Crown will no longer be eligible to receive PSEO funds for its on-campus courses.

**ANSWER:**  Answering paragraph 111 of the Complaint, Defendants state that Crown will qualify as an "Eligible Institution" as long as it meets the requirements of Minn. Stat. § 124D.09.

112.    Crown wants to continue to participate in the program and offer on-campus PSEO students a unique, religious educational experience.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 112 of the Complaint, and on that basis, deny them.

113.    Crown has admitted 70 on-campus PSEO students for the 2023-24 school year. It does not intend to admit any on-campus PSEO students for the following year if the amendment remains in effect.

**ANSWER:**    Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 113 of the Complaint, and on that basis, deny them.

114.    Although Crown will no longer qualify for PSEO reimbursement for its on-campus courses after July 1, 2023, it has decided to honor its commitment to students already admitted on-campus for the 2023-2024 school year by offering them dual-credit courses and risking the possibility that it will not be reimbursed.

**ANSWER:**    Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 114 of the Complaint, and on that basis, deny them. Further answering paragraph 114 of the Complaint, Defendants state that Crown will qualify as an "Eligible Institution" as long as it meets the requirements of Minn. Stat. § 124D.09.

115.    But next year, Crown must sustain the cost of admitting on-campus PSEO students and must either decline admission or charge high school students full tuition.

**ANSWER:**    Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 115 of the Complaint, and on that basis, deny them. Further answering paragraph 115 of the Complaint, Defendants state that

Crown will qualify as an "Eligible Institution" as long as it meets the requirements of Minn. Stat. § 124D.09.

116.    Losing the on-campus PSEO program would cause significant harm to Crown in the form of lost revenue and recruiting opportunities.

**ANSWER:**  Answering paragraph 116 of the Complaint, Defendants admit only that Crown will not receive public funding for PSEO courses if it does not comply with Minn. Stat. § 124D.09.

117.    While high school students could still enroll in dual-credit courses at their own expense, many would choose not to do so because of the cost. They may also not be able to receive high school credit for such courses.

**ANSWER:**  Answering paragraph 117 of the Complaint, Defendants admit only that high school students may enroll in dual-credit PSEO courses offered by eligible postsecondary institutions at their own expense and that MDE will pay for dual-credit courses available from an approved PSEO institution. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 117 of the Complaint, and on that basis, deny them.

118.    The Crown campus community would also suffer because of the loss of the on-campus PSEO program.

**ANSWER:**  Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 118 of the Complaint, and on that basis, deny them.

119.    PSEO students are integrated into many extracurricular activities across the campus, including the worship team, the communications and videography team, the choir, and sports teams.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 119 of the Complaint, and on that basis, deny them.

120. Losing the on-campus PSEO program would also harm Crown's recruitment efforts. Besides the significant number of PSEO students that ultimately matriculate as undergraduate students, many students learn about Crown because of PSEO offerings.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 120 of the Complaint, and on that basis, deny them.

121. Even if those students are not admitted as PSEO students, many still attend after graduating high school because they formed a good opinion of the school while considering and applying for Crown's on-campus PSEO program.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 121 of the Complaint, and on that basis, deny them.

122. On information and belief, some high school guidance counselors heard about the amendment before it was passed and told students they should not apply for Crown's on-campus PSEO program.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 122 of the Complaint, and on that basis, deny them.

123. This hurt Crown's ability to communicate with and recruit these students for its on-campus community.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 123 of the Complaint, and on that basis, deny them.

124. Northwestern is a Christian university located in St. Paul, Minnesota.

**ANSWER:** Defendants admit paragraph 124 of the Complaint.

125. Originally known as Northwestern Bible and Missionary School Training School, Northwestern was founded in 1902 by well-known pastor and evangelist William Bell Riley.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 125 of the Complaint, and on that basis, deny them.

126. Northwestern University's second president, Reverend Billy Graham, helped the school expand, gain national prominence, and eventually move to its own campus near Loring Park in Minneapolis, Minnesota.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 126 of the Complaint, and on that basis, deny them.

127. After a brief closure for restructuring and relocation, Northwestern opened its current location in St. Paul.

**ANSWER:** Answering paragraph 127 of the Complaint, Defendants admit only that Northwestern is currently located in St. Paul, Minnesota. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 127 of the Complaint, and on that basis, deny them.

128. There, under the guidance of many faithful leaders, the school has continued to flourish and provide a Christian education to thousands of students.

**ANSWER:** Answering paragraph 128 of the Complaint, Defendants admit only that Northwestern has educated thousands of college students. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 128 of the Complaint, and on that basis, deny them.

129. Northwestern "exists to provide Christ-centered higher education equipping students to grow intellectually and spiritually, to serve effectively in their professions, and to give God-honoring leadership in the home, church, community and world." *Mission and Vision*, University of Northwestern – St. Paul, https://perma.cc/CJ7P-8YFL.

**ANSWER:** Answering paragraph 129 of the Complaint, Defendants state that the website quoted therein speaks for itself.

130. Northwestern incorporates its religious mission in everything it does.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 130 of the Complaint, and on that basis, deny them.

131. For example, the school provides regular chapel services and other faith-formation events for campus community members. Faculty and students pray to begin classes and staff meetings. And the school encourages students to continually worship God and to serve the community in accordance with their Christian beliefs.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 131 of the Complaint, and on that basis, deny them.

132. All students who attend Northwestern on-campus must sign its Declaration of Christian Community, which affirms Northwestern's Christian beliefs.

**ANSWER:**    Answering paragraph 132 of the Complaint, Defendants admit only that high school students taking on-campus PSEO courses have previously been required by Northwestern to sign a faith statement.

133.    Members of the Northwestern community, including students, declare that their "relationship to Jesus Christ and commitment to obey God's Word will be at the very center" of all that they do. *Declaration of Christian Community*, University of Northwestern – St. Paul, https://perma.cc.538P-YVKX.

**ANSWER:**    Answering paragraph 133 of the Complaint, Defendants state that the website quoted therein speaks for itself.

134.    Students and other Northwestern community members "strive to create an atmosphere of Christ-centered community" and "put [their] relationship to Jesus Christ at the center of [their] lives and [their] studies." *Id.*

**ANSWER:**    Answering paragraph 134 of the Complaint, Defendants state that the website quoted therein speaks for itself.

135.    This leads members of the Northwestern community, including students, to "condemn oppression" in all forms and to "humbly work[] toward loving all people with the genuine love of Christ." *Id.*

**ANSWER:**    Answering paragraph 135 of the Complaint, Defendants state that the website quoted therein speaks for itself.

136.    Members of the Northwestern community also affirm that they "support the sanctity of marriage … [and] define marriage as being a covenant between one man and one woman." *Id.*

**ANSWER:**    Answering paragraph 136 of the Complaint, Defendants state that the website quoted therein speaks for itself.

137.    These requirements do not apply to Northwestern's online program offerings because students attending online courses do not live in the Christian community like students who attend in person.

**ANSWER:** Answering paragraph 137 of the Complaint, Defendants admit only that high school students taking online PSEO courses have not previously been required by Northwestern to sign a faith statement.

138. Northwestern thus allows any student to enroll in its online course offerings without regard to religious belief.

**ANSWER:** Answering paragraph 138 of the Complaint, Defendants admit only that high school students taking online PSEO courses have not previously been required by Northwestern to sign a faith statement.

139. Northwestern continues, however, to uphold its Christian values in its online courses and teach in light of its Christian beliefs and practices.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 139 of the Complaint, and on that basis, deny them.

140. Northwestern has participated in the PSEO program as an Eligible Institution for over 25 years.

**ANSWER:** Defendants admit paragraph 140 of the Complaint.

141. Northwestern has complied with all eligibility requirements since its initial approval for the program.

**ANSWER:** Answering paragraph 141 of the Complaint, Defendants admit that Northwestern has remained an Eligible Institution since its initial authorization for participation in the PSEO program.

142. Since the time it was approved as an Eligible Institution, Northwestern has required on-campus PSEO students to sign Northwestern's Declaration of Christian Community.

**ANSWER:** Answering paragraph 142 of the Complaint, Defendants admit only that high school students taking on-campus PSEO courses have previously been required by Northwestern to sign a faith statement.

143. Northwestern currently participates in the Minnesota PSEO program by offering 515 PSEO-eligible courses.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 143 of the Complaint, and on that basis, deny them.

144. In addition to its PSEO-eligible courses, Northwestern offers high school students the opportunity to take dual credit courses that are not PSEO-eligible at a reduced cost. The Department does not reimburse Northwestern for these courses.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 144 of the Complaint, and on that basis, deny them. Furthering answering paragraph 144 of the Complaint, Defendants state that tuition reimbursement is available only for approved PSEO courses.

145. In 2020, Northwestern provided more PSEO credits than any other postsecondary institution in Minnesota.

**ANSWER:** Defendants admit paragraph 145 of the Complaint.

146. Of the over 170,000 credit hours submitted for reimbursement to the Department, Northwestern provided 24,947 credit hours—nearly 15 percent of the total. *See* Minnesota Department of Education, *Rigorous Course Taking: Advanced Placement, International Baccalaureate, Concurrent Enrollment and Postsecondary Enrollment Options Programs*, 56 (2022), https://perma.cc/KCS8-PVPU.

**ANSWER:** Defendants admit paragraph 146 of the Complaint.

147. Northwestern admits between 200 and 300 on-campus PSEO students each year.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 147 of the Complaint, and on that basis, deny them.

148. Approximately 1200 to 1300 PSEO students participate each year through online courses or courses offered through a high school partnership. These students are not required to sign Northwestern's statement of faith.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 148 of the Complaint, and on that basis, deny them. Answering the second sentence of paragraph 148 of the Complaint, Defendants admit only that high school students taking online PSEO courses have not previously been required by Northwestern to sign a faith statement.

149. Approximately 40 percent of PSEO students ultimately matriculate to Northwestern as undergraduate students.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 149 of the Complaint, and on that basis, deny them.

150. Northwestern intends to continue to require all students on their campus—including PSEO students—to sign and live by its Declaration of Christian Community.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 150 of the Complaint, and on that basis, deny them.

151. Due to the amendment's exclusion of religious institutions, and despite being otherwise qualified, Northwestern will no longer be eligible to offer on-campus PSEO courses after July 1, 2023.

**ANSWER:** Answering paragraph 151 of the Complaint, Defendants state that Northwester will qualify as an "Eligible Institution" as long as it meets the requirements of Minn. Stat. § 124D.09.

152. Northwestern wants to continue participating in the program and offering on-campus PSEO students a unique educational experience.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 152 of the Complaint, and on that basis, deny them.

153. Northwestern has already admitted 183 on-campus PSEO students for the 2023-24 school year.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 153 of the Complaint, and on that basis, deny them.

154. Although Northwestern will no longer qualify for reimbursement under the PSEO program after July 1, 2023, the school has decided to offer dual-credit courses for the PSEO students already admitted for the 2023-24 school year at the risk of not being reimbursed by the Department.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 154 of the Complaint, and on that basis, deny them. Further answering paragraph 154 of the Complaint, Defendants state that Northwestern will qualify as an "Eligible Institution" as long as it meets the requirements of Minn. Stat. § 124D.09.

155. For all subsequent years, Northwestern will not be able to offer on-campus PSEO courses.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 155 of the Complaint, and on that basis, deny them. Further answering paragraph 155 of the Complaint, Defendants state that Northwestern will qualify as an "Eligible Institution" as long as it meets the requirements of Minn. Stat. § 124D.09.

156. Students and their families will instead need to pay for courses or participate in online courses and forgo the religious community at Northwestern.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 156 of the Complaint, and on that basis, deny them. Further answering paragraph 156 of the Complaint, Defendants state that Northwestern will qualify as an "Eligible Institution" as long as it meets the requirements of Minn. Stat. § 124D.09.

157. Losing the on-campus PSEO program would cause significant harm to Northwestern in the form of lost revenue and recruiting opportunities.

**ANSWER:** Answering paragraph 157 of the Complaint, Defendants admit only that Northwestern will not receive public funding for PSEO courses if it does not comply with Minn. Stat. § 124D.09.

158. While high school students could still enroll in dual-credit courses at their own expense, many would not choose to do so because of the cost.

**ANSWER:** Answering paragraph 158 of the Complaint, Defendants admit only that high school students may enroll in dual-credit PSEO courses offered by eligible postsecondary institutions at their own expense and that MDE will pay for dual-credit courses available from an approved PSEO institution. Defendants lack knowledge or information sufficient

to form a belief as to the truth of the remaining allegations in paragraph 158 of the Complaint, and on that basis, deny them.

159. Losing the on-campus PSEO program would also harm Northwestern's recruitment efforts. Besides the significant number of PSEO students that ultimately matriculate as undergraduate students, may other students learn about Northwestern because of its PSEO offerings.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 159 of the Complaint, and on that basis, deny them.

160. Even if those students are not admitted as PSEO students while in high school, may still attend Northwestern after graduation because of the positive experiences they had while considering and applying for Northwestern's on-campus PSEO program.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 160 of the Complaint, and on that basis, deny them.

161. All preceding paragraphs are realleged and incorporated herein by reference.

**ANSWER:** Defendants restate, reallege, and incorporate by reference their responses to paragraphs 1 through 160 of the Complaint.

162. The Free Exercise Clause of the First Amendment provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.

**ANSWER:** Defendants admit paragraph 162 of the Complaint.

163. The Free Exercise Clause applies to states and their subdivisions and municipalities through the Fourteenth Amendment to the U.S. Constitution.

**ANSWER:** Defendants admit paragraph 163 of the Complaint.

164.    Under the Free Exercise Clause, imposing "special disabilities on the basis of religious views or religious status" triggers strict scrutiny. *Trinity Lutheran*, 582 U.S. at 460-61 (quoting *Emp. Div. v. Smith*, 494 U.S. 872, 877 (1990)).

**ANSWER:**    Paragraph 164 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants state that the United States Supreme Court precedent quoted in paragraph 164 of the Complaint speaks for itself.

165.    Thus, a system that precludes religious entities from obtaining generally available state benefits solely because of an organization's religious character or conduct is unconstitutional unless the government can satisfy strict scrutiny. *Espinoza*, 140 S. Ct. at 2261.

**ANSWER:**    Paragraph 165 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants state that the United States Supreme Court precedent cited in paragraph 165 of the Complaint speaks for itself.

166.    Here, Plaintiffs Crown's and Northwestern's Christian beliefs and identity permeate their entire schools and missions. Offering education from a Christian perspective is a core part of their religious exercise.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 166 of the Complaint, and on that basis, deny them. The second sentence of paragraph 166 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny that they violated Crown's or Northwestern's free exercise rights in any manner whatsoever.

167.    The Loe family's sincerely held religious beliefs motivate them to provide their children with a Christian education and motivate the students to seek a Christian education.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 167 of the Complaint, and on that basis, deny them.

168. Ms. Erickson's sincerely held religious beliefs motivate her to provide her children with a Christian education. J.G.'s sincerely held religious beliefs motive him to seek a Christian education.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 168 of the Complaint, and on that basis, deny them.

169. Minnesota offers a public benefit through the PSEO program, providing funding for high school students to earn concurrent high school and college credit tuition free from Eligible Institutions.

**ANSWER:** Answering paragraph 169 of the Complaint, Defendants admit that students participating in the PSEO program have an opportunity to earn dual high school and college credits tuition free from Eligible Institutions.

170. Minnesota amended the definition of an "Eligible Institution" to exclude any institution that "require[s] a faith statement from a second student seeking to enroll in a postsecondary course" through the program or that "base[s] any part of the admission decision on a student's race, creed, ethnicity, disability, gender, or sexual orientation or religious beliefs or affiliations."

**ANSWER:** Answering paragraph 170 of the Complaint, Defendants state that the provisions of the Amendment speak for themselves.

171. The amendment discriminates against religious on its face because it (1) disqualifies religious postsecondary institutions, like Crown and Northwestern, that require faith statements for enrollment from participating in the PSEO program and (2) prevents parents of eligible high school students from enrolling their children in these otherwise-eligible institutions, tuition free, under the PSEO program.

**ANSWER:** Defendants deny paragraph 171 of the Complaint.

172.    The amendment requires Plaintiffs Crown and Northwestern to choose between maintaining their religious identities and receiving an otherwise available benefit for which they have been eligible for decades.

**ANSWER:**    Paragraph 172 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny that they have violated Crown's or Northwestern's free exercise rights in any manner whatsoever.

173.    It likewise forces the Loe family and the Erickson family to either forgo receipt of an otherwise-available benefit or forgo their right to seek an education in accordance with their religious beliefs.

**ANSWER:**    Paragraph 173 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny that they have violated the Loe or Erickson families' free exercise rights in any manner whatsoever.

174.    Plaintiffs are thus "disqualified from this generally available benefit 'solely because of their religious character.'" *Carson*, 142 S. Ct. at 1997 (quoting *Trinity Lutheran*, 582 U.S. at 462).

**ANSWER:**    Paragraph 174 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants state that the United States Supreme Court precedent quoted in paragraph 174 of the Complaint speaks for itself and deny that they have violated Plaintiffs' free exercise rights in any manner whatsoever.

175.    "By condition[ing] the available of benefits in that manner," Minnesota's PSEO program "effectively penalizes the free exercise of religion." *Id.* (internal quotations omitted).

**ANSWER:**    Paragraph 175 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants state that the United

States Supreme Court precedent quoted in paragraph 175 of the Complaint speaks for itself and deny that they have violated Plaintiffs' free exercise rights in any manner whatsoever.

176. The amendment serves no compelling, substantial, or legitimate government interest.

**ANSWER:** Defendants deny paragraph 176 of the Complaint.

177. The amendment is not narrowly tailored to achieve, nor is it rationally related to, any government interest.

**ANSWER:** Defendants deny paragraph 177 of the Complaint.

178. Defendants are persons within the meaning of 42 U.S.C. § 1983.

**ANSWER:** Paragraph 178 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny that MDE is a "person" for purposes of 42 U.S.C. § 1983.

179. Plaintiffs have suffered and will suffer harm absent relief.

**ANSWER:** Defendants deny paragraph 179 of the Complaint.

180. All preceding paragraphs are realleged and incorporated herein by reference.

**ANSWER:** Defendants restate, reallege, and incorporate by reference their responses to paragraphs 1 through 179 of the Complaint.

181. State action "burdening religious practice must be of general applicability." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542 (1993).

**ANSWER:** Paragraph 181 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants state that the United States Supreme Court precedent quoted in paragraph 181 of the Complaint speaks for itself

182. A law is not generally applicable if it treats "*any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021

(per curiam); *see also Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021); *Lukumi*, 508 U.S. at 542-46.

**ANSWER:**  Paragraph 182 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants state that the United States Supreme Court precedent quoted in paragraph 182 of the Complaint speaks for itself

183.  Under this rule, the amendment is not neutral or generally applicable on its face. The amendment punishes faith-based institutions for requiring PSEO students to sign their statement of faith.

**ANSWER:**  Defendants deny paragraph 183 of the Complaint.

184.  But it does not prohibit secular institutions from requiring PSEO students to affirm their agreement with the institution's secular ideologies or mission statements.

**ANSWER:**  Answering paragraph 184 of the Complaint, Defendants state that the provisions of the Amendment speak for themselves. To the extent a further response is deemed necessary, Defendants state that no other Eligible Institution requires high school students to acknowledge anything comparable to a faith statement as a condition of taking on-campus PSEO courses.

185.  The amendment further punishes religious institutions for giving admissions preference to PSEO students who share the institution's faith.

**ANSWER:**  Answering paragraph 185 of the Complaint, Defendants state that the provisions of the Amendment speak for themselves. To the extent a further response is deemed necessary, Defendants deny that they have violated Plaintiffs' free exercise rights in any manner whatsoever.

186.  But it does not prohibit secular institutions from giving admission preference to PSEO students who share the institution's secular ideology.

**ANSWER:** Answering paragraph 186 of the Complaint, Defendants state that the provisions of the Amendment speak for themselves. To the extent a further response is deemed necessary, Defendants state that no Eligible Institution makes admission decisions based exclusively on secular ideology.

187. The amendment must satisfy strict scrutiny.

**ANSWER:** Paragraph 187 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny paragraph 187 of the Complaint.

188. Discriminating against religious postsecondary schools is not the least restrictive means of furthering a compelling governmental interest.

**ANSWER:** Paragraph 188 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny that they have discriminated against Crown or Northwestern in any manner whatsoever.

189. Defendants are persons within the meaning of 42 U.S.C. § 1983.

**ANSWER:** Paragraph 189 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny that MDE is a "person" for purposes of 42 U.S.C. § 1983.

190. Plaintiffs have suffered, are suffering, and will suffer harm absent relief.

**ANSWER:** Defendants deny paragraph 190 of the Complaint.

191. All preceding paragraphs are realleged and incorporated herein by reference.

**ANSWER:** Defendants restate, reallege, and incorporate by reference their responses to paragraphs 1 through 190 of the Complaint.

192.     The Free Exercise Clause and Establishment Clause of the First Amendment mandate the equal treatment of all religious faiths without discrimination or preference.

**ANSWER:**   Paragraph 192 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny that they have discriminated against Plaintiffs in any manner whatsoever.

193.     The amendment excludes from PSEO benefits schools whose religious beliefs require that they build a campus community of like-minded believers, while religious schools with difference religious beliefs are included in the program.

**ANSWER:**   Paragraph 193 of the Complaint is a legal conclusion to which no response is required. To the extent a further response is deemed necessary, Defendants state that the provisions of the Amendment apply to all postsecondary institutions participating in the PSEO program.

194.     Likewise, religious students who wish to participate in Crown and Northwestern's campus community of believers who share their faith are excluded by the amendment's provisions, while students with different religious beliefs remain free to attend schools that accord with their faith.

**ANSWER:**   Paragraph 194 of the Complaint is a legal conclusion to which no response is required. To the extent a further response is deemed necessary, Defendants state that the provisions of the Amendment apply to all postsecondary institutions participating in the PSEO program.

195.     By design, the amendment denies government benefits to certain religious individuals and institutions but not others, resulting in discrimination among religious on the basis of religious views or religious status.

**ANSWER:**   Defendants deny paragraph 195 of the Complaint.

196.     All preceding paragraphs are realleged and incorporated hereby by reference.

**ANSWER:** Defendants restate, reallege, and incorporate by reference their responses to

paragraphs 1 through 195 of the Complaint.

197. "The First Amendment protects the right of religious institutions 'to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2055 (2020) (quoting *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952)).

**ANSWER:** Answering paragraph 197 of the Complaint, Defendants state that the United

States Supreme Court precedent quoted therein speaks for itself.

198. The First Amendment thus prohibits a state from interfering with a religious organization's internal affairs—including the behavioral standards that the organization sets for its members and matters of faith and doctrine.

**ANSWER:** Paragraph 198 of the Complaint is a legal conclusion to which no response

is required. To the extent a response is deemed necessary, Defendants deny that they have

interfered with Crown's or Northwestern's internal affairs.

199. To participate in the PSEO program, Plaintiffs Crown and Northwestern would need to abandon their religious requirement that admitted PSEO students sign and the schools' faith statements and agree to abide by the schools' doctrinal beliefs and religiously motivated tenets.

**ANSWER:** Answering paragraph 199 of the Complaint, Defendants admit only that in

order to participate in the PSEO program, Crown and Northwestern must meet the

requirements of Minn. Stat. § 124D.09

200. The amendment thus interferes with the ability of religious organizations like Plaintiffs Crown and Northwestern to manage their own internal, religious affairs, instead requiring them to conform their religious beliefs, practices, and membership requirements to the state's criteria in order to receive an otherwise-available public benefit.

**ANSWER:** Paragraph 200 of the Complaint is a legal conclusion to which no response

is required. To the extent a response is deemed necessary, Defendants admit only that in

order to participate in the PSEO program, Crown and Northwestern must meet the requirements of Minn. Stat. § 124D.09

201. Such coercion violates Plaintiffs Crown's and Northwestern's right to religious autonomy.

**ANSWER:** Paragraph 201 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny that they have violated Crown's or Northwestern's right to religious autonomy.

202. Defendants are persons within the meaning of 42 U.S.C. § 1983.

**ANSWER:** Paragraph 202 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny that MDE is a "person" for purposes of 42 U.S.C. § 1983.

203. Plaintiffs Crown and Northwestern have suffered and will suffer harm absent relief.

**ANSWER:** Defendants deny paragraph 203 of the Complaint.

204. All preceding paragraphs are realleged and incorporated herein by reference.

**ANSWER:** Defendants restate, reallege, and incorporate by reference their responses to paragraphs 1 through 203 of the Complaint.

205. "[A] law targeting religious beliefs is never permissible." *Trinity Lutheran*, 552 U.S. at 466 n.4 (quoting *Lukumi*, 508 U.S. at 533).

**ANSWER:** Answering paragraph 205 of the Complaint, Defendants state that the United States Supreme Court precedent quoted therein speaks for itself.

206. Because "[t]he Free Exercise Clause bars even 'subtle departures from neutrality' on matters of religion," the government "cannot impose regulations that are hostile to the religious beliefs of affected citizens and cannot act in a manner that passes

judgment upon or presupposes the illegitimacy of religious beliefs and practices," *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1731 (2018).

**ANSWER:**   Answering paragraph 206 of the Complaint, Defendants state that the United States Supreme Court precedent quoted therein speaks for itself.

207.   Defendants have targeted religious beliefs by categorically excluding a subset of religious institutions from participating in the PSEO program.

**ANSWER:**   Defendants deny paragraph 207 of the Complaint.

208.   Defendants targeted these religious institutions for disfavored treatment based on disagreement with their religious beliefs.

**ANSWER:**   Defendants deny paragraph 208 of the Complaint.

209.   Defendants do not have a compelling reason for targeting this subset of religious institutions, and they have not selected the means least restrictive of religious to further their interests.

**ANSWER:**   Defendants deny paragraph 209 of the Complaint, and further deny that they have targeted Plaintiffs.

210.   Defendants are persons within the meaning of 42 U.S.C. § 1983.

**ANSWER:**   Paragraph 210 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny that MDE is a "person" for purposes of 42 U.S.C. § 1983.

211.   Plaintiffs have and will suffer harm absent relief.

**ANSWER:**   Defendants deny paragraph 211 of the Complaint.

212.   All preceding paragraphs are realleged and incorporated hereby by reference.

**ANSWER:**   Defendants restate, reallege, and incorporate by reference their responses of paragraphs 1 through 211 of the Complaint.

213.   The "unconstitutional conditions doctrine ... vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 US. 595, 604 (2013).

**ANSWER:**   Answering paragraph 213 of the Complaint, Defendants state that the United

States Supreme Court precedent quoted therein speaks for itself.

214.   "The 'unconstitutional conditions' doctrine limits the government's ability to exact waivers of rights as a condition of benefits, even when those benefits are fully discretionary." *United States v. Scott*, 450 F.3d 863, 866 (9th Cir. 2006) (citations omitted); *see also Koontz*, 570 U.S. at 608 ("[W]e have repeatedly rejected the argument that if the government need not confer a benefit at all, it can withhold the benefit because someone refuses to give up constitutional rights." (citations omitted).

**ANSWER:**   Answering paragraph 214 of the Complaint, Defendants state that the United

States Supreme Court precedent quoted therein speaks for itself.

215.   To participate in Minnesota PSEO program, Plaintiffs Crown and Northwestern must give up their religious identity by abandoning faith-based requirements for on-campus admissions.

**ANSWER:**   Answering paragraph 215 of the Complaint, Defendants admit only that in

order to participate in the PSEO program, Crown and Northwestern must meet the

requirements of Minn. Stat. § 124D.09

216.   To participate in Minnesota's PSEO program, the Loe family and the Erickson family must forfeit their religious convictions to seek and provide their children with a religious education.

**ANSWER:**   Defendants deny paragraph 216 of the Complaint.

217.   Such requirements violate the unconstitutional conditions doctrine.

**ANSWER:**   Defendants deny paragraph 217 of the Complaint.

218.   Defendants are persons within the meaning of 42 U.S.C. § 1983.

**ANSWER:** Paragraph 218 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny that MDE is a "person" for purposes of 42 U.S.C. § 1983.

219. Plaintiffs have and will suffer harm absent relief.

**ANSWER:** Defendants deny paragraph 219 of the Complaint.

220. All preceding paragraphs are realleged and incorporated herein by reference.

**ANSWER:** Defendants restate, reallege, and incorporate by reference their responses to paragraphs 1 through 219 of the Complaint.

221. Using government power to force a group that is formed for expressive purposes to include a message not its own "violates the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995).

**ANSWER:** Paragraph 221 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants state that the United States Supreme Court precedent quoted in paragraph 221 of the Complaint speaks for itself.

222. The Free Speech Clause prohibits the government from compelling people to speak messages against their will.

**ANSWER:** Paragraph 222 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny that they have violated Plaintiffs' free speech rights.

223. The Free Speech Clause also prohibits the government from forcing a group formed for expressive purposes to accept members who oppose those purposes. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648, 650, 659 (2000).

**ANSWER:** Paragraph 223 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants state that the United States Supreme Court precedent cited in paragraph 223 of the Complaint speaks for itself.

224. Crown and Northwestern were formed for the expressive purpose of providing a Christ-centered higher education. They are expressive associations within the meaning of *Hurley* and *Dale*.

**ANSWER:** Defendants presently lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 224 of the Complaint, and on that basis, deny them. The second sentence of paragraph 224 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants state that the United States Supreme Court precedent cited in the second sentence of paragraph 224 of the Complaint speaks for itself.

225. Minnesota amended its PSEO law in a way that would require religious schools that participate in the program to admit students who are opposed to the school's religious views and message.

**ANSWER:** Answering paragraph 225 of the Complaint, Defendants state that the provisions of the Amendment speak for themselves.

226. The amendment would also prohibit schools like Crown and Northwestern from asking students in the PSEO program to support the school's religious schools and message.

**ANSWER:** Answering paragraph 226 of the Complaint, Defendants state that the provisions of the Amendment speak for themselves.

227. These rules would alter the content of Crown's and Northwestern's religious messages.

**ANSWER:** Answering paragraph 227 of the Complaint, Defendants state that the provisions of the Amendment speak for themselves.

228. These rules would therefore "significantly affect" Crown's and Northwestern's "ability to advocate" for their religious "viewpoints." *Dale*, 530 U.S. at 650.

**ANSWER:** Paragraph 228 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants state that the United States Supreme Court precedent quoted in paragraph 228 of the Complaint speaks for itself.

229. The amendment must thus satisfy strict scrutiny.

**ANSWER:** Paragraph 229 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny paragraph 229 of the Complaint.

230. Coercing religious schools into altering their religious speech and expression serves no compelling government interest.

**ANSWER:** Paragraph 230 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny that the Amendment coerces Crown or Northwestern to alter their religious speech or expression.

231. Minnesota has not selected the means least restrictive of religious speech to further its interests.

**ANSWER:** Paragraph 231 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny paragraph 231 of the Complaint.

232. Defendants are persons within the meaning of 42 U.S.C. § 1983.

**ANSWER:** Paragraph 232 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny that MDE is a "person" for purposes of 42 U.S.C. § 1983.

233. Crown and Northwestern have suffered and will suffer harm absent relief.

**ANSWER:** Defendants deny paragraph 233 of the Complaint.

234. All preceding paragraphs are realleged and incorporated herein by reference.

**ANSWER:** Defendants restate, reallege, and incorporate by reference their responses to paragraphs 1 through 233 of the Complaint.

235. The Equal Protection Clause prohibits discrimination on the basis of religion.

**ANSWER:** Paragraph 235 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny that they have violated Plaintiffs' equal protection rights.

236. The amendment discriminates against religious on its face because it (1) denies PSEO eligibility to religious postsecondary schools like Crown and Northwestern while providing eligibility to secular institutions and (2) denies PSEO-eligible individuals like the Loe family and the Erickson family access to a subset of religious institutions while still permitting access to other, secular schools that participate in Minnesota's PSEO program.

**ANSWER:** Defendants deny paragraph 236 of the Complaint.

237. The amendment must thus satisfy strict scrutiny.

**ANSWER:** Paragraph 237 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny paragraph 237 of the Complaint.

238. Defendants do not have a compelling interest in discriminating on the basis of religious and denying religious schools and individuals equal protection.

51

**ANSWER:** Paragraph 238 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny paragraph 238 of the Complaint.

239. Defendants' religious discrimination is not the least restrictive means to further any governmental interest.

**ANSWER:** Paragraph 239 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny that they have discriminated against Plaintiffs in any manner whatsoever.

240. Defendants are persons within the meaning of 42 U.S.C. § 1983.

**ANSWER:** Paragraph 240 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny that MDE is a "person" for purposes of 42 U.S.C. § 1983.

241. Plaintiffs have suffered and will suffer harm absent relief.

**ANSWER:** Defendants deny paragraph 241 of the Complaint.

242. All preceding paragraphs are realleged and incorporated herein by reference.

**ANSWER:** Defendants restate, reallege, and incorporate by reference their responses of paragraphs 1 through 241 of the Complaint.

243. The Minnesota Constitution provides that "any control of or interference with the rights of conscience" shall not "be permitted, or any preference be given by law to any religious establishment or mode of worship;" except in the interests of "the peace or safety of that state." Minn. Const. Art. I, § 16.

**ANSWER:** Answering paragraph 243 of the Complaint, Defendants state that the provisions of Article I, § 16 of the Minnesota Constitution speak for themselves.

244. The amendment burdens Plaintiffs' sincere religious beliefs by forcing them to choose between their religious convictions and a state benefit.

**ANSWER:** Paragraph 244 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants state that the provisions of the Amendment speak for themselves.

245. The State must demonstrate that the amendment is the least restrictive means of pursuing a compelling government interest. *State v. Hershberger*, 462 N.W.2d 393, 398 (Minn. 1990).

**ANSWER:** Paragraph 245 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants state that the Minnesota Supreme Court precedent cited in paragraph 245 of the Complaint speaks for itself.

246. The amendment interferes with Plaintiffs' right of conscience by conditioning a benefit on abandoning Plaintiff schools' religious principles and community standards and by denying the Loe family's, Ms. Erickson's, and J.G.'s ability to attend the school of their choice on the basis of religion.

**ANSWER:** Paragraph 246 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants state that the provisions of the Amendment speak for themselves.

247. The Defendants cannot show a compelling interest in excluding Plaintiffs from the PSEO program on the basis of their religious beliefs and practices and it cannot show that their exclusion is the least restrictive means of advancing a compelling interest.

**ANSWER:** Paragraph 247 of the Complaint is a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendants deny paragraph 247 of the Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

1.     The Complaint fails, in whole or in part, to state a claim upon which relief may be granted.

2.     Plaintiffs' claims are barred in whole or in part by their lack of standing.

3.     The Court lacks subject matter jurisdiction over Plaintiffs' claims for damages under 42 U.S.C. § 1983, their claims against MDE, and their claim under the Minnesota Constitution.

4.     This matter is not ripe.

5.     Crown and Northwestern are state actors for purposes of 42 U.S.C. § 1983 and are therefore required to comply with the United States Constitution in providing PSEO courses to Minnesota public high school students.

6.     The relief requested by Plaintiffs is barred by the Establishment Clause of the First Amendment to the United States Constitution.

7.     The relief requested by Plaintiffs is barred by the Free Exercise Clause of the First Amendment to the United States Constitution.

8.     The relief requested by Plaintiffs is barred by the Minnesota Constitution.

9.     The relief requested by Plaintiffs is barred by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

10.     Plaintiffs' claims are barred in whole or in part by immunity doctrines.

11.     Defendants reserve the right to assert additional defenses as may be established by the facts of this case.

**WHEREFORE**, Defendants pray for the following relief:

1.	That Plaintiffs take nothing and their causes of action be dismissed with prejudice and on the merits;

2.	That Defendants be awarded, pursuant to applicable laws, their costs, disbursements, and reasonable attorney fees incurred in defending this action; and

3.	Such other relief deemed just and proper.

## DEFENDANT MINNESOTA DEPARTMENT
## OF EDUCATION'S COUNTERCLAIM

For its Counterclaim against Crown College ("Crown") and University of Northwestern – St. Paul ("Northwestern"), the Minnesota Department of Education ("MDE") alleges as follows:

## INTRODUCTION

1. MDE counterclaims to stop Crown and Northwestern from violating the civil rights of public high school students participating in Minnesota's Postsecondary Enrollment Options ("PSEO") program, which MDE administers.

2. No student should have to choose between publicly eschewing their religious beliefs and participating in the PSEO program, or be forced to publicly disavow their sexuality or gender identity to obtain free public education.

3. Yet this is precisely what Crown and Northwestern demand of public high school PSEO students to set foot on their campuses, using public funds disbursed by MDE to exclude all who refuse to accept their religious beliefs publicly and unconditionally.

4. It matters not that a student lives one block from Crown and has no reliable transportation to the next closest participating PSEO postsecondary institution, which is approximately 27 miles away. Or that a student lives next door to Northwestern and attending PSEO there is the only option that works for their family.

5. By this Counterclaim, MDE seeks declaratory and injunctive relief prohibiting Crown and Northwestern from interfering with the religious rights of, and

discriminating against, public high school students participating in Minnesota's PSEO program.

## PARTIES, JURISDICTION, AND VENUE

6.      MDE is an agency of the State of Minnesota ("State" or "Minnesota"), established and empowered to "carry out the provisions of chapters 120A to 129C and other related education provisions under law." Minn. Stat. § 120A.02. MDE's principal office is located in Minneapolis, Minnesota.

7.      Crown is a postsecondary institution located in Saint Bonifacius, Minnesota.

8.      Northwestern is a postsecondary institution located in St. Paul, Minnesota.

9.      The action arises under the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and Minnesota law.

10.     The Court has jurisdiction over MDE's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

11.     The Court has supplement jurisdiction over MDE's state claims pursuant to 28 U.S.C § 1367(a).

12.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (2).

## FACTUAL ALLEGATIONS

### About the PSEO Program

13.     Under the Minnesota Constitution, "it is the duty of the legislature to establish a general and uniform system of public schools" and to "make such provisions by taxation or otherwise as will secure a thorough and efficient system of public schools throughout the state." Minn. Const. Art. XIII, § 1.

14.     As enshrined in the Minnesota Constitution, the provision of public education in Minnesota is and has traditionally been the exclusive prerogative of the State and its political subdivisions.

15.     Through Minnesota Statutes chapter 124D and other related statutes, the Minnesota Legislature has provided a comprehensive scheme for the provision and funding of public education.

16.     MDE is the State agency charged with overseeing the provision and funding of public education and is responsible for administering the PSEO program.

17.     The PSEO program allows qualifying 10th-, 11th- and 12th-grade public school students to earn dual high school and college credits tuition free while still in high school, through enrollment in and successful completion of courses at qualifying postsecondary institutions.

18.     For some public school students, the PSEO program is their only means of taking certain courses not offered by their public high schools.

19.     PSEO courses taken by public high school students must meet graduation and subject area requirements of their public school districts.

20.     To participate in PSEO, public high school students must give up at least one class at their public high schools during the core school day.

21.     Public school districts whose students participate in the PSEO program lose general education revenue from the State due to the reduction of average daily membership (ADM) funding.

22.     For example, for a public high school student enrolled full-time in PSEO coursework, the student's public school district receives 88% less general education revenue from the State for that student than it would if the student did not participate in the PSEO program.

23.     Some public school districts lose significant general education revenue from the State due to their high school students' participation in the PSEO program.

24.     Postsecondary institutions must be located in Minnesota and approved by MDE to offer PSEO courses.

25.     Sixty-two postsecondary institutions are currently approved by MDE to offer PSEO courses ("Eligible Institutions"), including Crown and Northwestern.

**Crown and Northwestern Receive Public Dollars for PSEO Courses**

26.     In exchange for providing PSEO courses to public high school students, Eligible Institutions, including Crown and Northwestern, receive remuneration from MDE at fixed rates.

27.     The funds MDE pays postsecondary institutions for teaching PSEO courses to public high school students would otherwise have been provided to these students' public school districts if the students did not participate in the PSEO program and were enrolled full-time in their school districts.

28.     MDE pays Eligible Institutions public funds to teach public high school students PSEO courses that count toward their public high school graduation requirements.

29.     Since the 2017-2018 school year, MDE has paid Crown more than $4 million for PSEO courses that Crown provided to 1,781 high school students.

30. Since the 2017-2018 school year, MDE has paid Northwestern more than $27 million for PSEO courses that Northwestern provided to 8,901 high school students.

31. Each Eligible Institution establishes its own requirements and deadlines for enrollment in PSEO courses.

32. Eligible Institutions may not offer sectarian PSEO courses.

**Crown Discriminates Against Public High School Students**

33. Crown is the only postsecondary institution that provides PSEO courses in a 25-mile radius of St. Bonifacius, Minnesota.

34. A public high school student who lives in St. Bonifacious would need to travel more than 25 miles to take PSEO courses at a postsecondary institution other than Crown.

35. To take PSEO courses on Crown's campus, public high school students must agree to Crown's Statement of Faith, which includes the following provisions:

    a)    "There is one God, who is infinitely perfect, existing eternally in three persons."

    b)    "Jesus Christ is true God and true man."

    c)    "All men are born with a sinful nature, are separated from the life of God, and can be saved only through the atoning work of the Lord Jesus Christ."

    d)    "The portion of the impenitent and unbelieving is existence forever in conscious torment[.]"

36. To take PSEO courses on Crown's campus, public high school students are also required to abide by Crown's Community Covenant, which includes the following provisions:

a) "Crown College is a Christ-centered community which emphasizes spiritual transformation, academic excellence, and global engagement. We affirm our desire to love the Lord with all our heart, soul, mind and strength and our neighbor as ourselves (Mark 12:29-31). We agree together to the following standards that reinforce and support our love of God and each other."

b) "We commit to the Word of God as our authority. The Bible is without error in what it teaches and is our ultimate authority for what to believe and how to behave."

c) "We commit to the Lordship of Christ."

d) "In submission to Christ's authority, we commit ourselves to His Church, to prayer, worship, Bible study, fasting, discipleship, witnessing, and using or time, gift and finances for His glory."

e) "We are to put away behaviors such as … sexually immoral behavior (E.g., all sexual relations outside of the bounds of marriage between a man and a woman)[.]"

37. Failure to follow Crown's Community Covenant can result in disciplinary action, up to and including dismissal from the institution.

## Northwestern Discriminates Against Public High School Students

38. To take PSEO courses on Northwestern's campus, public high school students must agree to Northwestern's Declaration of Christian Community, which includes the following provisions:

a) "We at University of Northwestern - St. Paul and Northwestern Media have decided that whatever we do, for as long as we choose to be involved in this community, as students, teachers, administrators, on the board of trustees, as employees in the university or the media ministry, wherever we choose to live, our relationship to Jesus Christ and commitment to obey God's Word will be at the very center."

b) "We believe it is our duty, honor and delight to live under the Lordship of Christ, [and] to study His Holy Scriptures[.]"

c) "We, as members of Northwestern's Christ-centered community, will strive to love our God and each other as He loves us[.]"

d) "As students at University of Northwestern, we will strive to create an atmosphere of Christ-centered community. We will put our relationship to Jesus Christ at the center of our lives and our studies[.]"

e) "As students, we agree to watch out for each other, support each other, encourage each other, push ourselves and each other to work our hardest, to live with integrity, to pursue God's truth, to do our very best for the benefit of ourselves and other students, the benefit of University of Northwestern, its faculty and staff, and for the glory of our Lord and Savior Jesus Christ[.]"

f) "We understand that many rules and guidelines at University of Northwestern, instituted and followed by the whole community for the safety and benefit of all, were created to instruct and steer us into right choices, foster true Christ-centered community during our years here, and teach us how to spread Christ-centered community to others."

g) "We define marriage as being a covenant between one man and one woman[.]"

h) "As followers of Christ, we turn from sexual immorality in its many forms including but not limited to: pornography, pre-marital sexual relations, adultery, and same sex romantic intimacy and/or sexual relations. We come alongside those experiencing same sex attractions who choose to honor Christ by not pursuing those attractions, just as we come alongside all individuals who seek to live in purity before the Lord[.]"

i) "We believe we are created by God in His image as two distinct sexes: male and female (Gen. 1:26-28; Matt. 19:4-5). We believe that each person glorifies God and affirms His infinite holiness and wisdom by living in alignment with his or her birth sex. While we acknowledge there may be confusion and brokenness for some individuals in this area, we do not affirm or support transgender identity or expression. Instead, we place our faith and trust in God's redemptive plan."

j) "This document is a formal statement of individual commitment and shared purpose. I understand that, if I am accepted into or employed by University of Northwestern or Northwestern Media, I will be a productive member of the Northwestern community and I will choose

to live by the principles and expectations contained in this Declaration of Christian Community."

39.     Violation of Northwestern's Declaration of Christian Community can result in disciplinary action, up to and including dismissal from the institution.

## COUNT ONE
### Federal Establishment and Free Exercise Clauses

40.     MDE restates, realleges, and incorporates by reference the allegations in paragraphs 1 through 39 of this Counterclaim.

41.     The First Amendment to the United States Constitution "prohibits the establishment of religion and promises the free exercise of religion." *Trump v. Hawaii*, 138 S. Ct. 2392, 2424 (2018) (Kennedy, J., concurring).

42.     "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

43.     The Free Exercise Clause "protect[s] religious observers against unequal treatment[.]" *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542-43 (1993) (citation omitted).

44.     MDE is responsible for administering the PSEO program and ensuring that the State funds it disburses for the provision of public high school education are not used in a manner that violates the law.

45.     Via the PSEO program, the State has delegated the provision of some public education of certain Minnesota public high school students to Crown and Northwestern.

46. In providing on-campus PSEO courses to public high school students that count toward their public high school graduation requirements, Crown and Northwestern exercise power they possess solely by virtue of MDE's delegation and State law.

47. As such, Crown and Northwestern are state actors.

48. Crown's and Northwestern's on-campus PSEO admissions policies and practices establish, endorse, and promote a single religion, Christianity, in violation of the First Amendment.

49. Crown's and Northwestern's on-campus PSEO admissions policies and practices discriminate on the basis of religion by requiring some public high school students to disavow their religious beliefs and identities in order to take on-campus PSEO courses, in violation of the First Amendment.

50. By conditioning admission to on-campus PSEO courses in this manner, Crown and Northwestern penalize public high school students' free exercise of religion, in violation of the First Amendment.

51. By conditioning admission to on-campus PSEO courses in this manner, Crown and Northwestern coerce public high school students to conform their religious beliefs to Crown's and Northwestern's criteria, in violation of the First Amendment.

52. Crown's and Northwestern's on-campus PSEO admission policies target religious beliefs by categorically excluding non-Christians from attending on-campus PSEO courses, in violation of the First Amendment.

53.     Crown's and Northwestern's on-campus PSEO admissions policies and practices target non-Christians for disfavored treatment based on disagreement with their religious beliefs.

54.     To take on-campus courses at Crown and Northwestern, public high school students must forfeit their religious identity and convictions, in violation of the First Amendment.

55.     MDE has no adequate remedy at law.

## COUNT TWO
### Federal Free Speech Clause

56.     MDE restates, realleges, and incorporates by reference the allegations in paragraphs 1 through 55 of this Counterclaim.

57.     The First Amendment to the United States Constitution prohibits compelling an individual "to personally express a message [they] disagree[ ] with[.]" *Johanns v. Livestock Marketing Association*, 544 U.S. 500, 557 (2005).

58.     Crown's and Northwestern's on-campus PSEO admissions policies and practices compel non-Christian high school students to disavow their religious beliefs to take on-campus PSEO courses at these institutions, in violation of the First Amendment.

59.     Crown's and Northwestern's on-campus PSEO admissions policies and practices compel some high school students to disavow their sexual orientation to take on-campus PSEO courses at these institutions, in violation of the First Amendment.

60.     Crown's and Northwestern's on-campus PSEO admissions policies and practices compel some high school students to disavow their gender identity in order to take on-campus PSEO courses at these institutions, in violation of the First Amendment.

61.     MDE has no adequate remedy at law.

### COUNT THREE
### Federal Equal Protection Clause

62.     MDE restates, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 61 of this Counterclaim.

63.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits discrimination on the basis of religion, sexual orientation, or gender identity.

64.     Crown's and Northwestern's on-campus PSEO admissions policies and practices violate the Equal Protection Clause by discriminating against public high school students on the bases of religion, sexual orientation, and gender identity.

65.     Crown's and Northwestern's on-campus PSEO admissions policies and practices separately violate the Equal Protection Clause by disparately impacting public high school students who are not Christian, straight, and cisgender.

66.     MDE has no adequate remedy at law.

### COUNT FOUR
### State Freedom of Conscience and Establishment Provision

67.     MDE restates, realleges, and incorporates by reference its allegations in paragraphs 1 through 66 of this Counterclaim.

68.     Article I, § 16 of the Minnesota Constitution guarantees the right of every Minnesotan to worship "according to the dictates of [their] own conscience" and that this right "shall never be infringed[.]"

69.     Article I, § 16 of the Minnesota Constitution states that no "preference [shall] be given by law to any religious establishment or mode of worship … nor shall any money be drawn from the treasury for the benefit of any religious societies or religious or theological seminaries."

70.     Article 13, § 2 of the Minnesota Constitution states that "[i]n no case shall any public money or property be appropriated or used for the support of schools wherein the distinctive doctrines, creeds or tenets of any particular Christian or other religious sect are promulgated or taught."

71.     Crown's and Northwestern's on-campus PSEO admissions policies and practices violate Article 1, § 16 and Article 13, § 2 of the Minnesota Constitution because, without limitation, they infringe upon the religious rights of some public high school students; have the primary purpose and effect of advancing religion; result in indoctrination of religious belief; constitute impermissible endorsement of religion; excessively entangle the affairs of government and religion; and result in the expenditure of public money for the support of public education in which a distinctive doctrine, creed, and tenet is promulgated and taught.

72.     MDE has no adequate remedy at law.

## COUNT FIVE
### State Equal Protection Provision

73.     MDE restates, realleges, and incorporates by reference its allegations in paragraphs 1 through 72 of this Counterclaim.

74.     Article I, § 2 of the Minnesota Constitution provides that no Minnesotan "shall be disenfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land."

75.     A state constitutional right to equal protection arises from Article I, § 2 of the Minnesota Constitution. *Schroeder v. Simon*, 962 N.W.2d 471, 481 (Minn. 2021).

76.     Crown's and Northwestern's admissions policies and practices violate Article I, § 2 of the Minnesota Constitution by discriminating against public high school students on the bases of religion, sexual orientation, and gender identity.

77.     Crown's and Northwestern's admissions policies and practices separately violate Article I, § 2 of the Minnesota Constitution by disparately impacting public high school students who are not Christian, straight, and cisgender.

78.     MDE has no adequate remedy at law.

## COUNT SIX
### Minnesota Human Rights Act

79.     MDE restates, realleges, and incorporates by reference its allegations in paragraphs 1 through 78 of this Counterclaim.

80.     The Minnesota Human Rights Act ("MHRA") provides that "[i]t is an unfair discriminatory practice to discriminate in any manner in the full utilization of or benefit from any educational institution, or the services rendered thereby to any person because of

race, color, creed, religion, national origin, sex, age, marital status, status with regard to public assistance, sexual orientation, or disability[.]" Minn. Stat. § 363A.13, subd. 1.

81.     The MHRA further makes it illegal "to exclude, expel, or otherwise discriminate against a person seeking admission as a student … because of race, color, creed, religion, national origin, sex, age, marital status, status with regard to public assistance, sexual orientation, or disability." Minn. Stat. § 363A.13, subd. 2.

82.     Crown's and Northwestern's on-campus PSEO admissions policies and practices violate the MHRA by discriminating against public high school students on the bases of sex and sexual orientation.

83.     Crown's and Northwestern's on-campus PSEO admissions policies and practices separately violate the MHRA by disparately impacting public high school students who are not straight and cisgender.

84.     MDE has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, MDE demands a jury trial and requests the following relief:

1.      Entry of judgment declaring that Crown's and Northwestern's on-campus PSEO admissions policies and practices violate the Establishment, Free Exercise, and Free Speech Clauses of the First Amendment to the United States Constitution; the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; Article I, §§ 2 and 16 of the Minnesota Constitution; Article 13, § 2 of the Minnesota Constitution; and the MHRA as applied to public high school students participating in the PSEO program;

2. Preliminary and permanent injunctive relief prohibiting Crown and Northwestern from engaging in religious, sexual orientation, and gender identity discrimination against public high school students who apply for on-campus PSEO courses;

3. MDE's attorneys' fees and costs of suit, pursuant to 42 U.S.C. § 1988 and Minn. Stat. § 363A.33, subd. 7; and

4. Such other relief deemed just and equitable.

Dated: July 7, 2023               Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

*__s/ Martha J. Casserly__*
JEFF TIMMERMAN
Atty. Reg. No. 0352561
MARTHA J. CASSERLY
Atty Reg. No. 0148271
MADELEINE DEMEULES
Atty Reg. No. 0402648

Assistant Attorneys General

445 Minnesota Street, Suite 1400
St. Paul, MN 55101-2131
(651) 583-7660 (Timmerman)
(651) 757-1214 (Casserly)
(651) 300-6807 (DeMeules)
jeffrey.timmerman@ag.state.mn.us
marty.casserly@ag.state.mn.us
madeleine.demeules@ag.state.mn.us

ATTORNEYS FOR DEFENDANTS

|#5520568-v1