# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MELINDA and MARK LOE, *et al.*,<br><br>     *Plaintiffs,*<br><br>  v.<br><br>WILLIE JETT, *et al.*,<br><br>     *Defendants.* | Civil No. 0:23-cv-01527-NEB-JFD<br><br>**PLAINTIFFS CROWN COLLEGE AND UNIVERSITY OF NORTHWESTERN – ST. PAUL'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS DEFENDANT MINNESOTA DEPARTMENT OF EDUCATION'S COUNTERCLAIMS** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................iii

INTRODUCTION .......................................................................................... 1

BACKGROUND ........................................................................................... 3

LEGAL STANDARD .................................................................................... 6

I.    MDE Lacks Standing ........................................................................ 7

    A.    MDE Has Alleged No Injury to Itself ........................................ 7

    B.    MDE Independently Lacks Standing to Bring
        Its Minnesota Human Rights Act Claim .................................... 8

II.   MDE's Claims Under the Federal and State
    Constitutions Fail .............................................................................. 9

III.  MDE's MHRA Claim Independently Fails ..................................... 16

    A.    The MHRA's Exemptions Apply to Crown
        and Northwestern .................................................................... 16

    B.    Applying the MHRA Against the Schools Would
        Violate Their Rights Under the Religion Clauses ................... 17

    C.    Applying the MHRA Against the Schools Would
        Violate Their First Amendment Rights to
        Association and Assembly ....................................................... 19

CONCLUSION .......................................................................................... 21

CERTIFICATE OF COMPLIANCE .......................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Animal Legal Def. Fund v. Vaught*,
   8 F.4th 714 (8th Cir. 2021) .................................................................. 7

*Askew v. Trs. of Gen. Assembly*,
   644 F. Supp. 2d 584 (E.D. Pa. 2009)................................................... 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................6-7

*Blum v. Yaretsky*,
   457 U.S. 991 (1982)........................................................................ 15

*Bouldin v. Alexander*,
   82 U.S. 131 (1872) .......................................................................... 18

*Boy Scouts of Am. v. Dale*,
   530 U.S. 640 (2000)................................................................... 19, 20

*Brown v. Medtronic, Inc.*,
   628 F.3d 451 (8th Cir. 2010)............................................................... 7

*Carson v. Makin*,
   142 S. Ct. 1987 (2022)............................................................. 1, 3, 15

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
   590 F.3d 806 (9th Cir. 2010).............................................................. 13

*Christian Legal Soc'y v. Walker*,
   453 F.3d 853 (7th Cir. 2006)............................................................. 20

*Cox v. Mortgage Elec. Registration Sys., Inc.*,
   685 F.3d 663 (8th Cir. 2012)........................................................... 6, 7

*Dale v. U.S. Steel Corp.*,
   No. 13-CV-1046, 2015 WL 4138869
   (D. Minn. July 2, 2015) ...................................................................... 8

iii

*A.J. ex rel Dixon v. UNUM,*
  696 F.3d 788 (8th Cir. 2012) ................................................................. 6

*Doe v. Lutheran High Sch. of Greater Minneapolis,*
  702 N.W.2d 322 (Minn. Ct. App. 2005) .............................................. 17

*Flynn v. Estevez,*
  221 So. 3d 1241 (Fla. Dist. Ct. App. 2017) ........................................ 18

*Gomez v. N.D. Rural Dev. Corp.,*
  704 F.2d 1056 (8th Cir. 1983) ............................................................. 15

*Great Rivers Habitat All. v. FEMA,*
  615 F.3d 985 (8th Cir. 2010) ................................................................. 6

*Hodak v. City of St. Peters,*
  535 F.3d 899 (8th Cir. 2008) ............................................................ 7, 8

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v.
   EEOC,*
  565 U.S. 171 (2012) ...................................................................... 19, 20

*Jackson v. Metro. Edison Co.,*
  419 U.S. 345 (1974) ............................................................................. 11

*J.S. v. Saint Paul Acad. & Summit Sch.,*
  Civ. No. 11-1537, 2012 WL 591623 (D. Minn. Feb. 22,
  2012) .................................................................................................... 12

*Johnson v. Pinkerton Acad.,*
  861 F.2d 335 (1st Cir. 1988) ............................................................... 13

*Krueger v. Zeman Const. Co.,*
  781 N.W.2d 858 (Minn. 2010) ............................................................... 8

*Logiodice v. Trs. of Me. Cent. Inst.,*
  170 F. Supp. 2d 16 (D. Me. 2001) ...................................................... 13

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ............................................................................... 7

iv

*Manhattan Cmty. Access Corp. v. Halleck*,
    139 S. Ct. 1921 (2019) ........................................................................ 10

*Maxon v. Fuller Theological Seminary*,
    No. 20-56156, 2021 WL 5882035 (9th Cir. 2021) ............................... 18

*Minnesota Fed'n of Teachers v. Mammenga*,
    500 N.W.2d 136 (Minn. Ct. App. 1993) .............................................. 15

*Missouri v. Biden*,
    52 F.4th 362 (8th Cir. 2022) ................................................................ 7

*Nichols v. Metro. Ctr. for Indep. Living, Inc.*,
    50 F.3d 514 (8th Cir. 1995) ........................................................... 14, 15

*Rasmussen v. Two Harbors Fish Co.*,
    832 N.W.2d 790 (Minn. 2013) .............................................................. 9

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982) ................................................................... *passim*

*Roberts v. U.S. Jaycees*,
    468 U.S. 609, 623 (1984) .................................................................... 20

*Sabri v. Whittier All.*,
    833 F.3d 995 (8th Cir. 2016) ............................................................... 15

*Serbian E. Orthodox Diocese v. Milivojevich*,
    426 U.S. 696 (1976) ............................................................................ 18

*In re St. Thomas High Sch.*,
    495 S.W.3d 500 (Tex. App. 2016) ....................................................... 18

*State v. Wicklund*,
    589 N.W.2d 793 (Minn. 1999) ................................................ 10, 11, 14

*Tovar v. Essentia Health*,
    857 F.3d 771 (8th Cir. 2017) ................................................................ 9

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    582 U.S. 449, 467 (2017) ...................................................................... 3

v

*Watson v. Jones*,
  80 U.S. (13 Wall.) 679 (1871) ............................................................. 17

*Young Am. Corp. v. Affiliated Computer Servs. (ACS), Inc.*,
  424 F.3d 840 (8th Cir. 2005) ................................................................ 6

**Statutes**

An Act to Incorporate St. John Seminary,
  1857 Minn. Laws 207-08 ...................................................................... 13

Minn. Stat. § 124D.09 ............................................................. 3, 4, 14, 15

Minn. Stat. § 363A.26 ...................................................................... 16-17

Minn. Stat. § 363A.28 ............................................................................ 8

Minn. Stat. § 363A.33 ............................................................................ 9

**Other Authorities**

Emily Parker, *50-State Review: Constitutional
  obligations for public education,* Educ. Comm'n
  of the States (Mar. 2016) .................................................................... 13

H.F. 2497, 93rd Leg. (Minn. 2023) ........................................................ 4

Mass. Const., Pt. II, Ch. V, § II ........................................................... 13

Minnesota Department of Education, *Postsecondary
  Enrollment Options (PSEO) Reference Guide* (2021) ................ 4, 14-15

## INTRODUCTION

In 2022, the Supreme Court held in *Carson v. Makin* that religious schools could not be excluded from a Maine scholarship program for highschoolers solely because some government funds went to religious purposes. 142 S. Ct. 1987 (2022). In *Carson*, no party or amicus argued to the Supreme Court that accepting government-funded students would turn religious schools into state actors, and for good reason: that argument is meritless. But that is the argument the Minnesota Department of Education (MDE) has made here.

MDE now claims that, because they benefit from public funding, the Plaintiff Schools, Crown College and University of Northwestern – St. Paul, are themselves state actors bound by the First and Fourteenth Amendments and the corresponding provisions in the Minnesota constitution. Per MDE, this means that Crown's and Northwestern's religious characters, religious admissions decisions, and all other actions taken pursuant to their religious missions are an unconstitutional endorsement of religion and a potential violation of others' rights to the free exercise of religion, freedom of speech, and equal protection. MDE has also argued that the Schools' religious actions unlawfully discriminate on the basis of sex and sexual orientation under the Minnesota Human Rights Act (MHRA). Here, MDE claims that these alleged violations require exclusion of Crown and Northwestern from the Postsecondary Enrollment Options program (PSEO).

1

But these arguments are belied by MDE's own actions. For decades, it has approved Crown and Northwestern—and numerous other religious schools—as eligible for the PSEO program. It even recently agreed to a preliminary injunction extending the Schools' PSEO participation for the duration of this case, which is odd if MDE truly believes they are state actors infringing students' constitutional rights. Moreover, MDE has never treated other PSEO schools as state actors, not to mention the thousands of other private entities benefitting from public funding through a wide range of existing government programs.

At the outset, MDE's counterclaims must be dismissed because MDE lacks Article III standing to bring claims on behalf of the students it alleges are harmed by the Schools' religious policies. Separately, the MHRA does not authorize enforcement by MDE—it can be enforced only by the Minnesota Human Rights Commission. Because MDE lacks standing on all its counterclaims, the Court should dismiss them without addressing their merits.

Should the Court reach the merits, however, MDE's counterclaims are foreclosed not just by *Carson*, but by directly applicable Supreme Court precedent on state actors. In *Rendell-Baker v. Kohn*, the Court held that private schools are not government actors just because they accept public funds or participate in public education programs. 457 U.S. 830, 837 (1982). That is exactly this case. The merits of MDE's MHRA claim also fail. The MHRA expressly exempts religious schools who act in

2

accordance with their faith. If it did not, the law would violate the Schools' First Amendment rights to create a faith-based community for their students.

With these counterclaims, MDE is trying to force Crown and Northwestern to choose between living their faith and participating in the PSEO program. But that violates the core holding of *Carson* that putting schools to such a choice is a form of religious discrimination "odious to our Constitution." 142 S. Ct. at 1996 (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 467 (2017)). MDE's claims should be dismissed.

## BACKGROUND

Crown and Northwestern have served Minnesota high schoolers through the State's PSEO program for more than twenty years. Compl. ¶¶ 99, 140. The PSEO Program allows students to earn concurrent high school and postsecondary credits at no cost to the students or their families. *See* Minn. Stat. § 124D.09. Thousands of Minnesota students have used this program at colleges across the state to graduate from high school with up to two years of free college credits, which saves them significant time and expense.

The funding for the PSEO program follows the students. Each participating student applies to her choice of "Eligible Institution[s]," which are postsecondary schools approved by the Commissioner of Education to provide PSEO courses. *See* Minn. Stat. § 124D.09, subd. 3.

3

Once admitted, the student chooses which of the school's PSEO courses to take, and the school provides all the textbooks and materials for the class. *Id.* § 124D.09, subd. 19. All schools retain the right to set their own admissions criteria for PSEO students and to determine which courses to offer for PSEO credit. Minnesota Department of Education, *Postsecondary Enrollment Options (PSEO) Reference Guide* 17, 25 (2021). At the end of each semester, MDE reimburses the schools a set amount for each PSEO credit provided. *See* Minn. Stat. § 124D.09, subds. 13-21.

Historically, both religious and secular schools have participated in the PSEO program as "Eligible Institution[s]." *See* Compl. ¶¶ 99, 140. However, on May 24, 2023, Minnesota amended the statutory definition to exclude certain religious schools: specifically, those "institutions [that] require a faith statement" for students to enroll or that "base any part of the admission decision on a student's race, creed, ethnicity, disability, gender, or sexual orientation or religious beliefs or affiliations." H.F. 2497, 93rd Leg. (Minn. 2023).

Crown and Northwestern are private, Christian postsecondary schools that believe their campuses should be faith-filled, Christ-centered learning communities. *See* Compl. ¶¶ 109, 129. As part of its effort to create a campus environment focused on Christian discipleship, Crown requires all on-campus students to sign and live by its Statement of Faith and Community Covenant. *Id.* ¶ 91; Countercl. ¶¶ 35-36. Northwestern similarly requires all on-campus students to sign and abide by its

4

Declaration of Christian Community. Compl. ¶¶ 132-33; Countercl. ¶ 38. By signing, students affirm their belief in and commitment to living out the Christian beliefs that Crown and Northwestern each espouse. Compl. ¶¶ 92-95, 134-36. Both schools have maintained this expectation for their campus communities for decades. Compl. ¶¶ 99, 101, 104, 140, 142.

On May 24, Crown, Northwestern, and the individual plaintiffs in this case filed this lawsuit challenging the amended law as a violation of their rights under the First Amendment to the United States Constitution. *See* ECF No. 1. Defendants agreed to a preliminary injunction on June 13, 2023, which the Court entered the next day. ECF No. 20. Defendants then filed their initial answer on June 16, 2023, which included affirmative defenses but no counterclaims. ECF No. 21.

After Plaintiffs notified Defendants of their intention to seek early summary judgment, Defendants filed an amended answer on July 7, 2023. ECF No. 27. Along with the new answer, Defendant MDE filed counterclaims against Crown and Northwestern, alleging for the first time that the schools are state actors whose admissions practices violate the United States Constitution, the Minnesota Constitution, and the Minnesota Human Rights Act. Countercl. ¶¶ 40-84. Yet MDE has never previously objected to Crown's or Northwestern's PSEO admissions criteria despite decades of participation in the program. Defendants even agreed to a preliminary injunction that would "preserve the Status Quo," ECF No. 18, at ¶ 6, allowing both schools (and any others like them) to

5

continue offering their PSEO courses to high school students in accordance with their faith. Moreover, MDE has not brought similar claims against any other schools in Minnesota that have faith-based admissions requirements—only the two schools that are parties to this lawsuit. Indeed, the Schools are aware of no other instance where MDE or any other state agency has deemed a private entity to be a state actor solely by virtue of that entity's participation in a government program.

## LEGAL STANDARD

When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court "must accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party." *A.J. ex rel Dixon v. UNUM*, 696 F.3d 788, 789 (8th Cir. 2012). "The burden of proving federal jurisdiction, however, is on the party seeking to establish it, and this burden may not be shifted to the other party." *Great Rivers Habitat All. v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010) (cleaned up). Where the nonmoving party fails to plead facts sufficient to establish standing, the case must be dismissed for lack of jurisdiction. *See Young Am. Corp. v. Affiliated Computer Servs. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Cox v. Mortgage Elec. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012) (quoting *Ashcroft v. Iqbal*,

6

556 U.S. 662, 678 (2009)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

## I. MDE Lacks Standing

For its counterclaims against Crown and Northwestern to succeed, MDE "must satisfy the basic requirements of Article III standing." *Missouri v. Biden*, 52 F.4th 362, 369 (8th Cir. 2022). Standing must be addressed "before addressing the merits of a case." *Brown v. Medtronic, Inc.*, 628 F.3d 451, 455 (8th Cir. 2010). It is MDE's burden to show that it has suffered an "injury in fact" that is "concrete and particularized," fairly traceable to Crown's and Northwestern's challenged conduct, and redressable in court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). At the pleading stage, the counterclaimants "must allege sufficient facts to support a reasonable inference that they can satisfy the elements of standing." *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 718 (8th Cir. 2021). MDE has not done so.

### A. MDE Has Alleged No Injury to Itself

MDE does not allege that Crown's and Northwestern's statements of faith cause injury to MDE itself, only to public high school students. Countercl. at ¶¶ 49-54, 58-60, 64-65, 71, 76-77, 82-83. This violates the "general rule" that a plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties." *Hodak v. City of St. Peters*, 535 F.3d

899, 904 (8th Cir. 2008). MDE's claims must therefore be dismissed unless it can establish third-party standing to sue on behalf of students.

To show third-party standing, MDE must show that the third party (1) "suffered an injury in fact," (2) "had a close relation to" the claimant, and (3) "was hindered in his ability to protect his own interests." *Id.* To show a hindrance, MDE must allege that "some barrier or practical obstacle . . . prevents or deters the third party from asserting his or her own interest." *Id.*

MDE has alleged neither a "close relation" to the students it claims were injured nor that those students were hindered from protecting their own interests. Because MDE has alleged no facts relevant to its own injury and cannot establish third-party standing, it has not met the requirements of Article III. Its counterclaims must thus be dismissed.

## B. MDE Independently Lacks Standing to Bring Its Minnesota Human Rights Act Claim

The Minnesota Human Rights Act creates a cause of action for a "person aggrieved." Minn. Stat. § 363A.28, subd. 1. A person is aggrieved under the statute "only if he is the person who was protected under the relevant substantive provision of the MHRA." *Dale v. U.S. Steel Corp.*, No. 13-CV-1046, 2015 WL 4138869, at *5-7 (D. Minn. July 2, 2015) (citing *Krueger v. Zeman Const. Co.*, 781 N.W.2d 858, 862-63 (Minn. 2010)). The only other person who has standing to sue under the MHRA is the

Human Rights Commissioner. Minn. Stat. § 363A.33, subd. 1. MDE is neither of these.

MDE is not aggrieved under the provisions of the MHRA and does not have standing to sue. The Eighth Circuit, addressing standing under the MHRA and Title VII, found them to require "the same analysis" in considering "for whom Title VII and the MHRA create causes of action." *Tovar v. Essentia Health*, 857 F.3d 771, 775 (8th Cir. 2017) (citing *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 796 (Minn. 2013)). In *Tovar*, the Eighth Circuit held that the MHRA did not create a cause of action for an employee whose son was denied insurance coverage on the basis of his sex because the employee did not "suffer[] discrimination on the basis of her own protected characteristic." *Id.* at 776. Likewise here, MDE does not claim to be the subject of what it claims is discriminatory behavior by Crown and Northwestern. It does not claim to have suffered from discrimination at all. This court should therefore dismiss MDE's MHRA claims.

## II.  MDE's Claims Under the Federal and State Constitutions Fail

MDE's federal and state constitutional claims against Crown and Northwestern (Counts 1 through 5) also fail because both schools are private organizations, not state actors charged with upholding the U.S. or Minnesota constitutions.

It has long been established that the First Amendment prohibits only "*governmental* infringement" of the freedoms it protects. *Rendell-Baker*,

9

457 U.S. at 837 (emphasis added); *see also Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2019) (First Amendment "constrains governmental actors and protects private actors"). "Similarly, the Fourteenth Amendment, which prohibits the states from denying federal constitutional rights," applies only "to acts of the states, not to acts of private persons or entities." *Rendell-Baker*, 457 U.S. at 837. The same is true under the Minnesota constitution: its protections "are triggered only by state action." *State v. Wicklund*, 589 N.W.2d 793, 801 (Minn. 1999).

Thus, for example, in *Rendell-Baker*, the Supreme Court rejected claims brought by employees of a private school who alleged their employment had been terminated without due process of law. The teachers argued that the school was a state actor because public funding "accounted for at least 90%, and in one year 99%, of [the] school's operating budget." *Rendell-Baker*, 457 U.S. at 832. The Court rejected that argument, holding that "the relationship between the school and its teachers and counselors is not changed because the State pays the tuition of the students." *Id.* at 841.

The teachers pointed to several other factors that they thought made the private school a state actor, but the Court found none to be sufficient. First, the Court rejected the idea that the private school was a state actor because it was heavily regulated. *Id.* at 841-42. The Court emphasized that even "extensive and detailed" regulation would be insufficient to "make a [private entity's] actions state action," much less where its

actions are "not compelled or even influenced by any state regulation." *Id.* at 841. Second, the Court explained that the private school's performance of a public function would not make the school a state actor unless that function "has been 'traditionally the *exclusive* prerogative of the state,'" which does not include educating students. *Id.* at 842 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974)) (emphasis in original). Finally, the Court found no "symbiotic relationship" between the school and the state because "the school's fiscal relationship with the State [was] not different from that of many contractors performing services for the government." *Id.* at 843; *see also Wicklund*, 589 N.W.2d at 801 (holding under Minnesota law that "more is required to constitute state action than the involvement of state funds or state regulations").

This case is on all fours with *Rendell-Baker*. Indeed, MDE does not even attempt to allege facts that would distinguish it or meet the high standard necessary for Crown's and Northwestern's admissions decisions to be "fairly attributable to the state." *Rendell-Baker*, 457 U.S. at 838. Instead, MDE merely alleges that "[i]n exchange for providing PSEO courses to public high school students," Crown and Northwestern "receive remuneration from MDE at fixed rates," Countercl. ¶ 26; that the Minnesota Constitution tasks the state with establishing a public school system, Countercl. ¶ 13; that Crown and Northwestern engage in "the provision of some public education of certain Minnesota public high school students," Countercl. ¶ 45; and that by providing PSEO courses

11

that "count toward [students'] public high school graduation requirements, Crown and Northwestern exercise power they possess solely by virtue of MDE's delegation and state law," Countercl. ¶ 46. In short, MDE only even attempts to allege that Crown and Northwestern receive public funds and perform a public function.

But these allegations are legally insufficient to make Crown and Northwestern state actors. First, the receipt of public "remuneration" does not turn private parties into state actors. *See Rendell-Baker*, 457 U.S. at 841; *see also J.S. v. Saint Paul Acad. & Summit Sch.,* Civ. No. 11-1537, 2012 WL 591623, at *3 (D. Minn. Feb. 22, 2012) ("A private school is not a state actor . . . even if 'virtually all of [its] income [is] derived from government funding.'"). Otherwise, every private organization that receives any kind of state funding or contracts with the government would become a government actor. That would include schools that accept federal Pell Grants, private high schools that take tuition vouchers (as in *Carson*), adoption and foster care agencies that partner with the state, medical institutions that receive Medicare/Medicaid funds, and a host of other private institutions that are clearly not government actors.

Nor does educating high school students make Crown and Northwestern state actors because education is not a function that has traditionally been the exclusive prerogative of the state. *See id.* at 842. That the Minnesota Constitution requires a public education system does

12

not make education the state's "exclusive" prerogative. Private schools in Minnesota have been educating students for more than 160 years. *See, e.g.*, An Act to Incorporate St. John Seminary, 1857 Minn. Laws 207-08 (establishing a private school for "youths" in 1857). Beyond that, *every state constitution in the country*—including Massachusetts, the state at issue in *Rendell-Baker*, *see* Mass. Const., Pt. II, Ch. V, § II—has a similar clause requiring a public education system.[1] Yet multiple courts have held that providing an education (even at the state's expense) is not the exclusive function of the state. *See, e.g.*, *Johnson v. Pinkerton Acad.*, 861 F.2d 335, 338 (1st Cir. 1988) ("New Hampshire history shows that educating children of high school age was not traditionally an exclusive public function."); *Logiodice v. Trs. of Me. Cent. Inst.*, 170 F. Supp. 2d 16, 24 (D. Me. 2001), *aff'd* 296 F.3d 22 (1st Cir. 2002) (rejecting the argument that "the provision of a publicly funded education to all students between certain ages" in Maine was an exclusive function of the state); *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 814-15 (9th Cir. 2010) (rejecting the argument that providing "public educational services" to Arizona students was "traditionally and exclusively the province of the state" because that argument "is foreclosed by *Rendell-Baker*").

---

[1]   Emily Parker, *50-State Review: Constitutional obligations for public education*, Educ. Comm'n of the States 1 (Mar. 2016), https://perma.cc/5362-GGEV.

13

It is also not true that Crown and Northwestern exercise power to grant public school students high school credit. Crown and Northwestern simply provide the courses and postsecondary credit; high school credit is given by the public school districts themselves, as laid out in the PSEO Act. *See* Minn. Stat. § 124D.09, subd. 12(b) ("A district must grant academic credit to a pupil enrolled in a course for secondary credit[.]"). The Minnesota Legislature's "policy choice" to provide that "service[] for such students at public expense" "in no way" makes Crown and Northwestern state actors. *Rendell-Baker*, 457 U.S. at 842; *see also Wicklund*, 589 N.W.2d at 803 (holding that "public access" and "public financing" are insufficient to "transform [a private actor] from private to public . . . under the state constitution").

Notably, MDE has not alleged (nor could it) that the state exercises "direct" control over Crown and Northwestern or their admission policies such that the schools' actions could be attributed to the state. *Nichols v. Metro. Ctr. for Indep. Living, Inc.*, 50 F.3d 514, 518 (8th Cir. 1995) ("What was missing here and in *Rendell-Baker* . . . is direct government control, either of the organization . . . or of the conduct that caused the alleged deprivation of plaintiff's rights."). To the contrary, MDE specifically protects the discretion of Crown, Northwestern, and all other PSEO schools to set their own admissions criteria for PSEO students, determine which courses to offer for PSEO credit, and structure those courses how

14

they see fit. *See* Minnesota Department of Education, *Postsecondary Enrollment Options (PSEO) Reference Guide* 17, 25 (2021).

Minnesota "does not control or dictate" Crown's or Northwestern's admission decisions, and MDE has not alleged that it does. *See Nichols*, 50 F.3d at 518. Instead, Minnesota regulates which courses can qualify for PSEO credit and which students and institutions are eligible to participate in the program. *See generally* Minn. Stat. § 124D.09. But "[m]ere regulation does not convert a private organization's actions into state action . . . 'even if [the regulation is] extensive and detailed.'" *Sabri v. Whittier Alliance*, 833 F.3d 995, 1000 (8th Cir. 2016) (quoting *Rendell-Baker*, 457 U.S. at 841); *see also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Gomez v. N.D. Rural Dev. Corp.*, 704 F.2d 1056, 1058 (8th Cir. 1983) (explaining that even "extensive government regulation does not compel a finding of [government] action"). There must be significant oversight and control over the private entity or the entity's actions to make those actions attributable to the state, *see Nichols*, 50 F.3d at 518, something that MDE has not even attempted to allege.[2]

---

[2] To the extent MDE has somehow alleged that Crown's and Northwestern's participation in the program violates the state or federal establishment clauses, those claims are foreclosed by precedent. *See Carson*, 142 S. Ct. at 1997 ("a neutral benefit program in which public funds flow to religious organizations through the independent choices of private benefit recipients does not offend the Establishment Clause"); *Minnesota Fed'n of Teachers v. Mammenga*, 500 N.W.2d 136, 138-39 (Minn. Ct. App. 1993) ("PSEOA benefits . . . are indirect and incidental

For these reasons, MDE's "state actor" claims against Crown and Northwestern should be dismissed.

## III. MDE's MHRA Claim Independently Fails

Even if MDE had standing to sue Crown and Northwestern under the MHRA, its claim would fail because the MRHA exempts religious schools from the sections that form the basis for MDE's claim. Furthermore, applying the MHRA as MDE suggests would violate the Schools' First Amendment rights.

### A. The MHRA's Exemptions Apply to Crown and Northwestern

MDE's MHRA claim alleges that Crown's and Northwestern's admissions policies violate the Act "by discriminating against public high school students on the bases of sex and sexual orientation" and "by disparately impacting public high school students who are not Christian, straight and cisgender." Countercl. ¶¶ 82-83. But even if MDE had standing to sue Crown and Northwestern under the MHRA, it fails to note that the MHRA expressly exempts religious schools like Crown and Northwestern from the types of claims asserted. Specifically, Minnesota Statutes § 363A.26 provides that "[n]othing" in the MHRA prevents religious educational institutions like Crown and Northwestern from "limiting admission to or giving preference to persons of the same religion

---

as a matter of law" and do not violate Minnesota's establishment clauses in part because "participating students may attend either public or private universities and colleges").

or denomination." § 363A.26, subd. 1.  The Schools' requirement for students to sign a faith statement is specifically for that purpose: ensuring that the students embrace Crown's and Northwestern's same religious beliefs and practices.

The MHRA further provides that "in matters relating to sexual orientation," "[n]othing" prohibits religious schools from "taking *any* action with respect to education, employment, housing and real property, or use of facilities." Minn. Stat. § 363A.26, subd. 2 (emphasis added); *cf. Doe v. Lutheran High Sch. of Greater Minneapolis*, 702 N.W.2d 322, 330-31 (Minn. Ct. App. 2005) (holding that MHRA claims were unavailable to individuals fired from religious schools based on their sexuality). Crown and Northwestern are thus exempt under the MHRA from any claims of discrimination based on sexual orientation.

## B. Applying the MHRA Against the Schools Would Violate Their Rights Under the Religion Clauses

Applying the MHRA against Crown's and Northwestern's religious admissions decisions would run afoul of the First Amendment's Religion Clauses. For over a century, the First Amendment's church autonomy doctrine has required that "civil courts exercise no jurisdiction" over matters of "ecclesiastical government," including "theological controversy, church discipline, . . . or the conformity of the members of the church to the standard of morals required of them." *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 733 (1871). Courts have repeatedly applied this

constitutional principle in the context of religious school admissions. *See, e.g.*, *Maxon v. Fuller Theological Seminary*, No. 20-56156, 2021 WL 5882035, at *2 (9th Cir. 2021) (upholding dismissal of students' discrimination claims against seminary); *Flynn v. Estevez*, 221 So. 3d 1241, 1251 (Fla. Dist. Ct. App. 2017) (dismissing admissions claim against school because the "Church's governance of its parochial schools is inherently religious"); *In re St. Thomas High Sch.*, 495 S.W.3d 500, 512 & n.1 (Tex. App. 2016) (same; collecting cases).

Defendants' MHRA claim violates the Religion Clauses by demanding that this Court rule that Crown's and Northwestern's religious beliefs are discriminatory and that their religious policy of choosing students on the basis of their faith is illegal. But civil courts cannot parse a religious institution's sincere religious beliefs, second-guess its sincere religious judgments, or overrule its internal religious governance. Such analysis would do just what the First Amendment forbids: "deprive [Crown and Northwestern] of the right of construing their own church laws." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 714 (1976). Nor can they "decide who ought to be members of the church." *Bouldin v. Alexander*, 82 U.S. 131, 139-40 (1872). Courts have recognized that "a school's decision" about who to admit or deny as a student "is akin to a church's decision to remove or discipline one of its members" because "[t]he decision necessarily involves doctrinal criteria." *Askew v. Trs. of Gen. Assembly*, 644 F. Supp. 2d 584, 594 n.8 (E.D. Pa. 2009).

18

**C. Applying the MHRA Against the Schools Would Violate Their First Amendment Rights to Association and Assembly**

MDE's MHRA claim is also barred by Crown's and Northwestern's rights to association and assembly under the First Amendment. "[I]mplicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others in pursuit of" those activities. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647 (2000) (cleaned up). This freedom of association "plainly presupposes a freedom not to associate," and thus protects against laws that "force[] [a] group to accept members it does not desire." *Id.* at 623. As relevant here, the First Amendment protects the rights of groups to exclude individuals who undermine the groups' message on sexuality or marriage. *Id.* at 659. The rights of free association and assembly also protect school admissions decisions. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 189 (2012) (noting EEOC concession that "it would violate the First Amendment for courts . . . to compel the ordination of women . . . by an Orthodox Jewish seminary").

To decide if the right of association is implicated, courts must determine whether the group "engage[s] in some form of expression, whether it be public or private," and if the law at issue "significantly affect[s] the [organization's] ability to advocate public or private viewpoints." *Dale*, 530 U.S. at 648-50.

19

First, Crown and Northwestern engage in "some form of expression." *See* Compl. ¶¶ 87, 129 (describing Schools' missions to educate students in a faith-based setting). These associational interests are near their peak here because this case concerns both religious *and* academic associational interests. The First Amendment "gives special solicitude to the rights of religious organizations," *Hosanna-Tabor*, 565 U.S. at 189, in part because their "very existence is dedicated to the collective expression and propagation of shared religious ideals," making them "the archetype of associations formed for expressive purposes," *id.* at 200 (Alito, J., joined by Kagan, J., concurring).

Second, punishing Crown and Northwestern for holding certain religious beliefs about marriage and human sexuality would "significantly affect [their] ability to advocate public or private viewpoints." *Dale*, 530 U.S. at 650. Courts must "give deference to an association's view of what would impair its expression." *Id.* at 653. But here, the harm is plain: punishing the schools undermines their ability to establish moral standards for their campus communities. That is precisely the kind of "interfer[ence] with the internal organization or affairs of the group" forbidden by the right of expressive association. *See Christian Legal Soc'y v. Walker*, 453 F.3d 853, 861 (7th Cir. 2006) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984)).

## CONCLUSION

MDE lacks standing to pursue any of its counterclaims. Its claims also fail on the merits because Crown and Northwestern are not state actors, religious schools are exempt from the MHRA, and MDE's proposed relief would violate Crown's and Northwestern's constitutional rights. Accordingly, Crown and Northwestern respectfully request that the Court dismiss MDE's claims with prejudice.

Respectfully submitted this 28th day of July, 2023.

/s/ Diana Verm Thomson
Diana Verm Thomson*
Eric S. Baxter*
Benjamin A. Fleshman*
The Becket Fund for Religious
  Liberty
1919 Pennsylvania Ave. NW,
  Suite 400
Washington, DC 20006
Telephone: (202) 955-0095
Facsimile: (202) 955-0090
dthomson@becketlaw.org
*Admitted pro hac vice*

Emily E. Mawer
  (No. 0396329)
Dion Farganis
  (No. 0399219)
Lathrop GPM
80 South Eighth Street
500 IDS Center
Minneapolis, MN 55402

*Counsel for Plaintiff Schools*

## CERTIFICATE OF COMPLIANCE

This memorandum complies with the form and length requirements of Local Rule 7.1(f) and (h) because it contains 4840 words and has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ Diana Verm Thomson
Diana Verm Thomson

*Counsel for Plaintiff Schools*