UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MELINDA and MARK LOE, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>WILLIE JETT, *et al.*,<br><br>*Defendants*. | Civil No. 0:23-cv-01527-NEB-JFD<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL** |

## INTRODUCTION

The claims in this case are primarily, if not solely, legal. Minnesota attempts to exclude two Christian colleges—Crown College and University of Northwestern – St. Paul (the Schools)—from an otherwise available funding program simply because their admissions policies require students to sign a statement of faith. But the Constitution, and the Supreme Court's recent decision in *Carson v. Makin*, 596 U.S. 767 (2022), forbid such religious targeting. Defendants Minnesota Department of Education and Commissioner Willie Jett (MDE) hope to delay resolution of this legal issue via their motion to compel. Instead they seek to compel additional burdensome and unnecessary discovery

and to extend the discovery period for several more months. This Court should decline their request for at least three reasons.

*First*, MDE seeks taxing amounts of information from the Schools, including every syllabus, handout, and course evaluation from the hundreds of PSEO classes they have offered since 2017. These requests drastically outweigh the needs of the case. It would take the Schools months and intense resources to produce this information. Moreover, the Schools already *admit* what MDE seeks—that they are religious institutions that teach from a Christian perspective. Yet the only issue in this case is whether the Schools can be excluded from the PSEO program because of their religious admissions policies, not course content. And that is a purely legal question.

*Second*, even assuming MDE had a legitimate interest in investigating religious content in the Schools' PSEO courses, this lawsuit is not an appropriate vehicle for that investigation. MDE can administratively investigate schools' compliance with the PSEO program's "non-sectarian" requirement and should not be allowed to use this lawsuit as a fishing expedition. And again, because the Schools admit that PSEO classes are taught from a religious worldview, exclusion on that basis would also raise a purely legal question. Each separate incidence of religious content would have no bearing on the outcome and would merely constitute duplicative evidence.

*Third*, it is MDE that has failed to follow the basic rules of discovery. Its motion is based on requests that exceed the limits set by this Court in its pretrial scheduling order. And while Plaintiffs have timely completed their productions, MDE is nowhere near completing its own promised production.

For all these reasons, this Court should deny MDE's motion and maintain the existing scheduling order.

## PROCEDURAL HISTORY

In 2023, Minnesota passed a law barring the Schools from participating in its PSEO program because of their religious admissions requirements. Shortly after the law took effect, the Schools, along with three students and their families (collectively, Plaintiffs), sued. Compl., Dkt. 1.

From the start, Plaintiffs' position has been that their rights are clear under existing First Amendment law and that discovery is unnecessary. *See* Rule 26(f) Report, Dkt. 30 at 2. Shortly after Plaintiffs filed suit, however, MDE counterclaimed, arguing for the first time in PSEO's nearly 40-year history that private schools participating in the program are state actors. According to MDE, this means the Schools' religious "admissions policies" violate the First Amendment's Free Exercise and Establishment Clauses, among other laws. Am. Answer and Counterclaim, Dkt. 27 at 64-68. Although the Court initially agreed the case could be decided on the law, Order, Dkt. 25, after MDE

3

counterclaimed, it revoked permission for early summary judgment and ordered discovery in the "interests of judicial economy." Order, Dkt. 29. The Court limited discovery, however, stating: "No more than a total of 25 interrogatories . . . shall be served by each side. No more than 25 document requests and no more than 50 requests for admissions shall be served by each side." Scheduling Order, Dkt. 33 at 2.

The parties have since engaged in substantial discovery. In response to MDE's First Set of Requests for Production, Plaintiffs have produced documents totaling 6,677 pages, with its initial production on October 21, 2023. Thomson Decl. ¶ 3. MDE later served a Second Set of Requests for Production (at issue in this motion) on December 12, 2023. *Id.* ¶ 4. Plaintiffs timely objected on January 11, 2023, on grounds that the requests were unduly burdensome, sought information that was irrelevant or duplicative, and exceeded the limit ordered by the Court. *Id.* ¶ 5. Despite Plaintiffs' broad objections, on January 17, 2024, MDE's counsel asked when Plaintiffs would produce responsive documents. Thomson Decl., Ex. 2 at 2. Plaintiffs reiterated their objections and stated they did not intend to produce any responsive documents as the requests were not "reasonable or in good faith" and "exceeded the number of requests [MDE had] remaining." *Id.* Without further negotiation, MDE filed this motion to compel. During the alleged meet and confer, *see* Dkt. 54, MDE's attorney asked only whether MDE's proposed hearing date on

4

the motion was acceptable and offered no arguments for why it needed the documents requested. Thomson Decl. ¶ 7.

Meanwhile, all counsel had previously agreed to dates for the necessary depositions. *Id.* ¶ 8. Plaintiffs substantially completed their agreed-upon document production on January 25, 2024, five days before MDE's first deposition of Northwestern on January 30, 2024, and six days before its deposition of Crown on January 31. *Id.* ¶ 9. MDE proceeded with both depositions.

As for its own production, however, MDE has produced only 254 documents, many of which are duplicates. *Id.* ¶ 10. It has not even completed producing the documents it agrees are responsive. *Id.* ¶ 11. Plaintiffs nevertheless took their first deposition of MDE on January 29 and have additional depositions scheduled for February 7-8. *Id.* ¶ 8. At the January 29 deposition, MDE's counsel informed Plaintiffs that MDE still has a large number of responsive documents yet to be reviewed by counsel, let alone produced. *Id.* ¶ 12.

## ARGUMENT

**I. MDE's requests impose excessive burdens on the Schools in pursuit of irrelevant information.**

MDE's requests are drastically overbroad and excessively burdensome for information that is either irrelevant or duplicative of facts Plaintiffs readily admit.

## A. Document Request No. 22

Request No. 22: *Enrollment records, syllabi, course materials, handouts, and student evaluations for all PSEO courses taught at Crown and Northwestern, respectively, during the Relevant Period.*

Plaintiffs' Response: MDE's request would impose an immense, unjustifiable burden on the Schools while providing only irrelevant or undisputed information. Courts routinely deny motions to compel where the desired information is irrelevant or where "the burden or expense of the proposed discovery outweighs its likely benefit." *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361 (8th Cir. 2003); *United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, No. 13-cv-3003, 2021 WL 101193, at *25 (D. Minn. Jan. 12, 2021) (denying motion to compel discovery that was "extremely burdensome but offers only limited benefit"); *Satanic Temple v. City of Belle Plaine*, No. 19-cv-1122, 2021 WL 4199369, at *8 (D. Minn. Sep. 15, 2021) (denying motion to compel discovery that had "no relevance" to the plaintiff's claims).

Northwestern offers over 500 PSEO-eligible courses. Compl. ¶ 143. Crown offers over 300. *Id.* ¶ 102. MDE's request—which stretches back to 2017—thus encompasses thousands of "syllabi" and countless "course materials" and "handouts." None of those materials is easily accessible. The Schools would need months to comb through the files of every course professor, some of whom are no longer with the Schools, just to find syllabi. Finding course materials and handouts would be nearly impossible.

6

As for student "enrollment records" and "evaluations," the numbers are even more staggering. Between 1400 and 1600 PSEO students enroll at Northwestern each year. *Id.* ¶¶ 147-48. Crown serves between 300 and 500 annually. Each of those thousands of students have individual enrollment records and took multiple PSEO classes with their own evaluation records, all kept in the files of individual professors. MDE is thus demanding tens of thousands of student enrollment and evaluation records spanning six years.[1]

MDE fails to justify such an astonishing burden or even explain why these records would be relevant. In its motion, MDE asserts for the first time that the documents relate to its defense that the law at issue is the least restrictive means of serving the State's interest in preventing the violation of civil rights. Brief in Support of Mot. to Compel (Br.), Dkt. 55 at 6-7. But what matters for a strict scrutiny defense is what the State considered *when passing the legislation*, including what its interests were at the time and whether it had adequately considered any alternatives for achieving those interests *before* passing the legislation. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 n.8 (2022) ("Government 'justification[s]' for interfering with First Amendment rights 'must be genuine, not hypothesized or invented *post hoc* in response to litigation.'"

---

[1] Providing MDE the records and academic evaluations of students enrolled in specific classes would also intrude on the privacy of every PSEO student at Crown and Northwestern since 2017 for no good reason.

(quoting *United States v. Virginia*, 518 U.S. 515, 522 (1996) (alteration in original)). Previously unknown information dredged up from two targeted parties nearly a year after the law's enactment cannot justify the State's past actions and is therefore irrelevant.

Furthermore, MDE's arguments about religious content in the Schools' courses focus on the wrong provision of the PSEO law. The Schools have challenged the new provision excluding them from the PSEO program because of their faith-based admissions criteria, *see* Minn. Stat. 124D.09, subd. 3(a) (listing eligibility requirements for postsecondary institutions), not the requirement that PSEO courses be nonsectarian, *see id.* subd. 2. The contents of individual courses have nothing to do with Plaintiffs' claims because course content does not affect institutional eligibility to participate in the program.[2] If a course does not meet the nonsectarian requirement, then that course simply is ineligible for reimbursement by the State. That does not affect whether

---

[2] The Supreme Court has already made clear that prohibiting a religious school from participating in a state program based on the religious content of its courses violates the First Amendment. *See Carson*, 596 U.S. at 786-89. States can potentially decline to fund education *only* when it is intended to help students "prepare for the ministry." *Id.* at 788 (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 464 (2017)). Even then, "[f]unds could be . . . used for theology courses; only pursuing a 'vocational religious' *degree*" could be excluded. *Id*. Thus, under *Carson*, even if the nonsectarian requirement were at issue, it could not justify excluding the Schools from the PSEO program.

an institution is eligible to participate and thus does not relate to Plaintiffs' claims.

The contents of the Schools' classes are similarly irrelevant to MDE's counterclaims. MDE has alleged only that Crown's and Northwestern's on-campus "admissions policies"—not their classroom content—violate the United States and Minnesota Constitutions and the Minnesota Human Rights Act. *See* Countercl., Dkt. 27 at 64-68 (MDE's claims based solely on "on-campus PSEO admissions policies and practices"); *see also id.* at 69-70 (prayer for relief requesting injunction only of Schools' admissions practices). MDE has not alleged a violation of the nonsectarian requirement, nor has it alleged any wrongdoing based on anything other than the Schools' admissions policies. The Schools have already responded in full to MDE's discovery requests concerning their admissions practices. Nothing further should be required. *Cf. Sallis v. Univ. of Minn.*, 408 F.3d 470, 478 (8th Cir. 2005) (discovery in discrimination case "must be limited to the practices at issue in the case." (quoting *Onwuka v. Fed. Express Corp.*, 178 F.R.D. 508, 516 (D. Minn. 1997))).

Even if religious elements in the Schools' courses were relevant, MDE's request would still impose an unnecessary and grossly disproportionate burden compared with the benefit MDE hopes to obtain. The Schools have already admitted they teach all courses from a biblical worldview and anticipate their staff will incorporate prayer and biblical

9

teachings into the course material. *See* Thomson Decl., Ex. 4, at 13-16, Responses 21-23. Thus, there is no dispute the Schools have religious elements in their PSEO courses. The only remaining question is the legal significance of that undisputed fact.[3] Forcing the Schools to spend thousands more dollars and several more months collecting and reviewing tens of thousands of documents would provide no additional benefit.[4] It would only drag out the litigation and punish the Schools, which have already diligently provided thousands of documents in response to MDE's extensive discovery requests.

## B. Document Request No. 23

MDE's Request No. 23: *All communications during the Relevant Period between Crown and prospective or enrolled PSEO students, and between Northwestern and prospective or enrolled students, that reference, refer to, or relate in any way to faith, religion, prayer, sexual orientation, and/or gender identity.*

Plaintiffs' Response: MDE summarily asserts that this request is relevant to its counterclaims and defenses with no explanation. All claims and counterclaims center on the Schools' admissions policies and practices. Those policies and practices are undisputed and speak for themselves. The Schools' communications with current or prospective

---

[3] For all these reasons, the previously unproduced, undisclosed, and unverified course syllabus attached to MDE's motion is also irrelevant to the claims and counterclaims in this case. *See* Thomson Decl. ¶ 13.

[4] The Schools' bills for their discovery vendor have already surpassed $70,000. Thomson Decl. ¶ 15. The scope of this case does not call for such costs.

students have no bearing on whether the State can prohibit the Schools from having faith-based admissions policies.

Responding to this request would require significant time and money sifting through years of communications, with no discernible benefit. Indeed, in responding to MDE's prior requests seeking, *inter alia*, all documents that "memorialize, support, evidence, mention, refer to, or relate in any way to the Lawsuit and/or the allegations in the Complaint," Crown and Northwestern already produced communications with current and prospective PSEO students that reference faith, religion, prayer, and the Schools' religious admissions criteria. Thus, MDE already has many responsive communications in its possession. It fails to explain why these documents are insufficient for its purposes. MDE should not be permitted to fish around in the Schools' records without justification.

### C. Document Request No. 24

<u>MDE's Request No. 24</u>: *All documents that memorialize, reference, refer to, or relate in any way to Crown's and Northwestern's respective standards, requirements, and expectations for curricula and student learning in PSEO courses.*

<u>Plaintiffs' Response:</u> For all the reasons set forth above, MDE's bare assertion that it "entitled to learn" information about the Schools' curricula clearly signals a fishing expedition. Br. at 8. It is not even accompanied by an explanation of relevance. Again, only the Schools' admissions practices, not their curricula, are the subject of this lawsuit.

11

And the Schools have already admitted the religious content of their courses. No additional discovery is necessary.

### D. Document Request No. 25

<u>MDE's Request No. 25</u>: *All materials that Crown and Northwestern have used during the Relevant Period to advertise or market their respective PSEO programs to prospective PSEO students, the families of prospective PSEO students, secondary schools, homeschooling organizations, and/or churches.*

<u>Plaintiffs' Response</u>: MDE once again asserts it is "entitled" to this information with no explanation. Br. at 9. All claims in this case are about the Schools' admissions policies and practices. Those policies and practices are undisputed, and nothing in the Schools' marketing materials will change that.

## II. MDE has exceeded the permitted number of requests.

This Court should also deny the motion because MDE has exceeded the 25-request limit ordered by this Court. MDE's First Set of Requests included 21 distinct requests. The Second Set includes an additional 14. Because MDE has exceeded the limit, its motion should be denied.

MDE attempts to sneak in additional requests by lumping multiple plaintiffs, both Schools, into the same request. But it is well-established that each request served on each individual party is distinct. A party may not "unapologetically disguise multiple discovery requests into seemingly singular . . . requests for production" by directing single requests at multiple parties. *United States v. Talmage*, No. 1:16-cv-19, 2017 WL 2483797, at *3 (D. Utah June 8, 2017) (single request to three parties

"contain[ed] at least three separate requests—one for each government agency"); *Navajo Nation v. Urb. Outfitters, Inc.,* No. 12-cv-195, 2015 WL 11089521, at *4 (D.N.M. June 10, 2015) (requests demanding "each [of four] Defendant[s] to respond" were four separate requests (cleaned up)).

This Court's scheduling order was explicit that the 25-request limit should be counted by the number of requests "served by each side," not the number received by each party. Scheduling Order, Dkt. 33 at 2; *see Brown v. Bridges,* No. 3:12-cv-4947, 2013 WL 11842015, at *2 (N.D. Tex. Aug. 26, 2013) (where scheduling order allowed 40 requests "referring to the serving party," serving party exceeded limit by serving 40 requests on each party and demanding separate answers). Thus, each of MDE's Request Nos. 22-25 are at least two separate requests, as they are directed to both Schools separately. MDE notably does not respond to this objection, *see* Br. at 6-7, even though Plaintiffs clearly raised it. *See* Thomson Decl., Ex. 1.

Further, MDE shoehorns multiple demands into each request. A request is compound where it includes "distinct requests [that] are not dependent upon one another, but . . . can [each] stand alone." *Kovacs v. Hershey Co.,* No. 04-cv-1881, 2006 WL 1980291, at *4 (D. Colo. July 13, 2006); *see also Cambria Co. LLC v. Pental Granite & Marble, Inc.*, No. 12-cv-228, 2013 WL 12147608, at *2 (D. Minn. Oct. 17, 2013) (request compound where it asked for "authorship, inspiration, research, creation, development, conceptualization, and design" of party's products).

13

Multiple MDE requests meet this standard. Request No. 22 asks for (1) enrollment records, (2) syllabi, (3) course materials, (4) handouts, and (5) student evaluations. Request No. 23 asks for communications with both prospective PSEO students and current PSEO students. These requests stand alone and should be treated as distinct.

Accordingly, Plaintiffs have properly declined to produce documents in response to MDE's requests. *See Gorrell v. Sneath*, No. 1:12-cv-554, 2013 WL 4517909, at *6 (E.D. Cal. Aug. 26, 2013) (defendant "would not be required to respond to any [discovery requests]" where plaintiff exceeded number allowed). This Court can and should deny the motion on these grounds alone.

### III. There is not good cause to modify the scheduling order.

MDE's request to extend time is based solely on its motion to compel. Because that motion should be denied, there is no good cause to modify the scheduling order. *See, e.g.*, *Smith-Bunge v. Wis. Cent., Ltd.*, No. 15-cv-4383, 2017 WL 11463829, at *11 (D. Minn. May 1, 2017) (denying motion to compel and, because "no additional disclosures or discovery have been ordered and no discovery disputes remain," denying motion to modify scheduling order as well); *Moran v. Pak*, No. 16-cv-705, 2017 WL 11632943, at *3 (C.D. Cal. Jan. 4, 2017) ("In light of [the] denial of Plaintiff's motion to compel further discovery responses . . . there is no ongoing discovery dispute that would justify an extension of the case deadlines.").

14

Moreover, contrary to MDE's assertion, Plaintiffs have fully cooperated with MDE's other discovery requests. Plaintiffs have produced 6,677 pages of documents and have responded in full to MDE's other requests, as properly narrowed by agreement of the parties. Thomson Decl. ¶ 3. The parties have already conducted three of the seven scheduled depositions, including the depositions of both Schools, from whom the additional discovery at issue is sought, and the others are scheduled to be held within eight days of this filing. *Id.* ¶ 8. Only MDE has failed to fully respond to outstanding discovery requests, having failed to respond to Plaintiffs' notice of discovery deficiencies and indicated that it still has a large batch of unproduced documents. *Id.* ¶¶ 11-12.

The burdensome, irrelevant requests propounded by MDE do not justify extending discovery or any other deadlines in this case. The Court should therefore deny both the motion to compel and the motion to modify the scheduling order.

## CONCLUSION

For the reasons above, the Court should deny MDE's motion to compel and allow discovery to close according to the existing scheduling order.

Respectfully submitted this 1st day of February, 2024.

/s/ *Diana Verm Thomson*
Diana Verm Thomson*

15

Eric S. Baxter*
Benjamin A. Fleshman*
Andrea R. Butler*
The Becket Fund for
   Religious Liberty
1919 Pennsylvania Ave. NW,
   Suite 400
Washington, DC 20006
Telephone: (202) 955-0095
Facsimile: (202) 955-0090
dthomson@becketlaw.org
*Admitted pro hac vice

Richard C. Landon
   (No. 0396329)
Lathrop GPM
80 South Eighth Street
500 IDS Center
Minneapolis, MN 55402

Counsel for Plaintiffs

## CERTIFICATE OF COMPLIANCE

This memorandum complies with the form and length requirements of Local Rule 7.1(f) and (h) because it contains 3,340 words and has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

<u>/s/ *Diana Verm Thomson*</u>
Diana Verm Thomson

*Counsel for Plaintiffs*