## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MELINDA and MARK LOE, on their own behalf and as next friends of their children R.L. and O.L.; DAWN ERICKSON, on her own behalf and as next friend of her child J.G.; CROWN COLLEGE; and UNIVERSITY OF NORTHWESTERN – ST. PAUL, | Case No. 23-CV-1527 (NEB/JFD) |
| Plaintiffs, | ORDER ON MOTION TO DISMISS COUNTERCLAIMS |
| v. | |
| WILLIE JETT, in his official capacity as Minnesota Commissioner of Education; and MINNESOTA DEPARTMENT OF EDUCATION, | |
| Defendants. | |

Minnesota's Post-Secondary Enrollment Options ("PSEO") program allows high school students to take college-level courses and earn high school and college credits for free. The state recently passed legislation prohibiting colleges from participating in the program if they require a "faith statement" or select students based on religion. Two religious colleges, Crown College and the University of Northwestern – St. Paul, and individual plaintiffs sued the Minnesota Department of Education and various state officials, challenging the new law as a violation of their constitutional rights. (ECF No. 1 ("Compl.").) Defendants answered the complaint and MDE filed counterclaims against Crown and Northwestern. (ECF No. 27 at 56–70 ("Countercl.").) The schools now move to

dismiss MDE's counterclaims. (ECF No. 34.) For the reasons below, the motion to dismiss is denied.

## BACKGROUND

The Minnesota Constitution guarantees its residents a "general and uniform system of public schools." Minn. Const. Art. XIII, § 1. To fulfill its constitutional duty, the state established the PSEO program to promote "rigorous academic pursuits" and to provide "a wider variety of options" to high school students. Minn. Stat. § 124D.09, subdiv. 2. Under the program, high school students may take courses at local colleges and earn high school and college credits for free. (Countercl. ¶ 17); *see* Minn. Stat. § 124D.09, subdivs. 3(c), 12, 13.

MDE administers and funds the PSEO program. (Countercl. ¶¶ 16, 44); Minn. Stat. § 127A.41, subdiv. 1. MDE partners with local colleges and reimburses them for providing PSEO courses. (Countercl. ¶¶ 24–25, 27–28); *see* Minn. Stat. § 124D.09, subdivs. 13–21. To cover the cost, MDE reallocates funds from public school districts whose students participate in the PSEO program. (Countercl. ¶ 21.)

Plaintiffs Crown and Northwestern participate in the PSEO program. (*Id.* ¶ 25.) As participants, the schools receive funding from the state to provide PSEO courses to public high school students. (*Id.* ¶ 26) During the past six years, the schools have collectively received more than $30 million from the state to provide PSEO courses to more than 10,000 public high school students. (*Id.* ¶¶ 29–30.)

If a student wants to enroll in PSEO courses at Crown or Northwestern, the student must agree to the schools' statements of faith. (*Id.* ¶¶ 35, 38.) The faith statements require students to affirm that Jesus Christ is the one true God, marriage is a bond between "one man and one woman," same-sex intimacy and pre-marital sexual relations are "immoral[]," and transgender individuals are mired in "confusion and brokenness." (*Id.* ¶¶ 35, 38.)

In May 2023, the state passed legislation prohibiting colleges from participating in the PSEO program if they require a "faith statement" or select students based on religion. H.F. 2497, 5th Engrossment, 93rd Leg. (Minn. 2023). Crown, Northwestern, and individual plaintiffs sued MDE and various state officials, arguing that the amended law violates their free exercise, free speech, and equal protection rights. Defendants answered, and MDE filed counterclaims against the schools, alleging that the schools' admissions practices violate the First and Fourteenth Amendments, the Minnesota Constitution, and the Minnesota Human Rights Act.

## ANALYSIS

The schools move to dismiss MDE's counterclaims for lack of subject-matter jurisdiction and for failure to state a claim. Under Rule 12(b)(1), if the Court determines it lacks subject-matter jurisdiction over the counterclaims, it must dismiss them. *Bueford v. Resol. Tr. Corp.*, 991 F.2d 481, 485 (8th Cir. 1993). And under Rule 12(b)(6), the Court may dismiss the counterclaims for "failure to state a claim upon which relief can be granted." The counterclaims must contain "enough facts to state a claim to relief that is plausible on

3

its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A counterclaim has "facial plausibility" when the counter-claimant pleads factual content that allows the court to draw the reasonable inference that the counter-defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## I.       Standing

To prevail on its counterclaims, MDE must establish standing under the United States Constitution and, because MDE asserts a counterclaim under the MHRA, state standing. The Court considers each in turn.

### A.       Article III Standing

The jurisdiction of federal courts is limited to cases and controversies. U.S. Const. Art. III, § 2; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). Standing is a jurisdictional requirement "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The doctrine of *parens patriae* allows a state to bring an action on behalf of the interest of its residents. To establish *parens patriae* standing, a state must assert: (1) an injury to its "quasi-sovereign interest"; and (2) that the injury affects a "sufficiently substantial segment of its population." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982).

A "quasi-sovereign interest" is a judicial construct that "does not lend itself to a simple or exact definition." *Id.* at 601. A state has a quasi-sovereign interest in the "health and well-being—both physical and economic—of its residents in general." *Id.* at 607. In

4

addition to physical or economic interests, the Supreme Court has recognized a state's "interest in securing residents from the harmful effects of discrimination." *Id.* at 609.

MDE has plausibly alleged a quasi-sovereign interest in protecting Minnesota public high school students from the harmful effects of discrimination. To enroll in PSEO courses at Crown or Northwestern, a student must agree to the schools' statements of faith. (Countercl. ¶¶ 35, 38.) The faith statements require students to affirm their commitment to Christianity, to acknowledge that marriage is a bond between "one man and one woman," that same-sex intimacy and pre-marital sexual relations are "immoral[]," and to disavow "transgender identity or expression." (*Id.* ¶¶ 35, 38.) MDE has plausibly alleged that these statements discriminate against Minnesota public high school students based on religion, sexual orientation, and gender identity.

"One helpful indication" of *parens patriae* standing is when a state alleges an injury to the health and well-being of its residents that the state "if it could, would likely attempt to address through its sovereign lawmaking powers." *Snapp*, 458 U.S. at 607. That is exactly what MDE has done here. Minnesota attempted to—and did, in fact—address this alleged injury through the PSEO legislation. *See* H.F. 2497 Sec. 45, 5th Engrossment, 93rd Leg. (Minn. 2023); *see also Texas v. Becerra*, 667 F. Supp. 3d 252, 267–68 (N.D. Tex. 2023) (holding that Texas had *parens patriae* standing because the state had issued executive orders to address the alleged injury). MDE has plausibly alleged a quasi-sovereign interest in protecting Minnesota residents from discrimination.

The schools' attempt to distinguish *Snapp* is unpersuasive. The schools argue that *Snapp* hinged on Puerto Rico's "quasi-sovereign interest in 'full and equal participation in the federal employment service scheme established' by two federal statutes." (ECF No. 43 at 21[1] (citing *Snapp*, 458 U.S. at 609).) Because MDE's alleged injury does not implicate federalism concerns, the schools maintain that *Snapp* does not apply and MDE lacks *parens patriae* standing.[2]

In *Snapp*, the Supreme Court considered Puerto Rico's allegations that: (1) the defendants discriminated against its residents; and (2) its residents were denied access to employment opportunities that they were entitled to under federal law. *Snapp*, 458 U.S. at 608. The Court held that Puerto Rico had a quasi-sovereign interest in protecting its residents from discrimination and "[a]lternatively" in ensuring its residents had access to a federal employment scheme. *Id.* 609. The Court found that "*each* of these allegations" fell within Puerto Rico's quasi-sovereign interests and concluded that "*each* will support a *parens patriae* action." *Id.* at 608 (emphases added). *Snapp* therefore provides two independent vehicles for MDE to assert a quasi-sovereign interest. The fact that MDE alleges one, but not the other, does not bar it from obtaining *parens patriae* standing.

---

[1] Citations to page numbers in the record reference ECF pagination unless otherwise noted.

[2] A few courts outside of this Circuit read *Snapp* similarly. *See Estados Unidos Mexicanos v. DeCoster*, 229 F.3d 332, 339 (1st Cir. 2000); *Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765, 772–74 (5th Cir. 2023).

The state must also allege an injury to its "residents in general." *Id.* at 607. This means more than an "identifiable group of individual residents." *Id.* A "sufficiently substantial segment of its population" will suffice. *Id.* In determining whether the state has alleged injury to a sufficiently substantial segment of its population, the Court must consider the indirect effects of the injury. *Id.*

MDE alleges that the schools' admissions policies discriminate against the state's public high school students. The schools contend that MDE lacks *parens patriae* standing because it does not allege an injury to all state residents. In *United States v. Santee Sioux Tribe of Nebraska*, the Eighth Circuit observed that *parens patriae* standing "is reserved for actions which are asserted on behalf of *all* of the sovereign's citizens." 254 F.3d 728, 734 (8th Cir. 2001). The schools read that case too expansively. There, the Eighth Circuit addressed whether *parens patriae* could confer standing on the tribe to assert the rights of a "dozen or so" tribal members. *Id.* To read the case as expansively as the schools suggest would be contrary to Supreme Court precedent that an injury to a "sufficiently substantial segment of its population" will suffice. *Snapp*, 458 U.S. at 607.

The group affected here is Minnesota public high school students participating in the PSEO program. (Countercl. ¶¶ 1, 3, 5, 35–39.) That segment of the state's population is substantial, representing thousands of Minnesota residents. (*See id.* ¶¶ 29–30 (alleging that the schools collectively provided PSEO courses to more than 10,000 high school students in one academic school year).) The fact that this group includes minors provides further

support for finding that MDE has *parens patriae* standing. *See Snapp*, 458 U.S. at 600 (tracing historical roots of *parens patriae* doctrine to a sovereign's responsibility to take care of people legally unable to care for themselves because of their age).

Lastly, Crown and Northwestern argue that MDE, a state agency, cannot assert *parens patriae* standing because it lacks authority to do so under state law. The schools rely on several cases outside of this Circuit (*see* ECF No. 43 at 15), and the Eighth Circuit has not addressed whether a state agency needs express statutory authority to assert *parens patriae* standing.

In any event, MDE has sufficient statutory authority in this case. MDE is the sole agency responsible for administering the PSEO program. Minn. Stat. § 120A.02(b). It oversees all aspects of the PSEO program, including funding, course curriculum, tuition, and more. Minn. Stat. § 124D.09, subdivs. 2, 10, 13, 19, 21. And this Court has previously held that the Minnesota Commissioner of Education can act in a *parens patriae* capacity. *Am. C.L. Union of Minn. v. Tarek ibn Ziyad Acad.*, No. 09-CV-138 (DWF/JJG), 2010 WL 1840301, at *9 (D. Minn. May 7, 2010) ("[T]he Commissioner acting in her official capacity is properly considered a governmental entity. Under the doctrine of *parens patriae*, the Commissioner [is] presumed to adequately represent the interests of students and parents in the district."). Because MDE has statutory authority to represent the state, it has *parens patriae* standing.[3]

---

[3] Because the Court concludes that MDE has *parens patriae* standing, the Court need not evaluate MDE's argument that it has standing in its own right.

### B.      MHRA Standing

MDE also alleges that the schools violated the MHRA. Before the Court may address that counterclaim, MDE must have standing to sue under state law.[4] *Metro. Exp. Servs., Inc. v. City of Kansas City*, 23 F.3d 1367, 1369 (8th Cir. 1994).

The MHRA allows a "person aggrieved" to sue under the statute. Minn. Stat. § 363A.28, subdiv. 1. A "person" includes "the state and its . . . agencies," so MDE is a person under the MHRA. Minn. Stat. § 363A.03, subdiv. 30. MDE is also aggrieved, as described above, because it is foreclosed from advancing quasi-sovereign interests. MDE alleges that the schools' faith statements discriminate against public high school students participating in the PSEO program. As the sole agency that administers and funds the program, MDE has a quasi-sovereign interest in protecting these students from the harmful effects of discrimination. Because the schools' admissions policies prevent it from doing so, MDE is aggrieved under the MHRA.

## II.    Federal and State Constitutional Claims

MDE alleges various federal and state constitutional counterclaims. The schools advance one argument to support dismissing those claims—that the schools are not state actors. The Court analyzes state action under the federal and state constitutions

---

[4] MDE must also establish Article III standing for its MHRA claim. *See Grp. Health Plan, Inc. v. Philip Morris Inc.*, 86 F.Supp.2d 912, 917 n. 2 (D. Minn. 2000) (explaining that Article III standing requirements are a "wholly separate determination" from state standing). For the reasons discussed above, s*ee supra* Analysis I.A., MDE has met this burden.

9

simultaneously because those doctrines are the same. *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982); *State v. Wicklund*, 589 N.W.2d 793, 801 (Minn. 1999).

The schools are private actors, so their conduct may be deemed state action if it is "fairly attributable to the State." *Rendell-Baker*, 457 U.S. at 838 (citation omitted). Determining whether the schools committed state action is a "necessarily fact-bound inquiry." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982). The Court's "ultimate conclusion must turn on the particular facts of the case, since '[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance.'" *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007) (citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961)).

The Court declines to resolve this fact-intensive issue on a motion to dismiss because the parties have not yet had an opportunity to develop the factual record through discovery. *See Roe v. N. Homes, Inc.*, No. 18-CV-3428 (PAM/LIB), 2019 WL 2296876, at *2 (D. Minn. May 30, 2019) ("[W]hether Defendants were state actors is inappropriate for resolution on a motion to dismiss."). Indeed, many of the cases relied on by the schools were decided after the factual record was developed. *E.g.*, *Rendell-Baker*, 457 U.S. at 843 (affirming district court's grant of summary judgment); *Nichols v. Metro. Ctr. for Indep. Living, Inc.*, 50 F.3d 514, 518 (8th Cir. 1995) (same); *Logiodice v. Trs. of Me. Cent. Inst.*, 296 F.3d 22, 32 (1st Cir. 2002)

(same); *Hamlin ex rel. Hamlin v. City of Peekskill Bd. of Educ.*, 377 F. Supp. 2d 379, 390 (S.D.N.Y. 2005) (granting summary judgment).[5]

Even if that determination were appropriate at the pleading stage, MDE has plausibly alleged that the schools committed state action. Private action may be fairly attributable to the state when there is "pervasive entwinement" between the private actor and the state. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 291 (2001). This may occur when the private actor is "entwined with governmental policies" or when the state is "entwined in its management or control." *Id.* at 296 (cleaned up, citation omitted).

Here, MDE has pled sufficient facts to show that the state is entwined with the schools. To provide PSEO courses, the schools must first be approved by the state. (Countercl. ¶ 24.) Under the new law, the schools will not be approved if they require faith statements or select students based on religion. Minn. Stat. § 124D.09, subdiv. 3(a). Once approved, the schools may only offer nonsectarian PSEO courses. (Countercl. ¶ 32); Minn. Stat. § 124D.09, subdiv. 2. The schools are also entwined with governmental policy. The state

---

[5] The schools also rely on *Sabri v. Whittier Alliance*, an Eighth Circuit decision affirming the district court's Rule 12(b)(6) dismissal on state action grounds, but that case is distinguishable from the case at hand. 833 F.3d 995 (8th Cir. 2016). In *Sabri*, the plaintiffs were members of a neighborhood organization alleging that the organization's bylaws violated their First Amendment rights. *Id.* at 997. Although the city encouraged the organization to adopt the bylaws, the Eighth Circuit held that the organization's adoption of the bylaws was not state action. *Id.* at 1000. Thus, the conduct at issue in *Sabri* involved a private organization's internal governance. By contrast, the conduct at issue here involves the schools' participation in a program created, funded, and administered by the state, and will require more factual development to determine whether the schools committed state action. (Countercl. ¶¶ 15–16); Minn. Stat. §§ 120A.02(b), 124D.09.

established the PSEO program, in part, to fulfill its constitutional duty to provide free public education to high school students. (Countercl. ¶ 13); Minn. Const. Art. XIII, § 1. The schools serve this policy by providing courses to public high school students for free. (Countercl. ¶¶ 26–28.)

To be sure, "mere regulation" does not convert a private actor's conduct into state action even if the regulation is "extensive and detailed." *Sabri*, 833 F.3d at 1000 (quoting *Rendell-Baker*, 457 U.S. at 841). But without discovery, the Court cannot determine how much entwinement exists between the parties. Thus, drawing all inferences in favor of MDE, it is plausible that the schools committed state action.[6]

### III.    MHRA Claim

The MHRA prohibits schools from discriminating against prospective and current students. Minn. Stat. § 363A.13, subdivs. 1–2. MDE alleges that Crown's and Northwestern's PSEO admissions policies violate the MHRA because they discriminate against public high school students based on sex and sexual orientation. The schools argue that MDE's MHRA claim should be dismissed because they are exempt under the statute.

---

[6] Because MDE has plausibly alleged that there is pervasive entwinement, the Court need not decide if it "could chart an alternate path to the same endpoint" under the public function test. *Doe v. N. Homes, Inc.*, 11 F.4th 633, 639 n.4 (8th Cir. 2021); *see Lugar*, 457 U.S. at 939 ("Whether these different tests are actually different in operation or simply different ways of characterizing the necessarily fact-bound inquiry that confronts the Court in such a situation need not be resolved here.").

The MHRA exempts religious schools, like Crown and Northwestern, "in matters relating to sexual orientation." Minn. Stat. § 363A.26, subdiv. 2. The exemption does not apply, however, if the schools are engaged in "secular business activities." *Id.* Although the schools are Christian colleges, MDE has sufficiently alleged that their participation in the PSEO program is a secular activity. Under the program, the schools are prohibited from teaching sectarian PSEO courses. (Countercl. ¶ 32); Minn. Stat. § 124D.09, subdivs. 2, 3(c), 10. The schools are also financially compensated for participating in the program. (Countercl. ¶ 26; *see* Compl. ¶¶ 116, 157 (alleging that the schools' exclusion from the PSEO program would cause them significant financial harm).) It is plausible, then, that the schools' participation in the PSEO program is "unrelated to the religious and educational purposes" for which they were established. Minn. Stat. § 363A.26, subdiv. 2. As a result, MDE has plausibly alleged a claim under the MHRA.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, Plaintiff's motion to dismiss the counterclaims (ECF No. 34) is DENIED.

Dated: March 18, 2024                    BY THE COURT:

                                         s/Nancy E. Brasel
                                         Nancy E. Brasel
                                         United States District Judge