# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MELINDA and MARK LOE, *et al.*, <br><br>     *Plaintiffs*, <br><br>   v. <br><br> WILLIE JETT, *et al.*, <br><br>     *Defendants*. | Civil No. 0:23-cv-01527-NEB-JFD <br><br> **PLAINTIFFS CROWN COLLEGE AND UNIVERSITY OF NORTHWESTERN – ST. PAUL'S ANSWER TO DEFENDANT MDE'S COUNTERCLAIMS** |

Plaintiffs Crown College (Crown) and the University of Northwestern – St. Paul (Northwestern) (together, "Plaintiffs"), by counsel, file this Answer to Counterclaims of the Minnesota Department of Education (MDE or Defendant) Defendant's Counterclaim as follows:

## INTRODUCTION

1. MDE counterclaims to stop Crown and Northwestern from violating the civil rights of public high school students participating in Minnesota's Postsecondary Enrollment Options ("PSEO") program, which MDE administers.

ANSWER: Paragraph 1 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs admit that the MDE administers the PSEO program but deny all other

1

allegations and inferences set forth in Paragraph 1. Plaintiffs do not consider headings to be allegations, but to the extent a response is required, Plaintiffs deny all headings.

2. No student should have to choose between publicly eschewing their religious beliefs and participating in the PSEO program, or be forced to publicly disavow their sexuality or gender identity to obtain free public education.

ANSWER: Plaintiffs deny that students must publicly eschew their religious beliefs to participate in the PSEO program. Plaintiffs also deny that students are forced to publicly disavow their sexuality or gender identity to obtain free public education.

3. Yet this is precisely what Crown and Northwestern demand of public high school PSEO students to set foot on their campuses, using public funds disbursed by MDE to exclude all who refuse to accept their religious beliefs publicly and unconditionally.

ANSWER: Plaintiffs deny the allegations set forth in Paragraph 3.

4. It matters not that a student lives one block from Crown and has no reliable transportation to the next closest participating PSEO postsecondary institution, which is approximately 27 miles away. Or that a student lives next door to Northwestern and attending PSEO there is the only option that works for their family.

ANSWER: Plaintiffs deny the allegations set forth in Paragraph 4.

5.  By this Counterclaim, MDE seeks declaratory and injunctive relief prohibiting Crown and Northwestern from interfering with the religious rights of, and discriminating against, public high school students participating in Minnesota's PSEO program.

ANSWER: Paragraph 5 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 5.

## PARTIES, JURISDICTION, AND VENUE

6. MDE is an agency of the State of Minnesota ("State" or "Minnesota"), established and empowered to "carry out the provisions of chapters 120A to 129C and other related education provisions under law." Minn. Stat. § 120A.02. MDE's principal office is located in Minneapolis, Minnesota.

ANSWER: Paragraph 6 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 6.

7.  Crown is a postsecondary institution located in Saint Bonifacius, Minnesota.

ANSWER: Plaintiffs admit the allegations set forth in Paragraph 7.

8.  Northwestern is a postsecondary institution located in St. Paul, Minnesota.

ANSWER: Plaintiffs admit the allegations set forth in Paragraph 8.

9. The action arises under the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and Minnesota law.

ANSWER: Paragraph 9 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 9.

10. The Court has jurisdiction over MDE's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

ANSWER: Paragraph 10 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 10.

11. The Court has supplement jurisdiction over MDE's state claims pursuant to 28 U.S.C § 1367(a).

ANSWER: Paragraph 11 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 11.

12. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (2).

ANSWER: Plaintiffs admit that venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) if the court has subject matter jurisdiction. All other allegations and inferences of Paragraph 12 are denied.

## FACTUAL ALLEGATIONS

## <u>About the PSEO Program</u>

13. Under the Minnesota Constitution, "it is the duty of the legislature to establish a general and uniform system of public schools" and to "make such provisions by taxation or otherwise as will secure a thorough and efficient system of public schools throughout the state." Minn. Const. Art. XIII, § 1.

ANSWER: Paragraph 13 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations and inferences set forth in Paragraph 13.

14. As enshrined in the Minnesota Constitution, the provision of public education in Minnesota is and has traditionally been the exclusive prerogative of the State and its political subdivisions.

ANSWER: Paragraph 14 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations and inferences set forth in Paragraph 14.

15. Through Minnesota Statutes chapter 124D and other related statutes, the Minnesota Legislature has provided a comprehensive scheme for the provision and funding of public education.

ANSWER: Paragraph 15 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations and inferences set forth in Paragraph 15.

16. MDE is the State agency charged with overseeing the provision and funding of public education and is responsible for administering the PSEO program.

ANSWER: Paragraph 16 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations and inferences set forth in Paragraph 16.

17. The PSEO program allows qualifying 10th-, 11th- and 12th-grade public school students to earn dual high school and college credits tuition free while still in high school, through enrollment in and successful completion of courses at qualifying postsecondary institutions.

ANSWER: Paragraph 17 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations and inferences set forth in Paragraph 17.

18. For some public school students, the PSEO program is their only means of taking certain courses not offered by their public high schools.

ANSWER: Plaintiffs lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Counterclaim and on that basis, deny all allegations and inferences set forth in Paragraph 18.

19. PSEO courses taken by public high school students must meet graduation and subject area requirements of their public school districts.

ANSWER: Paragraph 19 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations and inferences set forth in Paragraph 19.

20.  To participate in PSEO, public high school students must give up at least one class at their public high schools during the core school day.

ANSWER: Paragraph 20 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations and inferences set forth in Paragraph 20.

21. Public school districts whose students participate in the PSEO program lose general education revenue from the State due to the reduction of average daily membership (ADM) funding.

ANSWER: Plaintiffs lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Counterclaim and on that basis, deny all allegations and inferences set forth in Paragraph 21.

22.  For example, for a public high school student enrolled full-time in PSEO coursework, the student's public school district receives 88% less general education revenue from the State for that student than it would if the student did not participate in the PSEO program.

ANSWER: Plaintiffs lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Counterclaim and on that basis, deny all allegations and inferences set forth in Paragraph 22.

23. Some public school districts lose significant general education revenue from the State due to their high school students' participation in the PSEO program.

ANSWER: Plaintiffs lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Counterclaim and on that basis, deny all allegations and inferences set forth in Paragraph 23.

24. Postsecondary institutions must be located in Minnesota and approved by MDE to offer PSEO courses.

ANSWER: Paragraph 24 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations and inferences set forth in Paragraph 24.

25. Sixty-two postsecondary institutions are currently approved by MDE to offer PSEO courses ("Eligible Institutions"), including Crown and Northwestern.

ANSWER: Plaintiffs lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 25 of the Counterclaim and on that basis, deny the allegations and inferences set forth in Paragraph 25. Plaintiffs admit that Crown and Northwestern are Eligible Institutions and are approved to offer PSEO courses.

## Crown and Northwestern Receive
## Public Dollars for PSEO Courses

26. In exchange for providing PSEO courses to public high school students, Eligible Institutions, including Crown and Northwestern, receive remuneration from MDE at fixed rates.

ANSWER: Plaintiffs admit the allegations set forth in Paragraph 26.

27. The funds MDE pays postsecondary institutions for teaching PSEO courses to public high school students would otherwise have been provided to these students' public school districts if the students did not participate in the PSEO program and were enrolled full-time in their school districts.

ANSWER: Paragraph 27 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations and inferences set forth in Paragraph 27.

28. MDE pays Eligible Institutions public funds to teach public high school students PSEO courses that count toward their public high school graduation requirements.

ANSWER: Plaintiffs admit that MDE reimburses Eligible Institutions for costs and a certain percentage of the tuition per credit hour in most cases. Minnesota Department of Education, *Postsecondary Enrollment Options (PSEO) Reference Guide* 19-20, 26-27 (2021).

Plaintiffs also admit that "[a]ll courses taken in PSEO must meet graduation requirements at the high school." *PSEO Reference Guide, supra*, at 15, 17, 24; *see* Minn. Stat. § 124D.09, Subd. 12(d).

All other allegations and inferences set forth in Paragraph 28 are denied.

29.  Since the 2017-2018 school year, MDE has paid Crown more than $4 million for PSEO courses that Crown provided to 1,781 high school students.

ANSWER: Plaintiffs lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Counterclaim and on that basis, deny all allegations and inferences set forth in Paragraph 29.

30.  Since the 2017-2018 school year, MDE has paid Northwestern more than $27 million for PSEO courses that Northwestern provided to 8,901 high school students.

ANSWER: Plaintiffs lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of the Counterclaim and on that basis, deny all allegations and inferences set forth in Paragraph 30.

31.  Each Eligible Institution establishes its own requirements and deadlines for enrollment in PSEO courses.

ANSWER: Plaintiffs admit the allegations set forth in Paragraph 31.

32.  Eligible Institutions may not offer sectarian PSEO courses.

ANSWER: Paragraph 32 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations and inferences set forth in Paragraph 32.

### Crown Discriminates Against
### Public High School Students

33. Crown is the only postsecondary institution that provides PSEO courses in a 25-mile radius of St. Bonifacius, Minnesota.

ANSWER: Crown lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 33 of the Counterclaim and on that basis, denies all allegations and inferences set forth in Paragraph 33.

34. A public high school student who lives in St. Bonifacious would need to travel more than 25 miles to take PSEO courses at a postsecondary institution other than Crown.

ANSWER: Crown denies all allegations and inferences set forth in Paragraph 34.

35. To take PSEO courses on Crown's campus, public high school students must agree to Crown's Statement of Faith, which includes the following provisions:

a) "There is one God, who is infinitely perfect, existing eternally in three persons."

b) "Jesus Christ is true God and true man."

c) "All men are born with a sinful nature, are separated from the life of God, and can be saved only through the atoning work of the Lord Jesus Christ."

d) "The portion of the impenitent and unbelieving is existence forever in conscious torment[.]"

ANSWER: Crown denies the allegations and assertions set forth in Paragraph 35.

36. To take PSEO courses on Crown's campus, public high school students are also required to abide by Crown's Community Covenant, which includes the following provisions:

a) "Crown College is a Christ-centered community which emphasizes spiritual transformation, academic excellence, and global engagement. We affirm our desire to love the Lord with all our heart, soul, mind and strength and our neighbor as ourselves (Mark 12:29-31). We agree together to the following standards that reinforce and support our love of God and each other."

b) "We commit to the Word of God as our authority. The Bible is without error in what it teaches and is our ultimate authority for what to believe and how to behave."

c) "We commit to the Lordship of Christ."

d) "In submission to Christ's authority, we commit ourselves to His Church, to prayer, worship, Bible study, fasting, discipleship, witnessing, and using our time, gifts and finances for His glory."

e) "We are to put away behaviors such as … sexually immoral behavior (E.g., all sexual relations outside the bounds of marriage between a man and a woman[.]"

ANSWER: Crown admits that it requires on-campus PSEO students to abide by its Community Covenant. Crown also admits that the provisions come from its Community Covenant. Crown denies all other allegations and inferences set forth in Paragraph 36.

37. Failure to follow Crown's Community Covenant can result in disciplinary action, up to and including dismissal from the institution.

ANSWER: Crown admits that actions may be taken to reconcile, discipline, or dismiss those who disregard the commitments of the Community Covenant. Crown denies all other allegations and inferences set forth in Paragraph 37.

## Northwestern Discriminates Against
## Public High School Students

38. To take PSEO courses on Northwestern's campus, public high school students must agree to Northwestern's Declaration of Christian Community, which includes the following provisions:

a) "We at University of Northwestern – St. Paul and Northwestern Media have decided that whatever we do, for as long as we choose

to be involved in this community, as students, teachers, administrators, on the board of trustees, as employees in the university or the media ministry, wherever we choose to live, our relationship to Jesus Christ and commitment to obey God's Word will be at the very center."

b) "We believe that it is our duty, honor and delight to live under the Lordship of Christ, [and] to study His Holy Scriptures[.]"

c) "We, as members of Northwestern's Christ-centered community, will strive to love our God and each other as He loves us[.]"

d) "As students at University of Northwestern, we will strive to create an atmosphere of Christ-centered community. We will put our relationship to Jesus Christ at the center of our lives and our studies[.]"

e) "As students, we agree to watch out for each other, support each other, encourage each other, push ourselves and each other to work our hardest, to live with integrity, to pursue God's truth, to do our very best for the benefit of ourselves and other students, the benefit of University of Northwestern, its faculty and staff, and for the glory of our Lord and Savior Jesus Christ[.]"

f) "We understand that many rules and guidelines at University of Northwestern, instituted and followed by the whole community for the safety and benefit of all, were created to instruct and steer us into right choices, foster true Christ-centered community

during our years here, and teach us how to spread Christ-centered community to others."

g) "We define marriage as being a covenant between one man and one woman[.]"

h) "As followers of Christ, we turn from sexual immorality in its many forms including but not limited to: pornography, pre-marital sexual relations, adultery, and same sex romantic intimacy and/or sexual relations. We come alongside those experiencing same sex attractions who choose to honor Christ by not pursuing those attractions, just as we come alongside all individuals who seek to live in purity before the Lord[.]"

i) "We believe we are created by God in His image as two distinct sexes: male and female (Gen. 1:26-28; Matt. 19:4-5). We believe that each person glorifies God and affirms His infinite holiness and wisdom by living in alignment with his or her birth sex. While we acknowledge there may be confusion and brokenness for some individuals in this area, we do not affirm or support transgender identity or expression. Instead, we place our faith and trust in God's redemptive plan."

j) "This document is a formal statement of individual commitment and shared purpose. I understand that, if I am accepted into or employed by University of Northwestern or Northwestern Media, I will be a productive member of the Northwestern

community and I will choose to live by the principles and expectations contained in this Declaration of Christian Community."

ANSWER: Northwestern admits that all on-campus students agree to adhere to its Declaration of Christian Community. Northwestern also admits that the provisions come from its Declaration of Christian Community. Northwestern denies all other allegations and inferences set forth in Paragraph 38.

39. Violation of Northwestern's Declaration of Christian Community can result in disciplinary action, up to and including dismissal from the institution.

ANSWER: Northwestern admits that failure by on-campus students to live within the guidelines laid out in its Declaration of Christian Community "can result in disciplinary action up to and including dismissal." *Declaration of Christian Community*, University of Northwestern – St. Paul, https://perma.cc/538P-YVKX. Northwestern denies all other allegations and inferences set forth in Paragraph 39.

<u>COUNT ONE</u>
**Federal Establishment and Free Exercise Clauses**

40. MDE restates, realleges, and incorporates by reference the allegations in paragraphs 1 through 39 of this Counterclaim.

ANSWER: Plaintiffs restate, reallege, and incorporate by reference the answers in Paragraphs 1 through 39 of this Counterclaim.

41. The First Amendment to the United States Constitution "prohibits the establishment of religion and promises the free exercise of religion." *Trump v. Hawaii*, 138 S. Ct. 2392, 2424 (2018) (Kennedy, J., concurring).

ANSWER: Paragraph 41 contains a legal conclusion to which no response is necessary. To the extent a response is required, Plaintiffs deny all allegations or inferences set forth in Paragraph 41.

42. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

ANSWER: Paragraph 42 contains a legal conclusion to which no response is necessary. To the extent a response is required, Plaintiffs deny the allegations or inferences set forth in Paragraph 42.

43. The Free Exercise Clause "protect[s] religious observers against unequal treatment[.]" *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542-43 (1993) (citation omitted).

ANSWER: Paragraph 43 contains a legal conclusion to which no response is necessary. To the extent a response is required, Plaintiffs agree that the Free Exercise Clause protects against the unequal treatment of religious institutions by the State. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542 (1993). Plaintiffs deny any other allegations or inferences in Paragraph 43.

44. MDE is responsible for administering the PSEO program and ensuring that the State funds it disburses for the provision of public high school education are not used in a manner that violates the law.

ANSWER Paragraph 44 contains a legal conclusion to which no response is necessary. To the extent a response is required, Plaintiffs deny the allegations or inferences set forth in Paragraph 44.

45. Via the PSEO program, the State has delegated the provision of some public education of certain Minnesota public high school students to Crown and Northwestern.

ANSWER: Plaintiffs admit to being Eligible Institutions in the PSEO program. Plaintiffs deny all other allegations and inferences set forth in Paragraph 45.

46. In providing on-campus PSEO courses to public high school students that count toward their public high school graduation requirements, Crown and Northwestern exercise power they possess solely by virtue of MDE's delegation and State law.

ANSWER: Paragraph 46 contains a legal conclusion to which no response is necessary. To the extent a response is required, Plaintiffs deny the allegations and inferences set forth in Paragraph 46.

47. As such, Crown and Northwestern are state actors.

ANSWER: Denied. Both Northwestern and Crown are privately held religious institutions free to exercise their religious beliefs.

48. Crown's and Northwestern's on-campus PSEO admissions policies and practices establish, endorse, and promote a single religion, Christianity, in violation of the First Amendment.

ANSWER: Paragraph 48 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations and inferences set forth in Paragraph 48.

49. Crown's and Northwestern's on-campus PSEO admissions policies and practices discriminate on the basis of religion by requiring some public high school students to disavow their religious beliefs and identities in order to take on-campus PSEO courses, in violation of the First Amendment.

ANSWER: Paragraph 49 states a legal conclusion to which no response is required. To the extent that a response is required, deny the allegations and inferences set forth in Paragraph 49.

50. By conditioning admission to on-campus PSEO courses in this manner, Crown and Northwestern penalize public high school students' free exercise of religion, in violation of the First Amendment.

ANSWER: Paragraph 50 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 50.

51. By conditioning admission to on-campus PSEO courses in this manner, Crown and Northwestern coerce public high school students to

conform their religious beliefs to Crown's and Northwestern's criteria, in violation of the First Amendment.

ANSWER: Paragraph 51 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 51.

52. Crown's and Northwestern's on-campus PSEO admission policies target religious beliefs by categorically excluding non-Christians from attending on-campus PSEO courses, in violation of the First Amendment.

ANSWER: Paragraph 52 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 52.

53. Crown's and Northwestern's on-campus PSEO admissions policies and practices target non-Christians for disfavored treatment based on disagreement with their religious beliefs.

ANSWER: Paragraph 53 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 53.

54. To take on-campus courses at Crown and Northwestern, public high school students must forfeit their religious identity and convictions, in violation of the First Amendment.

ANSWER: Paragraph 54 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 54.

55.  MDE has no adequate remedy at law.

ANSWER: Paragraph 55 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 55.

### COUNT TWO
### Federal Free Speech Clause

56. MDE restates, realleges, and incorporates by reference the allegations in paragraphs 1 through 55 of this Counterclaim.

ANSWER: Plaintiffs restate, reallege, and incorporate by reference the allegations in Paragraphs 1 through 55 of this Counterclaim.

57.  The First Amendment to the United States Constitution prohibits compelling an individual "to personally express a message [they] disagree[] with[.]" *Johanns v. Livestock Marketing Association*, 544 U.S. 500, 557 (2005).

ANSWER: Paragraph 57 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 57.

58.  Crown's and Northwestern's on-campus PSEO admissions policies and practices compel non-Christian high school students to disavow their religious beliefs to take on-campus PSEO courses at these institutions, in violation of the First Amendment.

ANSWER: Paragraph 58 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 58.

59.  Crown's and Northwestern's on-campus PSEO admissions policies and practices compel some high school students to disavow their sexual orientation to take on-campus PSEO courses at these institutions, in violation of the First Amendment.

ANSWER: Paragraph 59 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 59.

60.  Crown's and Northwestern's on-campus PSEO admissions policies and practices compel some high school students to disavow their gender identity in order to take on-campus PSEO courses at these institutions, in violation of the First Amendment.

ANSWER: Paragraph 60 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 60.

61.  MDE has no adequate remedy at law.

ANSWER: Paragraph 61 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 61.

## COUNT THREE
## Federal Equal Protection Clause

62. MDE restates, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 61 of this Counterclaim.

ANSWER: Plaintiffs restate, reallege, and incorporate by reference the allegations in Paragraphs 1 through 61 of this Counterclaim.

63. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits discrimination on the basis of religion, sexual orientation, or gender identity.

ANSWER: Paragraph 63 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 63.

64. Crown's and Northwestern's on-campus PSEO admissions policies and practices violate the Equal Protection Clause by discriminating against public high school students on the bases of religion, sexual orientation, and gender identity.

ANSWER: Paragraph 64 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 64.

65. Crown's and Northwestern's on-campus PSEO admissions policies and practices separately violate the Equal Protection Clause by disparately impacting public high school students who are not Christian, straight, and cisgender.

ANSWER: Paragraph 65 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 65.

66. MDE has no adequate remedy at law.

ANSWER: Paragraph 66 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 66.

<u>COUNT FOUR</u>
**State Freedom of Conscience
and Establishment Provision**

67. MDE restates, realleges, and incorporates by reference its allegations in paragraphs 1 through 66 of this Counterclaim.

ANSWER: Plaintiffs restate, reallege, and incorporate by reference the allegations in Paragraphs 1 through 66 of this Counterclaim.

68. Article I, § 16 of the Minnesota Constitution guarantees the right of every Minnesotan to worship "according to the dictates of [their] own conscience" and that this right "shall never be infringed[.]"

ANSWER: Paragraph 68 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 68.

69. Article I, § 16 of the Minnesota Constitution states that no "preference [shall] be given by law to any religious establishment or mode

of worship … nor shall any money be drawn from the treasury for the benefit of any religious societies or religious or theological seminaries."

ANSWER: Paragraph 69 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 69.

70.  Article 13, § 2 of the Minnesota Constitution states that "[i]n no case shall any public money or property be appropriated or used for the support of schools wherein the distinctive doctrines, creeds or tenets of any particular Christian or other religious sect are promulgated or taught."

ANSWER: Paragraph 70 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 70.

71.  Crown's and Northwestern's on-campus PSEO admissions policies and practices violate Article 1, § 16 and Article 13, § 2 of the Minnesota Constitution because, without limitation, they infringe upon the religious rights of some public high school students; have the primary purpose and effect of advancing religion; result in indoctrination of religious belief; constitute impermissible endorsement of religion; excessively entangle the affairs of government and religion; and result in the expenditure of public money for the support of public education in which a distinctive doctrine, creed, and tenet is promulgated and taught.

ANSWER: Paragraph 71 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 71.

72. MDE has no adequate remedy at law.

ANSWER: Paragraph 72 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 72.

<u>COUNT FIVE</u>
**State Equal Protection Provision**

73. MDE restates, realleges, and incorporates by reference its allegations in paragraphs 1 through 72 of this Counterclaim.

ANSWER: Plaintiffs restate, reallege, and incorporate by reference the allegations in Paragraphs 1 through 72 of this Counterclaim.

74. Article I, § 2 of the Minnesota Constitution provides that no Minnesotan "shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land."

ANSWER: Paragraph 74 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations and inferences set forth in Paragraph 74.

75. A state constitutional right to equal protection arises from Article I, § 2 of the Minnesota Constitution. *Schroeder v. Simon*, 962 N.W.2d 471, 481 (Minn. Ct. App. 2021).

ANSWER: Paragraph 75 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 75.

76. Crown's and Northwestern's admissions policies and practices violate Article I, § 2 of the Minnesota Constitution by discriminating against public high school students on the bases of religion, sexual orientation, and gender identity.

ANSWER: Paragraph 76 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 76.

77. Crown's and Northwestern's admissions policies and practices separately violate Article I, § 2 of the Minnesota Constitution by disparately impacting public high school students who are not Christian, straight, and cisgender.

ANSWER: Paragraph 77 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 77.

78. MDE has no adequate remedy at law.

ANSWER: Paragraph 78 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 78.

**COUNT SIX**
**Minnesota Human Rights Act**

79. MDE restates, realleges, and incorporates by reference its allegations in paragraphs 1 through 78 of this Counterclaim.

ANSWER: Plaintiffs restate, reallege, and incorporate by reference the allegations in Paragraphs 1 through 79 of this Counterclaim.

80. The Minnesota Human Rights Act ("MHRA") provides that "[i]t is an unfair discriminatory practice to discriminate in any manner in the full utilization of or benefit from any educational institution, or the services rendered thereby to any person because of race, color, creed, religion, national origin, sex, age, marital status, status with regard to public assistance, sexual orientation, or disability[.]" Minn. Stat. § 363A.13, subd. 1.

ANSWER: Paragraph 80 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs state that the MHRA speaks for itself.

81. The MHRA further makes it illegal "to exclude, expel, or otherwise discriminate against a person seeking admission as a student … because of race, color, creed, religion, national origin, sex, age, marital status, status with regard to public assistance, sexual orientation, or disability." Minn. Stat. § 363A.13, subd. 2.

ANSWER: Paragraph 81 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 81.

82.  Crown's and Northwestern's on-campus PSEO admissions policies and practices violate the MHRA by discriminating against public high school students on the bases of sex and sexual orientation.

ANSWER: Paragraph 82 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 82.

83.  Crown's and Northwestern's on-campus PSEO admissions policies and practices separately violate the MHRA by disparately impacting public high school students who are not straight and cisgender.

ANSWER: Paragraph 83 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 83.

84.  MDE has no adequate remedy at law.

ANSWER: Paragraph 84 states a legal conclusion to which no response is required. To the extent that a response is required, Plaintiffs deny the allegations set forth in Paragraph 84.

## PLAINTIFF'S PRAYER FOR RELIEF

WHEREFORE, the plaintiffs, Crown College and the University of Northwestern – St. Paul, pray that the Defendant takes nothing by way

of its counterclaim, for costs in this action, and for any and all other just and proper relief in the premises.

## FIRST AFFIRMATIVE DEFENSES

1.   As to any rhetorical paragraph of Defendant's Counterclaim not herein above specifically admitted, denied or controverted, same is hereby denied.

2.   Defendant's claims are barred by the principle of general applicability, which protects the Plaintiffs from being discriminated against solely based on their religious status. *Carson v. Makin*, 596 U.S. 767, 788-89 (2022); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542-43 (1993); *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617, 638 (2018). The principle of general applicability also prevents the government from prohibiting "religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Philadelphia,* 59 U.S. 522, 534 (2021).

3.   Defendant's claims fail under the Establishment Clause, which mandates the equal treatment of beliefs without discrimination or preference and permits the government to give broadly available benefits to religious groups. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 451 (2017).

4.   Defendant's claims are barred by the church autonomy doctrine, which forbids "state interference" in "matters of church government as

well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952).

5.   Defendant's claims are barred by the Assembly Clause of the First Amendment to the United States Constitution, which protects Plaintiff's right to engage in otherwise lawful worship and speech activities with persons of their choosing.

6.   Defendant's claims are barred by the doctrine of constitutional avoidance, which requires courts to avoid applying a statute in a way that raises serious constitutional questions unless there is a clear expression of an affirmative intention by Congress to do so. *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979).

7.   Defendant's claims are barred by the Free Speech Clause, which forbids the government from forcing a religious speaker to alter their message. *303 Creative LLC v. Elenis*, 600 U.S. 570, 596 (2023).

8.   Defendant's federal claims are barred by the federal Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1.

9.   Defendant lacks standing to bring claims because they failed to demonstrate that they "have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

10.  Defendant has otherwise failed to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), including by failing to plead sufficient facts for all elements of its claims.

11.  Defendant's claims fail under First Amendment retaliation, which prohibits the government from taking "adverse action" in response to a protected First Amendment activity. *Molina v. City of St. Louis*, 59 F.4th 334, 338 (8th Cir. 2023).

12.  Defendant's claims fail under the Free Exercise Clause, which prohibits the government from categorically excluding religious entities from obtaining otherwise available government benefits unless the government can satisfy strict scrutiny. *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 485-87 (2020).

13.  Defendant's claims fail under religious targeting, which prevents the government from "impos[ing] regulations that are hostile to the religious beliefs of affected citizens and … passes judgment upon or presupposes the illegitimacy of religious beliefs and practices," *Masterpiece Cakeshop*, 584 U.S. at 638.

14.  Defendant's claims fail under the unconstitutional conditions doctrine, which "prevent[s] the government from coercing people into giving [their Constitutional rights] up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013).

15.  Defendant's claims fail under expressive association, which prevents the government from forcing a group formed for expressive

purposes to accept members who oppose those purposes. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648, 650, 659 (2000).

16. Defendant's claims fail under the compelled speech doctrine, which prohibits the government from compelling people to speak messages against their will. *See Hurley v. Irish-Am. Gay*, *Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995).

17. Defendant's claims fail under the Equal Protection Clause, which prohibits discrimination on the basis of religion.

18. Defendant's claims fail under Minnesota's Free Exercise Clause, which provides that "any control of or interference with the rights of conscience" shall not "be permitted, or any preference be given by law to any religious establishment or mode of worship;" except in the interests of "the peace or safety of the state." Minn. Const. art. I, § 16.

19. Defendant's claims fail under the state action doctrine.

WHEREFORE, the plaintiffs, Crown College and the University of Northwestern – St. Paul, pray that the Defendant takes nothing by way of its counterclaim, for costs in this action, and for any and all other just and proper relief in the premises.

Respectfully submitted this 12 day of June, 2024.

/s/ *Diana Verm Thomson*
Diana Verm Thomson*

33

Eric S. Baxter*
Benjamin A. Fleshman*
Andrea R. Butler*
The Becket Fund for
    Religious Liberty
1919 Pennsylvania Ave. NW,
    Suite 400
Washington, DC 20006
Telephone: (202) 955-0095
Facsimile: (202) 955-0090
dthomson@becketlaw.org
*Admitted pro hac vice

Richard C. Landon
    (No. 0396329)
Lathrop GPM
80 South Eighth Street
500 IDS Center
Minneapolis, MN 55402

Counsel for Plaintiffs