# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MELINDA and MARK LOE, *et al.*, | Civil No. 0:23-cv-01527-NEB-JFD |
| *Plaintiffs,* | |
| v. | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| WILLIE JETT, *et al.*, | |
| *Defendants.* | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................iii

ARGUMENT ......................................................................................................... 1

I.    Plaintiffs' Claims Prevail ........................................................................... 1

    A.    *Carson* Controls ................................................................................. 1

    B.    Strict Scrutiny Can't Be Met ............................................................ 4

    C.    The Amendment Is Not Neutral or Generally
          Applicable ........................................................................................... 8

        1.    The Amendment Burdens Plaintiffs' Religious
            Exercise ..................................................................................... 8

        2.    The Amendment Is Not Neutral ............................................. 9

        3.    The Amendment Is Not Generally Applicable .................... 10

    D.    The Amendment Discriminates Among Religions.................... 11

    E.    The Amendment Violates Church Autonomy ............................ 11

    F.    The Amendment Is an Unconstitutional Condition ................. 12

    G.    Plaintiffs Have Standing ................................................................ 12

II.    MDE's Counterclaims Fail ..................................................................... 14

    A.    The Schools Are Not State Actors ............................................... 15

    B.    MDE's MHRA Claim Fails ........................................................... 18

CONCLUSION .................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
570 U.S. 205 (2013) ............................................................................ 12

*Ams. United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*,
509 F.3d 406 (8th Cir. 2007) ............................................................. 17

*Anderson v. Laird*,
466 F.2d 283 (D.C. Cir. 1972) ............................................................. 4

*B.W.C. v. Williams*,
990 F.3d 614 (8th Cir. 2021) ............................................................... 4

*Bronx Household of Faith v. Board of Education of City of New York*,
750 F.3d 184 (2d Cir. 2014) ................................................................ 9

*Carson v. Makin*,
596 U.S. 767 (2022) ................................................................. *passim*

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
590 F.3d 806 (9th Cir. 2010) ............................................................. 15

*Christian Legal Soc'y v. Walker*,
453 F.3d 853 (2006) ......................................................................... 18

*Church of Lukumi Babalu Aye v. City of Hialeah*,
508 U.S. 520 (1993) ........................................................................... 6

*Cuffley v. Mickes*,
208 F.3d 702 (8th Cir. 2000) ............................................................. 12

*Dale v. U.S. Steel Corp.*,
No. 13-cv-1046, 2015 WL 4138869 (D. Minn. July 2, 2015) ............. 14

iii

*Eckles v. City of Corydon,*
    341 F.3d 762 (8th Cir. 2003) ............................................................ 13

*Espinoza v. Montana Dep't of Revenue,*
    591 U.S. 464 (2020) ..................................................................... 1, 9

*FCA v. San Jose Unified Sch. Dist.,*
    82 F.4th 664 (9th Cir. 2023) ............................................................ 10

*Fulton v. City of Philadelphia,*
    593 U.S. 522 (2021) ........................................................................ 7

*Gonzales v. O Centro Espírita Beneficente*
    *União do Vegetal,*
    546 U.S. 418, 431 (2006) .................................................................. 6

*Holt v. Payne,*
    85 F.4th 873 (8th Cir. 2023) ............................................................. 8

*Horne v. Flores,*
    557 U.S. 433 (2009) ....................................................................... 12

*Hunter v. U.S. Dep't of Educ.,*
    No. 23-35174, 2024 WL 3998788 (9th Cir. Aug. 30, 2024) .................. 6

*J.S. v. St. Paul Acad. & Summit Sch.,*
    No. 11-1537, 2012 WL 591623 (D. Minn. Feb. 22, 2012) ......................

*Jackson v. Metropolitan Edison Co.,*
    419 U.S. 345 (1974) ....................................................................... 18

*Kedroff v. Saint Nicholas Cathedral of Russian Orthodox*
    *Church in N. Am.,*
    344 U.S. 94 (1952) ......................................................................... 12

*Kim v. Board of Education,*
    93 F.4th 733 (4th Cir. 2024) ............................................................. 4

*Larson v. Valente,*
    456 U.S. 228 (1982) ....................................................................... 11

*Manhattan Cmty. Access Corp. v. Halleck,*
  587 U.S. 802 (2019)............................................................... 15

*Masterpiece Cakeshop v. Colo. C.R. Comm'n,*
  584 U.S. 617 (2018)............................................................... 10

*Moose Lodge No. 107 v. Irvis,*
  407 U.S. 163 (1972)............................................................... 17

*Moton v. Park Christian Sch.,*
  No. 20-1201, 2022 WL 911797 (D. Minn. Mar. 29, 2022) ............ 16-17

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
  591 U.S. 732 (2020).......................................................... 12, 18

*Regents of the Univ. of Cal. v. Bakke,*
  438 U.S. 265 (1978)............................................................... 13

*Reitman v. Mulkey,*
  387 U.S. 369 (1967)............................................................... 17

*Rendell-Baker v. Kohn,*
  457 U.S. 830 (1982)...................................................... 15, 16, 17

*Serbian E. Orthodox Diocese for U.S.A. & Canada v.*
  *Milivojevich,*
  426 U.S. 696 (1976)............................................................... 18

*St. Dominic Acad. v. Makin,*
  No. 2:23-cv-246, 2024 WL 3718386 (D. Me. Aug. 8, 2024)...................6

*St. Mary Catholic Parish v. Roy,*
  No. 23-cv-2079, 2024 WL 3160324 (D. Colo. June 4, 2024) ............3-4

*Students for Fair Admissions, Inc. v. President and Fellows*
  *of Harvard Coll.,*
  600 U.S. 181 (2023)..................................................................5

*Telescope Media Grp. v. Lucero,*
  936 F.3d 740 (8th Cir. 2019)........................................................8

*Thomas v. Rev. Bd.*,
  450 U.S. 707 (1981) ..................................................................... 4, 8

*Tingley v. Ferguson*,
  47 F.4th 1055 (9th Cir. 2022) ........................................................ 10

*Tovar v. Essentia Health*,
  857 F.3d 771 (8th Cir. 2017) ......................................................... 14

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
  582 U.S. 449 (2017) ..................................................................... 1, 2

## Statutes

Minn. Stat. § 120A.20, subd. 1 ......................................................... 15

Minn. Stat. § 124D.09, subd. 3 ......................................................... 2

Minn. Stat. § 124D.09, subd. 9 ......................................................... 16

Minn. Stat. § 363A.13, subd. 2 ......................................................... 14

Minn. Stat. § 363A.23 .................................................................... 2

Minn. Stat. § 363A.23, subd. 1 ......................................................... 18

Minn. Stat. § 363A.26 .................................................................. 7, 18

Minn. Stat. § 363A.26 subd.1 ............................................................ 2

## Other Authorities

Fed. R. Evid. 702 .......................................................................... 5

H.F. 4109, 2024 Leg., 93rd Sess. (Minn. 2024) ..................................... 7

## ARGUMENT

## I.  Plaintiffs' Claims Prevail

### A. *Carson* Controls

MDE fails to distinguish *Carson*. It argues *Carson* was "about a … voucher program," since Maine "does not operate public schools statewide." ECF No. 113 ("MDE.Opp.") at 10. But MDE never explains why that matters. *Trinity Lutheran* was about "grants" to "purchase rubber playground surfaces." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 453 (2017). *Espinoza* was about "tax credit[s]" for "provid[ing] tuition assistance." *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464, 467-68 (2020). In neither of these voucher-like cases, nor in *Carson*, did the Court care whether the state "operate[d] public schools" or not. MDE.Opp.10. It only cared about whether religion was excluded from an otherwise generally available benefit. *Trinity Lutheran*, 582 U.S. at 462 (rule is "clear"); *Espinoza*, 591 U.S. at 484 ("unremarkable"); *Carson v. Makin*, 596 U.S. 767, 778 (2022) ("repeatedly held").

Here, there is no avoiding that PSEO is a public benefit that lets high schoolers "earn college credit at no cost." Pl.Ex.1 at 21.[1] And Minnesota has repeatedly admitted the religious exclusion. MDE.Opp.30 ("Schools could … exit[] the PSEO market or eliminat[e] faith-tests"); Pl.Ex.25

---

[1] Plaintiffs refer to exhibits as identified in their Opposition to Defendants' Motion for Summary Judgment. ECF No. 118 ("Pl.Opp.") at 3 n.2.

("just asking them to choose between funding and a religious screener"). Being "put[] … to [this] choice" triggers strict scrutiny. *Trinity Lutheran*, 582 U.S. at 462.

Maine too sought to distinguish its program as "free public education." *Carson*, 596 U.S. at 782. The Court rejected this definitional gamesmanship. *Id*. at 782-83 ("benefit" was high school "*tuition*" with "no suggestion" of "'public' education"). *A fortiori* here, where the benefit is "college credit" on "college campuses." Pl.Ex.1 at 21. Letting MDE "manipulate[]" definitions would reduce First Amendment protections to "simple semantic exercise." *Carson*, 596 U.S. at 784.

MDE next argues the Amendment doesn't exclude schools "because they are religious"; they just can't "discriminate in PSEO admissions." MDE.Opp.11. More word games. The Amendment facially targets religious institutions that "require a faith statement." Minn. Stat. § 124D.09, subd. 3(a); Reynolds.Tr.1.150:14-19 (schools with faith statements "become ineligible"). Only religious schools have faith statements. That targeting alone triggers strict scrutiny.

Also, under *Carson*, effects matter. And the *only* effect of the Amendment's nondiscrimination requirement is religious exclusion. Pre-Amendment, the MHRA already prohibited education discrimination, except that religious schools' admissions decisions were exempt. Minn. Stat. §§ 363A.23, 363A.26 subd.1. Thus, the Amendment's sole effect is to exclude the Schools from PSEO because of their religious admissions

standards.[2] Courts must look to "the substance of free exercise protections, not on the presence or absence of magic words." *Carson*, 596 U.S. at 785.

MDE's insistence that "Christian education" is incompatible with PSEO, MDE.Opp.28, 2, 4, 9, underscores its intent to exclude. And insistence on secularism was directly foreclosed by *Carson*. 596 U.S. at 789; *see also* ECF No. 90 ("Pl.MSJ") at 31-32; Pl.Opp.27-28, 41-42 & n.19.[3]

*St. Mary Catholic Parish v. Roy* is unavailing. There the court found no improper "purpose" and no "carve[] out" of religious institutions. No. 23-cv-2079, 2024 WL 3160324, at *21 (D. Colo. June 4, 2024). Here there are both: the sole intent and effect of the Amendment is to exclude schools with faith statements. *Supra*; *see also* Pl.MSJ.11-15 (legislators' statements). Moreover, *St. Mary* is wrong. Applied to religious organizations, a religious nondiscrimination requirement will always exclude communities of shared faith because it bars them from asking others to affirm their faith or "den[ies] the benefit." *Carson*, 596 U.S. at 785. Moreover, *Carson* doesn't require an explicit "carve[] out." *St. Mary*,

---

[2]  MDE concedes that the Schools admit LGBTQ students as long as they—like other applicants—affirm the Schools' religious teachings. MDE.Opp.9-10, 29. Thus, the only admission restrictions at issue are religion based.

[3]  Contra MDE.Opp.28, the Schools have long made clear they teach from a "Christian worldview" and construe MDE's nonsectarian requirement narrowly, as the First Amendment requires. Pl.Opp.42.

2024 WL 3160324, at *21. *Carson* derived from *Sherbert* and *Thomas*, 596 U.S. at 778, each of which involved an unemployment compensation regulation that was "neutral on its face," *Thomas v. Rev. Bd.,* 450 U.S. 707, 717 (1981). But those regulations "nonetheless offend[ed] the constitution[]" because they put plaintiffs "to a choice between fidelity to religious belief" and access to a benefit. *Id.*

*Anderson v. Laird* is likewise inapplicable. It involved military academies subject to the First Amendment, not private institutions as here. 466 F.2d 283 (D.C. Cir. 1972). Similarly, *B.W.C. v. Williams* supports the Schools, not MDE. It involved religious objections to "mandatory immunizations for school children." 990 F.3d 614, 617 (8th Cir. 2021). There was no constitutional violation because the policy included a religious exemption. *Id.* at 622. Finally, *Kim v. Board of Education* is also unavailing. It involved a benefit—the right to vote for a student representative to the school board—that was available to public school students only. 93 F.4th 733, 736 (4th Cir. 2024). The court found no violation because the law barred all "non-public-school students" from voting. *Id.* at 748. Similarly, here, it is true "[a] State need not subsidize private education." *Carson*, 596 U.S. at 779. But once it does, "it cannot disqualify some … solely because they are religious." *Id.* at 780.

## B. Strict Scrutiny Can't Be Met

Having triggered strict scrutiny, MDE cannot satisfy it. Its only governmental interests are "eradicat[ing] all forms of discrimination in

4

PSEO admissions" and not being "obligated to subsidize discrimination," MDE.Opp.14, 5-7, 12. These arguments were rejected in *Carson*. Brief of State Respondent at 42, *Carson*, 596 U.S. 767 (S. Ct. Oct. 22, 2021) (accusing schools of discriminating on sexual orientation and gender identity and arguing that "[t]his case is not about whether the schools have the right to behave in this manner … [but] only about whether Maine must fund [them]."); *see also Carson*, 596 U.S. at 803-04 (Breyer, J., dissenting) (arguing Maine's nondiscrimination interests should have prevailed). That ends the matter, regardless of what the parties' respective experts may say. MDE.Opp.13.[4]

In any case, MDE's expert testimony is too general to "help." Fed. R. Evid. 702; *Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 600 U.S. 181, 214 (2023) (equitable access "not sufficiently coherent for … strict scrutiny"). Here, nobody disputes LGBTQ students face hardships in education—at both public and private schools. GJ.Br.3-5, 8-9; FFRF.Br.10-11. But MDE's experts don't dispute the Schools work to foster "love," "humility, kindness, [and] mutual respect," Pl.Exs.9, 14; that there is no credible (non-hearsay) evidence of the Schools denying

---

[4] MDE's attack on Dr. Regnerus is unfounded and doesn't identify any deficiency in his expertise or testimony here. He has never been disqualified as a sociology expert or academically investigated. *See* Reply Baxter Decl. Ex. 1 at 36:1-37:14, 31:12-32:7. MDE's claim that he is "widely discredited" is based solely on Dr. McGuire's personal characterization. Opp.Ex.3 at 46:9-48:11.

admission to, disciplining, or dismissing LGBTQ students, Pl.Opp.31-32; and that LGBTQ students at private religious schools generally fare better than peers at non-religious schools, Pl.Opp.31-33. There's simply no evidence MDE has a compelling interest in excluding *these* Schools. *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418, 431 (2006) (strict scrutiny is "to particular religious claimants"). Considering the myriad strict scrutiny cases like *Carson* and *Fulton* rejecting broad antidiscrimination interests, *see* Pl.Opp.33-34, the district court opinion in *St. Dominic Acad. v. Makin*, No. 2:23-cv-246, 2024 WL 3718386 (D. Me. Aug. 8, 2024), is a thin reed for support. MDE.Opp.14-15.

MDE's asserted interest also can't be compelling because it is "underinclusive," leaving identically situated, non-PSEO dual-credit high schoolers, as well as those at religious high schools, outside the Amendment's scope. Pl.MSJ.43, 20; *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 546 (1993). Minnesota presumably has an interest in preventing discrimination against *all* high schoolers, not just PSEO students. The presence of public funding for some doesn't alone change the calculation. *Carson*, 596 U.S. at 788-89; *see also Hunter v. U.S. Dep't of Educ.*, No. 23-35174, 2024 WL 3998788, at *9 (9th Cir. Aug. 30, 2024) (protecting free exercise "fundamentally important" notwithstanding federal funding).

To the extent MDE argues its *sole* interest is "forbid[ding] discrimination in PSEO admissions," MDE.Opp.1, 14, it must show that interest is separately compelling. Instead, it argues educational harm generally. Moreover, focusing on *admissions* makes no sense. Soon after the Amendment passed, the Legislature amended the MHRA to exempt religious schools from *all* other nondiscrimination requirements. H.F. 4109, 2024 Leg., 93rd Sess. (Minn. 2024). Now, they may take "any action," so long as it is "[]related to [their] religious and educational purposes." Minn. Stat. § 363A.26. There is no logic, compelling or otherwise, in regulating PSEO admissions while simultaneously deregulating every other aspect of religious education for PSEO and non-PSEO students alike.

MDE's "compelling interest" is further undermined by having left that interest unattended for decades and now having consented to a preliminary injunction. Such conduct belies the argument that the Amendment can "brook no departures." *Fulton v. City of Philadelphia*, 593 U.S. 522, 542 (2021).

MDE's approach also lacks narrow tailoring. Pl.MSJ.24-26; Pl.Opp.36-38. MDE responds the Amendment is tailored because it achieves its sole goal—prohibiting faith statements—but that only undermines its neutrality argument. MDE.Opp.16-17. There can be no compelling interest in targeting "only" religion. And MDE never explains why the MHRA's narrower approach is insufficient to eliminate *invidious*

discrimination. Pl.MSJ.24-25; Pl.Opp.34, 37-38. MDE also claims Plaintiffs' have the burden, which is untrue. Strict scrutiny requires "Minnesota … to prove that [the law] is narrowly tailored." *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 754 (8th Cir. 2019) (cleaned up).

## C. The Amendment Is Not Neutral or Generally Applicable

### 1. The Amendment Burdens Plaintiffs' Religious Exercise

It is undisputed that both Schools' faith statements stem from a sincere religious desire to foster students' spiritual growth. Mathews.Tr.38:22-39:14; Cline-Cole.Tr.30:8-22. The families want their children to attend PSEO on such campuses. Loe.Tr.47:15-48:16. It's self-evident that the Amendment "put[s] substantial pressure" on Plaintiffs to "modify [their] behavior and to violate [these] beliefs." *Thomas*, 450 U.S. at 718.

MDE insinuates that Plaintiffs' beliefs are insincere because Plaintiffs admit or associate with LGBTQ individuals and non-Christians. MDE.Opp.9-10. But the Schools' explain how their beliefs inform admissions, and MDE cannot show these explanations are insincere. Mathews.Tr.40-43:7; Cline-Cole.Tr.16:2-17:5. Plaintiffs' "beliefs need not be acceptable … or comprehensible to others" to "merit First Amendment protection." *Thomas*, 450 U.S. at 714; *Holt v. Payne*, 85 F.4th 873, 878 (8th Cir. 2023).

### 2. The Amendment Is Not Neutral

First, the Amendment facially targets "faith statements" and "religio[us]" admissions. *See* Pl.MSJ.27-29. MDE doesn't dispute this. Rather, citing *Locke v. Davey*, it argues targeting is justified by the Schools' allegedly "unlawful conduct." MDE.Opp.47. But as the Supreme Court explained in *Espinoza*, the only reason *Locke* didn't violate the Free Exercise Clause was because the state had a "'historic and substantial' state interest in not funding the training of clergy." 591 U.S. at 480. There is "no comparable 'historic and substantial' tradition" here. *Id.* *Bronx Household of Faith v. Board of Education of City of New York*, 750 F.3d 184 (2d Cir. 2014), was decided before *Espinoza* and relied on an over-broad reading of *Locke*. *See* MDE.Opp.48. Moreover, it upheld only a narrow restriction against "worship services"; school facilities could still be used to "teach religion, sing hymns, recite prayers, and … advocate" religious views. *Id.* at 189. Thus, besides being wrong, *Bronx Household* barely extends beyond *Locke*. Deeming the Schools state actors, MDE also justifies its facial targeting under the Establishment Clause. MDE.Opp.48-49. But the Schools aren't state actors. Pl.MSJ.37-44, Pl.Opp.5-16.

Second, in enacting the Amendment, MDE and the Legislature acted from impermissible animus. Pl.MSJ.28-30. Attempting to rehabilitate evidence of hostility with "context" fails. MDE.Opp.49-55. MDE doesn't dispute that evidence. Pl.MSJ.9-15. It merely points to more benign

statements from staff and legislators. MDE.Opp.51-54. But this cannot redeem impermissible intent, particularly where no proponent of the Amendment disclaimed the hostile statements. *Masterpiece Cakeshop v. Colo. C.R. Comm'n*, 584 U.S. 617, 636 (2018). MDE's comparison to the sparse legislative record in *Tingley v. Ferguson*, 47 F.4th 1055, 1086 (9th Cir. 2022), does not establish otherwise.

### 3. The Amendment Is Not Generally Applicable

It is MDE, not Plaintiffs, that chases "false trails" on general applicability. MDE.Opp.45. The crux of MDE's position is to "equalize" PSEO admissions. MDE.Opp.45. Yet it does so selectively—prohibiting *religious* but not, for example, *academic* admissions criteria. MDE wants Plaintiffs to prove that academic criteria are "at least as harmful," but it's the one insisting access must be "equitable." MDE.Opp.45. MDE can't insist on "religious" equity while ignoring "intelligence" equity, *see* Reynolds.Tr.1.27:23-29:25, without triggering strict scrutiny. Allowing restrictions "based on [such] other [supposedly] 'non-discriminatory' criteria" undermines general applicability. *FCA v. San Jose Unified Sch. Dist.*, 82 F.4th 664, 688 (9th Cir. 2023) (en banc).

MDE also admits it wouldn't prohibit "classes on Anishinaabe philosophy and values" while insisting it still has the right to "enforce" its "nonsectarian requirement." MDE.Opp.45-46. That's not generally applicable. And having repeatedly raised the "nonsectarian" regulation

to justify its religious exclusion, MDE.Opp.2, 4, 9, 28, MDE should not now be heard to avoid the issue, *see* MDE.Opp.46.

Finally, it's false to say Ms. Loe seeks a "special carve-out" for "Christianity." MDE.Opp.46. She distinctly testified that "if … schools have a right to select students," letting Muslim schools have their own religious requirements "would be fair." Loe.Tr.63:9-64:6.

## D. The Amendment Discriminates Among Religions

MDE's only response to the Amendment's impermissible denominational preference is to complain that it triggers the Establishment, not Free Exercise, Clause. MDE.Opp.57. But *Larson v. Valente* is clear that this requirement is "inextricably connected" to both. 456 U.S. 228, 245 (1982). And MDE has no response to the fact that the Amendment's "faith statement" prohibition creates an even more "explicit and deliberate distinction[]" among religions than the criteria in *Larson*. *Id.* at 246 n.23; Pl.Opp.43.

## E. The Amendment Violates Church Autonomy

The breadth of MDE's argument confirms why the Schools need church autonomy. Pl.MSJ.33-34; Pl.Opp.44-45. MDE claims that if schools receive *any* public funds they qualify as state actors, thus losing the right to "provide Christian education," becoming subject to "the same [secular] rules as all other Institutions," and ceasing to be "religious organizations" altogether. MDE.Opp.23, 28, 32-33. Worse, MDE claims this deprivation of First Amendment rights happens "by operation of

[state] law." MDE.Opp.23. Such an effort to obtain "conformity" to matters of "faith" via "legislative fiat" is precisely what the First Amendment forbids. *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 107-08 (1952); *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 737 (2020) (religious governance should be "free from state interference").

### F. The Amendment Is an Unconstitutional Condition

MDE posits that the unconstitutional conditions doctrine is superfluous in this context, but the Eighth Circuit has established that it can void nondiscrimination requirements to protect First Amendment behavior. *Cuffley v. Mickes*, 208 F.3d 702, 709 (8th Cir. 2000). *AOSI* favors the Schools because it invalidated a condition due to its impact on First Amendment rights *outside* the program itself. *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 218 (2013). Here, prohibiting faith statements for PSEO affects the entire campus community, as PSEO students are fully integrated, meaning the condition "by its nature" is not "confined" to PSEO. *Id.* at 221.

### G. Plaintiffs Have Standing

Plaintiffs have already established that the Schools and families have standing, *see* Pl.Opp.19-22, and MDE's contrary arguments fail. First, the Court "need not consider" the families' standing because the Schools have standing. *See Horne v. Flores*, 557 U.S. 433 (2009). Regardless, MDE's contentions about the families' standing are unavailing. First,

R.L.'s and J.G.'s senior year has just begun, and the only reason they can participate in PSEO at the Schools is because the preliminary injunction saved the Schools from opting out of PSEO. If the Court rules for MDE, those programs will disappear, potentially as early as this spring.[5] Second, MDE points to no academic qualifications that O.L. and J.G. may not satisfy, and there is no evidence either student would not meet the Schools' requirements. Even if they were "unable to prove that [they] would have been admitted," denial of a student's ability "to compete for [a] place[] in the class" is a sufficient injury for standing. *Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 280 n.14 (1978).

Finally, testimony here establishes that O.L.'s plan to attend PSEO at Crown or Northwestern is more than mere "hope." Each of O.L.'s older siblings attended PSEO on campus at Crown or Northwestern, Loe.Tr.11:8-12:17; O.L. is choosing between those Schools for PSEO, Loe.Tr.20:7-18; her mother would have to "have serious conversations" about O.L. attending PSEO at any other school, Loe.Tr.26:15-28:8; and

---

[5] MDE cites emails to the Schools for the proposition it would not bar current students from finishing their PSEO program after the Amendment took effect. MDE.Opp.40 n.23. But an informal email exchange would not bind MDE from enforcing the statute. *Eckles v. City of Corydon*, 341 F.3d 762, 768 (8th Cir. 2003) (not even representation of nonenforcement to the Court would prevent city from "enforcing it immediately if it so chose").

13

O.L. plans to attend at the Schools if admitted, Compl. ¶ 66. O.L.'s intent is sufficiently concrete for standing.

## II. MDE's Counterclaims Fail

Although this Court previously concluded MDE had *parens patriae* standing, Plaintiffs maintain that the weight of authority precludes standing on this ground. *See* Pl.Opp.2-5. At the very least, Plaintiffs preserve these arguments for appeal.

For MHRA standing, MDE misrepresents *Tovar* and *Krueger*. *Krueger* held "a person is 'aggrieved' for purposes of the MHRA only if he is the person who was protected under the relevant substantive provision." *Dale v. U.S. Steel Corp.*, No. 13-cv-1046, 2015 WL 4138869, at *7 (D. Minn. July 2, 2015). In *Krueger*, that was the contracting provision. But the holding was not limited to that provision. In *Dale*, this court applied the same principle under the retaliation provision, because the plaintiff wasn't the protected person. *See id.* The Eighth Circuit did the same in *Tovar*, which involved the employment provision. *Tovar v. Essentia Health*, 857 F.3d 771, 775 (8th Cir. 2017). This Court should do likewise here. The education provision of the MHRA protects a "person seeking admission as a student." Minn. Stat. § 363A.13, subd. 2. Under *Krueger* and *Tovar*, only that person has standing to sue under that provision, not MDE.

14

**A. The Schools Are Not State Actors**

*Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), controls. There, the Supreme Court held a private school was not a state actor even when participating in an education program created, paid for, and regulated by the state. *Id.* at 840-43. MDE tries to distinguish *Rendell-Baker* as applying to "education writ large," not "free public education." MDE.Opp.22. What's the difference, according to MDE? The state pays for "free public education." Courts have consistently found this argument "foreclosed by *Rendell-Baker*" because receiving state funds does not make private schools state actors. *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 815 (9th Cir. 2010).

MDE doubles down, arguing that under Minnesota law "[a]ll schools supported … by state funds are public schools" and therefore state actors. MDE.Opp.23 (quoting Minn. Stat. § 120A.20, subd. 1(a)). This is wrong. Being designated "public" by state law is not enough to become a state actor—"unless the private entity is performing a traditional, exclusive public function." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 814 (2019). Education (even when funded by the state) has never been an

15

exclusive state function. Pl.Opp.8-9. Nor has dual-credit education.[6] Pl.MSJ.43-44.

Even if public designation were enough, MDE's argument would still fail. The PSEO Act does not designate *any* eligible institutions as public or require them to provide a "public" education. MDE relies on a separate, irrelevant statute concerning public elementary and secondary schools.[7]

MDE's claim is also wildly overbroad. If receiving state funds turned private schools public, practically *every* private school would be a state actor. This Court has applied *Rendell-Baker* to reject this argument about private schools in Minnesota multiple times. *Moton v. Park*

---

[6]   Certifying this question to the Minnesota Supreme Court would be futile. Even assuming PSEO is part of Minnesota's education obligation, that doesn't make dual-credit education the traditional and "exclusive province of the State." *Rendell-Baker*, 457 U.S. at 842.

[7]   MDE's contention that PSEO is just glorified high school is both wrong (courses must be "college level," Minn. Stat. § 124D.09, subd. 9(b)) and disingenuous. MDE's own witnesses testified that PSEO's purpose is enabling students "to earn college credits while they're in high school." Jett.Tr.37:18-21; *see also* Reynolds.Tr.1.170:10-22. MDE's claim that students don't get college credit until "*after* a student concludes PSEO," MDE.Opp.23, is again semantics. MDE's guidance is clear that "[c]redits … received at a postsecondary institution are on the student's record and count as courses completed at that institution" and are subject to transfer like any other college credit. Pl.Ex.2 at 21. And MDE's claim that G.L. "proves this point" because she "elected not to attend college" is mistaken. MDE.Opp.23. G.L. did not "do undergraduate studies from [Crown]," Loe.Tr.11:21-12:16, but she completed her undergraduate degree from Wheaton College in just three years with her PSEO credits.

*Christian Sch.*, No. 20-1201, 2022 WL 911797, at \*4 (D. Minn. Mar. 29, 2022) (Christian school not a state actor in admissions discrimination lawsuit); *J.S. v. St. Paul Acad. & Summit Sch.*, No. 11-1537, 2012 WL 591623, at \*3 (D. Minn. Feb. 22, 2012) (rejecting that private school "should be treated as a state actor because it receives state funding").

*Rendell-Baker* forecloses MDE's other arguments as the Supreme Court "rejected" them in a parallel tuition payment context. 457 U.S. at 841-43. MDE attempts to evade this by arguing the Schools have "made MDE complicit" in their admissions policies. MDE.Opp.24. MDE relies on two cases having nothing to do with state action, and one case where the state took "affirmative action designed to make private discriminations legally possible." *Reitman v. Mulkey*, 387 U.S. 369, 375 (1967). The Supreme Court has repeatedly held that passive acceptance of private conduct is insufficient—"the State must have 'significantly involved itself with invidious discriminations'" for this doctrine to apply. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173 (1972) (quoting *Reitman*, 387 U.S. at 380).[8] Even "[a]pproval by a state" of private conduct, where the state "has not put its own weight on the side of the proposed practice by ordering it, does not transmute a practice initiated by the [private

---

[8] *Ams. United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406 (8th Cir. 2007), is an inapposite prison case where the state actively supported the private actor. *See id.* at 423; Pl.Opp.14.

actor] and approved by the [state] into 'state action.'" *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 357 (1974). MDE has *never* ordered or actively supported the Schools' admissions practices. It has fought for years to *stop* them. Pl.MSJ.39-40.

### B. MDE's MHRA Claim Fails

Two provisions exempt the Schools from the MHRA. The first, which expressly allows a religious institution "to limit admission or give preference to applicants of the same religion," is *not* subject to any "secular business activities" carveout. Minn. Stat. § 363A.23, subd. 1. The second applies despite the carveout because PSEO is entirely aligned with the Schools' "religious and educational purposes," as demonstrated by their dual-credit programs outside of PSEO. Minn. Stat. § 363A.26; Pl.MSJ.43, 46-47.

The First Amendment also bars MDE's MHRA claim. The religion clauses "outlaw[]" "any attempt by government to dictate or even to influence" matters of internal religious governance, *Our Lady*, 591 U.S. at 746—including the "conformity" of members to "the standard of morals required of them." *Serbian E. Orthodox Diocese for U.S.A. & Canada v. Milivojevich*, 426 U.S. 696, 714 (1976); *see* Pl.MSJ.47-52. And "[t]here can be little doubt that requiring" the Schools to change their admissions requirements "would impair [their] ability to express" their religious message, in violation of the Speech and Assembly Clauses. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 863 (2006).

**CONCLUSION**

The Court should grant Plaintiffs' motion.


Dated: October 8, 2024          Respectfully submitted:


/s/ Eric S. Baxter
Eric S. Baxter*
   (DC Bar No. 479221)
Diana Verm Thomson*
Benjamin A. Fleshman*
Andrea R. Butler*
The Becket Fund for Religious
   Liberty
1919 Pennsylvania Ave. NW,
   Suite 400
Washington, DC 20006
Telephone: (202) 955-0095
Facsimile: (202) 955-0090
ebaxter@becketlaw.org

Richard C. Landon
   (No. 0392306)
Lathrop GPM
80 South Eighth Street
500 IDS Center
Minneapolis, MN 55402

*Admitted pro hac vice


*Counsel for Plaintiffs*