# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

MELINDA and MARK LOE,
*et al.*,

      *Plaintiffs,*

   v.

WILLIE JETT, *et al.*,

      *Defendants.*

Civil No. 0:23-cv-01527-NEB-JFD

**PLAINTIFFS'
MEMORANDUM IN
SUPPORT OF
MOTION FOR AWARD
OF ATTORNEY'S FEES,
EXPENSES, AND INTEREST**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................ii

INTRODUCTION ......................................................................... 1

ARGUMENT ................................................................................ 3

I.    Plaintiffs are entitled to attorney's fees. ..................................... 3

II.   Plaintiffs' attorney's fees are reasonable. .................................... 4

    A. Counsel's hours are reasonable. ................................................ 5

        1.  The total hours are reasonable. .......................................... 5

        2.  Counsel exercised reasonable billing judgment. ............... 10

    B. Counsel's hourly rates are reasonable. .................................. 11

        1.  Becket's D.C. rates should apply. ....................................... 12

        2.  Local counsel's requested rates are reasonable. ............... 18

    C. The lodestar amount is reasonable. ....................................... 19

III.  Plaintiffs' non-taxable expenses are reasonable. ........................ 19

IV.   Plaintiffs are entitled to interest. ............................................. 20

CONCLUSION.............................................................................. 20

CERTIFICATE OF COMPLIANCE .................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Belcastro-Gonzalez v. City of Omaha,*
　94 F.4th 1079 (8th Cir. 2024) ............................................................ 6

*Benson v. City of Lincoln,*
　774 F.Supp.3d 1046 (D. Neb. 2024) ................................................... 9

*Blum v. Stenson,*
　465 U.S. 886 (1984) .......................................................................... 19

*Carson v. Makin,*
　596 U.S. 767 (2022) .......................................................................... 13

*Casey v. City of Cabool,*
　2 F.3d 799 (8th Cir. 1993) ....................................................... 2, 3, 11

*Childress v. Fox Assocs., LLC,*
　932 F.3d 1165 (8th Cir. 2019) ............................................................ 5

*Childress v. Fox Assocs., LLC,*
　No. 4:16-cv-931, 2018 WL 3208558
　(E.D. Mo. June 29, 2018) ................................................................... 9

*City of Burlington v. Dague,*
　505 U.S. 557 (1992) .......................................................................... 19

*City of Riverside v. Rivera,*
　477 U.S. 561 (1986) ............................................................................ 7

*Darren Patterson Christian Acad. v. Roy,*
　699 F. Supp. 3d 1163 (D. Colo. 2023) ............................................. 14

*M.B. ex rel. Eggemeyer v. Tidball,*
　18 F.4th 565 (8th Cir. 2021) ............................................................... 4

*Ewald v. Royal Norwegian Embassy*,
No. 11-cv-2116, 2015 WL 1746375
(D. Minn. Apr. 13, 2015) ............................................................ 10-11

*Fish v. St. Cloud State Univ.*,
295 F.3d 849 (8th Cir. 2002) .......................................................... 5

*Franciscan All., Inc. v. Becerra*,
681 F. Supp. 3d 631 (N.D. Tex. July 11, 2023) ................................ 16

*Gracehaven, Inc. v. Montgomery Cnty.*
*Dep't of Job & Fam. Servs.*,
No. 3:24-cv-325, 2025 WL 1158079
(S.D. Ohio Apr. 21, 2025) .......................................................... 13-14

*Hall v. Sebelius*,
No. 13-cv-295, 2016 WL 424965
(D. Minn. Feb. 3, 2016) ................................................................ 10

*Hendrickson v. Branstad*,
934 F.2d 158 (8th Cir. 1991) ......................................................... 11

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ...................................................... 2, 6, 8, 10

*Jenkins ex rel. Jenkins v. Missouri*,
127 F.3d 709 (8th Cir. 1997) ........................................................... 3

*Jenkins v. Univ. of Minn.*,
No. 13-1548, 2017 WL 4657853
(D. Minn. Oct. 13, 2017) ............................................................... 20

*King v. Turner*,
No. 05-388, 2007 WL 1219308
(D. Minn. Apr. 24, 2007) .............................................................. 15

*League of Women Voters of Mo. v. Ashcroft*,
5 F.4th 937 (8th Cir. 2021) .................................................... 4, 5, 10

*Little Rock Sch. Dist. v. Arkansas*,
674 F.3d 990 (8th Cir. 2012) ...................................................... 6, 12

*Loffman v. Cal. Dep't of Educ.*,
119 F.4th 1147 (9th Cir. 2024) ........................................................ 13

*Miller v. Dugan*,
764 F.3d 826 (8th Cir. 2014) ........................................................... 11

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010) ......................................................................... 4

*Pinkham v. Camex, Inc.*,
84 F.3d 292 (8th Cir. 1996) .............................................................. 20

*Planned Parenthood, Sioux Falls Clinic v. Miller*,
70 F.3d 517 (8th Cir. 1995) .............................................................. 11

*In re RFC*,
399 F. Supp. 3d 827 (D. Minn. 2019) ................................................ 16

*Sanders v. Union Pac. R.R. Co.*,
No. 4:20-cv-3023, 2025 WL 90122
(D. Neb. Jan. 14, 2025) .................................................................... 9

*St. Mary Catholic Par. in Littleton v. Roy*,
154 F.4th 752 (10th Cir. 2025) ........................................................ 14

*Drummond ex rel. State v. Okla. Statewide*
*Virtual Charter Sch. Bd.*,
558 P.3d 1 (Okla. 2024) ................................................................... 14

*T&T Mgmt., Inc. v. Choice Hotels Int'l, Inc.*,
No. 24-1504, 2025 WL 2210887
(D. Minn. Aug. 4, 2025) ................................................................. 5-6

*Transclean Corp. v. Bridgewood Servs., Inc.*,
134 F. Supp. 2d 1049 (D. Minn. 2001) ............................................. 10

*Turner v. Gonzales*,
No. 01-cv-1407, 2007 WL 4911223
(D. Minn. Nov. 20, 2007) ................................................................ 11

*Warnock v. Archer,*
    397 F.3d 1024 (8th Cir. 2005) ............................................................. 3

*Woolard v. Thurmond,*
    152 F.4th 1050 (9th Cir. 2025) ......................................................... 14

**Statutes**

28 U.S.C. § 1961 ................................................................................... 20

42 U.S.C. § 1983 ..................................................................................... 3

42 U.S.C. § 1988 ........................................................................... 2, 3, 11

**Other Authorities**

Bd. of Governors of the Fed. Rsrv. Sys., *Daily Mkt.*
    *Yield on U.S. Treasury Secs. at 1-Year*
    *Constant Maturity from August 18, 2025*
    *to August 22, 2025* .......................................................................... 20

## INTRODUCTION

In May 2023, the Minnesota Legislature passed an Amendment to the Postsecondary Enrollment Options Act excluding schools from the PSEO program if they ask students to sign a "faith statement" or admit students on the basis of their religious beliefs. This was less than a year after the Supreme Court held in *Carson v. Makin* that the Free Exercise Clause forbids excluding participants from government programs based on their religion or their religious use of government funds. With the law set to take effect July 1, 2023, and with students already admitted for fall classes, Plaintiffs Crown College and University of Northwestern – St. Paul, along with two families, hired the Becket Fund for Religious Liberty and Lathrop GPM to vindicate their rights under *Carson* and protect their decades-long participation in the PSEO program.

Early in the litigation, the Minnesota Department of Education (MDE) agreed to a preliminary injunction of the Amendment, thereby allowing Plaintiffs' students to remain in the PSEO program without forcing the Schools to sacrifice their religious educational ministries, and ensuring that the case would go to summary judgment before resulting in an appealable order. MDE then filed counterclaims against the Plaintiff Schools, arguing—ultimately unsuccessfully—that schools in the PSEO program were state actors neither eligible for the protection of the Free Exercise Clause nor free to exercise religion under the Establishment

1

Clause. MDE then pursued extensive, aggressive discovery over Plaintiffs' objections. Two and a half years later, Plaintiffs have now won summary judgment and a final order securing their participation in the PSEO program. As the prevailing parties, Plaintiffs now seek the attorney's fees to which they are entitled under federal law.

Congress enacted 42 U.S.C. § 1988 to enable prevailing plaintiffs in civil rights actions to recover their attorney's fees from government defendants who violate their rights. This fee-shifting provision is designed to help "ensure 'effective access to the judicial process'" for those whose rights have been violated, *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), and to "impos[e] the cost of rights violations on the violators," *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993). Having vigorously defended its unconstitutional Amendment, MDE must now pay Plaintiffs' attorney's fees.

These fees are calculated by multiplying the attorneys' reasonable hourly rates by the number of hours reasonably expended. While Plaintiffs' attorneys have exercised billing judgment and discounted 13.9% of their hours, the favorable results they have achieved indicate that the hours they have expended are in fact reasonable. And the rates that Plaintiffs claim reflect their complete victory in this complex First Amendment case. This Court should award those fees in full.

## ARGUMENT

Plaintiffs are the prevailing parties in this suit and are accordingly entitled to reasonable attorney's fees under 42 U.S.C. § 1988(b). Plaintiffs request an award totaling **$3,652,779.63**, which represents their reasonable attorney's fees and non-taxable expenses. Plaintiffs also request the Court award post-judgment interest.

## I. Plaintiffs are entitled to attorney's fees.

 "The 'prevailing party' in a § 1983 action is generally entitled to 'a reasonable attorney's fee.'" *Warnock v. Archer*, 397 F.3d 1024, 1026 (8th Cir. 2005) (quoting 42 U.S.C. § 1988(b)). Congress authorized such fee-shifting under 42 U.S.C. § 1988 to "promote diffuse private enforcement of civil rights law by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators." *Casey*, 12 F.3d at 805. Where "the plaintiff has won excellent results, he is entitled to a fully compensatory fee award." *Jenkins ex rel. Jenkins v. Missouri*, 127 F.3d 709, 716 (8th Cir. 1997).

Plaintiffs prevailed on their Free Exercise claims brought under 42 U.S.C. § 1983 and the Minnesota Constitution. Dkt. 147 at 47. As the Court recognized, this afforded Plaintiffs "complete relief," *id.* at 58, and

3

Plaintiffs also prevailed on all of Defendant MDE's counterclaims, *id.* at 60, 69, 70.[1] A full fee award is thus merited.

## II. Plaintiffs' attorney's fees are reasonable.

To calculate a reasonable fee award, courts use the "lodestar approach." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). Performing the "lodestar calculation … involves multiplying the number of hours reasonably expended on the case by the reasonable hourly rates" to come to a "*rough* approximation of what an attorney would charge a paying client." *M.B. ex rel. Eggemeyer v. Tidball*, 18 F.4th 565, 568 (8th Cir. 2021) (cleaned up) (emphasis in original). This calculation "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Perdue*, 559 U.S. at 553. "[T]here is a strong presumption that the lodestar figure is reasonable." *League of Women Voters of Mo. v. Ashcroft*, 5 F.4th 937, 939 (8th Cir. 2021).

Plaintiffs' request for **$3,480,651** in attorney's fees is predicated on this method—and both the hours billed and hourly rates are reasonable. Of this total, Plaintiffs request an award of **$3,423,469** for primary counsel, the Becket Fund for Religious Liberty (Becket) and $57,182 for local counsel, Lathrop GPM.

---

[1]  The only requested relief Plaintiffs did not receive was compensatory damages, because this Court determined that the parties' stipulation to a preliminary injunction prevented actual damages from accruing. Dkt. 147 at 58 n.58.

## A. Counsel's hours are reasonable.

The first step in calculating the lodestar is to determine whether the total number of hours claimed is reasonable and whether specific hours claimed are reasonably expended. *League of Women Voters*, 5 F.4th at 939. Billing records that "satisfactorily document [the] time" expended are sufficient to "calculate the hours worked" by counsel. *Childress v. Fox Assocs., LLC*, 932 F.3d 1165, 1172 (8th Cir. 2019).

### 1. The total hours are reasonable.

Together, Plaintiffs' counsel spent 4,385.1 hours litigating this case. Becket spent 4,260.6 total hours, and Lathrop GMP spent 124.5 total hours. Thomson Decl. Ex. A; Landon Decl. Ex. K. Counsel have exercised their billing judgment to reduce Becket's hours by 590.5 for a total of 3,794.6 claimed hours by both firms. Thomson Decl. Ex. A.

"The most critical factor in assessing fees is the degree of success obtained." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 852 (8th Cir. 2002). Here, that factor weighs heavily in favor of counting all of counsel's hours as reasonable. Counsel won "complete relief" for Plaintiffs, as the Court declared the challenged Amendment unconstitutional and struck it in its entirety from the PSEO statute. Dkt. 147 at 58, 70. This Court also dismissed MDE's counterclaims in their entirety. *Id.* at 58, 69.

In addition to degree of success, courts also consider "'the time and labor required' and 'the novelty and difficulty of the questions.'" *T&T Mgmt., Inc. v. Choice Hotels Int'l, Inc.*, No. 24-1504, 2025 WL 2210887, at

*3 (D. Minn. Aug. 4, 2025) (quoting *Hensley*, 461 U.S. at 430 n. 3). Specifically, courts should take into account whether the non-prevailing party raises a "large number of issues" and advances a "novel legal theory," in assessing whether even "an unusually high number" of total hours billed are reasonable. *Little Rock Sch. Dist. v. Arkansas*, 674 F.3d 990, 997 (8th Cir. 2012).

For example, in *Belcastro-Gonzalez v. City of Omaha*, the Eighth Circuit affirmed the district court's finding that the number of total hours expended by the prevailing party's counsel "was reasonable," even though it was "debatable whether the [prevailing party's] legal team proceeded with maximum efficiency." 94 F.4th 1079, 1082 (8th Cir. 2024). This was because the Court held that this was "a case that 'involved several thorny evidentiary issues,' as well as 'extensive motion practice, discovery, and trial where the defendant mounted a vigorous defense.'" *Id.*

Here, the Defendants' litigation choices made this case considerably more complex and costly than was necessary. On July 6, 2023, soon after filing their complaint, Plaintiffs asked this Court for permission to file an early summary judgment motion on their First Amendment claims, noting that the claims "can be resolved without the need for discovery." Dkt. 24 at 1. The Court granted that motion. Dkt. 25. But on July 7, 2023, Defendants filed six counterclaims and insisted discovery was necessary on all counterclaims. Dkt. 28 at 2. With this development, the Court re-

voked permission for Plaintiffs to file an early summary judgment motion. Dkt. 29. Plaintiffs then moved to dismiss Defendants' counterclaims, but this Court denied that motion to allow the parties "to develop the factual record through discovery." Dkt. 66 at 10.

Over Plaintiffs' objections, Defendants then insisted on broad discovery, significantly expanding the time and effort required to litigate this case. After Plaintiffs' initial production, Defendants moved to compel significant further discovery from Plaintiffs (which also required Plaintiffs' counsel to travel to appear before this Court). *See* Dkt. 52. Defendants also insisted on deposing four witnesses, and, over Plaintiffs' objections to expert discovery (*see* Dkt. 30 at 7), disclosed two expert witnesses requiring depositions and rebuttal expert reports, *see* Dkt. 97-25 (Dr. Jenifer McGuire expert report); Dkt. 97-26 (Dr. Stephen Shoemaker expert report); Dkt. 119-2 (Dr. Mark Regnerus rebuttal expert report).[2] Defendants "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986).

---

[2] Plaintiffs also retained two additional rebuttal experts, Dr. Chris Armstrong and Dr. Mark Hall, who prepared reports responding to MDE's expert Dr. Stephen Shoemaker. Thomson Decl. ¶ 30. MDE, however, all but abandoned its attempt to use Dr. Shoemaker's testimony at summary judgment, making it unnecessary for Plaintiffs to present those rebuttal reports to this Court.

Defendants' counterclaims against the Plaintiff Schools added to the complexity of the litigation. Notably, there is a "common core of facts" between Plaintiffs' claims and MDE's counterclaims, meaning Plaintiffs' hours expended in defending the counterclaims are reasonably included in the fee award. *Hensley*, 461 U.S. at 435. Thus, the "court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

Illustrative of the common core of facts is Defendants' unsuccessful arguments in response to the Plaintiffs' claims that the Schools lacked standing to bring their First Amendment claims because they were state actors. Dkt. 147 at 29. The premise that the Schools were state actors was also the central legal and factual question in MDE's constitutional counterclaims. Because "the Schools are not state actors when they admit PSEO students," MDE's counterclaims, like their standing arguments, failed. Dkt. 147 at 59. As this Court recognized, the question of whether Plaintiffs were state actors was a "necessarily fact-bound inquiry," Dkt. 66 at 10, and was therefore a significant focus of discovery. Because both Plaintiffs' affirmative claims and MDE's counterclaims share a "common core of facts," Plaintiffs can recover fees for the time counsel spent working on all claims and counterclaims in the case.

The hours expended are documented in the contemporaneous billing records in Exhibits C, D and K.[3] It is these records that determine the reasonable number of hours expended. *Childress v. Fox Assocs., LLC*, No. 4:16-cv-931, 2018 WL 3208558, at *2 (E.D. Mo. June 29, 2018), *aff'd*, 932 F.3d 1165 (8th Cir. 2019). Any records provided by Defendants of *their* counsel's time are "not especially helpful" in determining the reasonableness of the prevailing party's hours. *Sanders v. Union Pac. R.R. Co.*, No. 4:20-cv-3023, 2025 WL 90122, at *4 (D. Neb. Jan. 14, 2025); *accord Childress*, 2018 WL 3208558, at *2 ("little relevance"). Here, Plaintiffs' counsel's hours are eminently reasonable given the prolonged, controversial, and complex nature of the litigation. *See* Thomson Decl. ¶¶ 34-41; Landon Decl. ¶¶ 15-25; Schaerr Decl. ¶¶ 17-26; *see also Benson v. City of Lincoln*, 774 F.Supp.3d 1046, 1081-82 (D. Neb. 2024) (when determining whether hours were "reasonably expended, the district court may consider whether the claims at issue were 'complex and cutting edge' or 'factually and legally straightforward'").

Nevertheless, in the exercise of billing judgment, counsel for Becket has significantly reduced the hours for which it seeks fees—by 13.9%, requesting fees for only 3,670.1 hours. Thomson Decl. ¶¶ 24-26. Plaintiffs request the full number of hours claimed by local counsel Lathrop GPM,

---

[3]  Redactions in the time entries are to preserve attorney-client privilege, attorney work product, or both.

as these are fees that were already paid by Plaintiffs, some at a discounted rate.

### 2. Counsel exercised reasonable billing judgment.

Plaintiffs' counsel have also "exercise[d] 'billing judgment' with respect to hours worked," and have already made an "effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Transclean Corp. v. Bridgewood Servs., Inc.*, 134 F. Supp. 2d 1049, 1052 (D. Minn. 2001) (quoting *Hensley*, 461 U.S. at 437).

Counsel eliminated 320.8 hours for entries deemed excessive, redundant, administrative, or containing vague block-billing, and for time spent on fee negotiations and preparing this Motion for fees and costs. *See Hall v. Sebelius*, No. 13-cv-295, 2016 WL 424965, at *6 (D. Minn. Feb. 3, 2016) ("block billing does not present a bar to recovery as long as it does not obscure the Court's ability to evaluate the tasks performed").

Counsel also cut 165.5 hours of paralegal time and 104.2 hours billed by attorneys who worked marginally on the case. *See* Thomson Decl. ¶ 25.

In total, counsel cut 590.5 hours, or 13.9%, from Becket's fee request. Thomson Decl. ¶ 26. Such reductions demonstrate that counsel exercised billing judgment. *See League of Women Voters*, 5 F.4th at 939 (affirming award where counsel "voluntarily reduced [the] amount" of hours requested by 13% to "avoid duplicative billing"); *Ewald v. Royal Norwegian Embassy*, No. 11-cv-2116, 2015 WL 1746375, at *18 (D. Minn. Apr. 13,

2015) (finding "Plaintiff's counsel exercised prudent judgment" by offering 6% "proposed reduction to fully reflect any unrelated or unnecessary work").

### B. Counsel's hourly rates are reasonable.

Congress authorized the fee shifting provision in 42 U.S.C. § 1988 to "promote diffuse private enforcement of civil rights law by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators." *Casey*, 12 F.3d at 805. Accordingly, the goal of the fee shifting provision is to "shift the *true full cost* of enforcement to the guilty parties to eliminate any obstacle to enforcement." *Id.* (emphasis added).

In evaluating a reasonable hourly rate, courts should consider "the opportunity cost of the lawyer's time," "the complexity of the litigation[,] and the relevant market for legal services from which the plaintiff had to choose." *Miller v. Dugan*, 764 F.3d 826, 831 (8th Cir. 2014). Fees beyond the prevailing local rates may be justified where counsel have "special skill and experience" as "nationally-prominent federal civil rights counsel." *Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991). This is particularly true where counsel handle this "kind of work routinely" and "are leaders in the field." *Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995). It is thus appropriate to look beyond the rates "prevailing in a local community where those rates would not be 'sufficient to attract experienced counsel' in a specialized legal field."

*Little Rock Sch. Dist.*, 674 F.3d at 997; *see also Turner v. Gonzales*, No. 01-cv-1407, 2007 WL 4911223, at *4-5 (D. Minn. Nov. 20, 2007) (approving out-of-town rates).

### 1. Becket's D.C. rates should apply.

Becket's D.C. rates for First Amendment experts should apply to the work its attorneys provided on this case. Becket's proposed rates are based on those that its attorneys could reasonably expect to command for similar work in the D.C. market based on their specialized expertise in First Amendment religious liberty litigation. Thomson Decl. ¶ 37. Here, Becket's D.C. rates are warranted because it was reasonable for Plaintiffs to engage Becket for this representation.

Plaintiffs had no realistic alternative to engaging Becket for this case. "[I]t would have been difficult, if not impossible, for the Plaintiffs to retain counsel of similar skill and expertise on the First Amendment issues" presented in this case because "Becket attorneys possess significant expertise in religious liberty litigation—expertise not widely replicated in the local Minnesota legal market." Landon Decl. ¶ 13. Indeed, the Plaintiff Schools have previously engaged local counsel Lathrop GPM to represent it in litigation and other matters, such as employment disputes. Landon Decl. ¶ 9. But Lathrop GPM advised the Plaintiffs to retain Becket to challenge the Amendment because "Becket's specialized First Amendment expertise was necessary to bring a successful challenge

to the Amendment and to maximize the chance that Plaintiffs would receive the full relief they sought." Landon Decl. ¶ 12. And "[r]etaining appropriate counsel would have been all the more difficult given that local firms may be more hesitant to sue the State of Minnesota, particularly on politically contentious matters such as those raised in this case." Landon Decl. ¶ 14.

Further, it was reasonable for Plaintiffs to hire Becket because this case raised novel First Amendment questions. Gene Schaerr, a D.C.-area attorney with significant experience litigating high-stakes cases, affirms that Becket is "the best law firm in the nation specializing in religious liberty litigation." Schaerr Decl. ¶ 10; *see also* Thomson Decl. ¶¶ 9-14 (recounting Becket's record).

When this case was brought, Plaintiffs' claims were, and remain, on the "cutting edge of Free Exercise law." Schaerr Decl. ¶ 13. The Minnesota Legislature enacted the challenged Amendment less than a year after the Supreme Court's decision in *Carson v. Makin*, 596 U.S. 767 (2022). The precise contours and scope of the Court's holding in *Carson*, that "a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits," *id.* at 778, are still developing in courts throughout the country. *Compare Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1166-70 (9th Cir. 2024) (applying *Carson* to find violation of First Amendment), *and Gracehaven, Inc. v. Montgomery Cnty. Dep't of Job & Fam. Servs.*, No. 3:24-cv-325, 2025 WL 1158079, at

13

*4 (S.D. Ohio Apr. 21, 2025) (same), *and Darren Patterson Christian Acad. v. Roy*, 699 F. Supp. 3d 1163, 1185 (D. Colo. 2023) (same), *with St. Mary Catholic Par. in Littleton v. Roy*, 154 F.4th 752, 763-64 (10th Cir. 2025) (declining to apply *Carson*), *and Woolard v. Thurmond*, 152 F.4th 1050, 1056-57 (9th Cir. 2025) (determining entity was "sufficiently public" such that *Carson* did not apply), *and Drummond ex rel. State v. Okla. Statewide Virtual Charter Sch. Bd.*, 558 P.3d 1, 14 (Okla. 2024), *aff'd by an equally divided court sub nom.*, *Okla. Statewide Charter Sch. Bd. v. Drummond*, 605 U.S. 165 (2025) (similar). Thus, while it may be true that local attorneys could develop the First Amendment expertise necessary to litigate this kind of case if given sufficient time to prepare, Plaintiffs did not have the luxury of waiting for in-district attorneys to cultivate that expertise, as the Amendment was set to take effect within five weeks, before the next semester began. The Plaintiff Schools had already accepted PSEO students for the Fall 2023 semester, and their ministries were at significant financial risk. Dkt. 1 ¶¶ 113-15, 153-55. Becket was able to mitigate that risk by securing a preliminary injunction without even filing a motion and eventually won the case entirely.

"Becket is a leading law firm in developing the law" post-*Carson*, and it "secured" one of the first "significant Free Exercise victor[ies]" post-*Carson* in *Loffman*. Schaerr Decl. ¶ 14. Further, Becket "is actively litigating multiple other similar cases across the country"—each of which involves different applications of *Carson*. Schaerr Decl. ¶ 14. Here, the

14

Court found that this case fell on the protected side of *Carson*'s line because the "Faith Statement Ban … only excludes institutions from PSEO eligibility that require applicants to attest to their *faith*." Dkt. 147 at 40 (emphasis in original). That counsel attained "complete relief" for the Plaintiffs in advocating for a novel application of *Carson*, Dkt. 147 at 58, highlights that Becket's "experience in this area and expertise in religious liberty litigation [was] invaluable" in this case, Schaerr Decl. ¶ 14.

Becket's D.C. rates are:

|  | **Expert Rate** |
|---|---|
| Andrea Butler ('19) | $826/hour |
| Ben Fleshman ('20) | $708/hour |
| Diana Thomson ('09) | $1,188/hour |
| Eric Baxter ('00) | $1,404/hour |
| Kelly Oeltjenbruns ('18) | $826/hour |
| Reed Bartley ('21) | $708/hour |
| Rich Osborne ('22) | $648/hour |
| Paralegals | $258/hour |

The reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there. *See King v. Turner*, No. 05-388, 2007 WL 1219308, at *2 (D. Minn. Apr. 24, 2007). The Schaerr declaration confirms Becket's rates are reasonable for the D.C. area and are in fact "lower than the rates my firm and other firms at

which I have worked would charge their clients for attorneys of comparable seniority and expertise on a similar matter." Schaerr Decl. ¶ 18.

Courts can also consider counsel's previous fee awards in analogous cases. *See In re RFC*, 399 F. Supp. 3d 827, 851 (D. Minn. 2019). Here, Becket has received multiple fee awards with comparable rates:

 (1) *Franciscan Alliance, Inc. v. Becerra*, in which the Northern District of Texas, Wichita Falls Division, awarded Becket over $2.3 million. The court found that—in 2023—a rate of $1,200/hour for a Becket attorney with twenty-two years of experience and a rate of $700/hour for a Becket attorney with six years of experience was reasonable. 681 F. Supp. 3d 631, 645 (N.D. Tex. July 11, 2023); *see* Pls.' Mem. Supp. Mot. for Award of Att'y's Fees & Expenses at 14, *Franciscan All., Inc. v. Becerra*, No. 16-108 (N.D. Tex.), Dkt. No. 224. The court explained that these rates were reasonable, even if higher than local rates, because Plaintiffs' counsel Becket "participate[s] in a market requiring more specialized and sophisticated legal services" and "local counsel would be unable or unwilling to litigate this case." *Franciscan All.*, 681 F. Supp. 3d at 644-645.

(2) *InterVarsity Christian Fellowship v. University of Iowa* and *Business Leaders in Christ v. University of Iowa*, two cases in which the Southern District of Iowa, Davenport Division, awarded Becket over $1.8 million. The court found that—in 2021—a rate of $914/hour for a Becket Fund attorney with twenty-one years of experience and a rate of $759/hour for a Becket Fund attorney with thirteen years of experience

16

was reasonable. Order at 2 & n.1, 3, *InterVarsity Christian Fellowship v. Univ. of Iowa*, No. 18-cv-80 (S.D. Iowa Nov. 18, 2021), Dkt. No. 101; Order at 3, *Bus. Leaders in Christ v. Univ. of Iowa*, No. 17-cv-80, (S.D. Iowa, Nov. 10, 2021), Dkt. No. 147. The court explained that the rates "are reasonable given the complex nature of the issues in this case and the extensive experience Plaintiff's counsel has in constitutional litigation." Order at 3, *Bus. Leaders in Christ v. Univ. of Iowa*, No. 17-cv-80, (S.D. Iowa, Nov. 10, 2021), Dkt. No. 147. Because Becket attorneys were awarded these rates in Davenport, Iowa, it follows that comparable rates are warranted here.

And in another religious liberty case, the Western District of New York recently approved even higher out-of-district rates as reasonable for D.C.-practitioners specializing in First Amendment civil rights litigation. *See* Decision and Order, *His Tabernacle Family Church, Inc. v. James*, No. 6:22-cv-6486, 2025 WL 2945655 (W.D.N.Y. Sep. 2, 2025). Recognizing that the constitutional issues in the case "demanded far more than ordinary civil-litigation experience that an in-district attorney could supply," the court awarded rates as high as $1,795/hour for a partner at a private firm on the case, and as high as $1,400/hour for a Vice President and Senior Counsel at a firm specializing in religious liberty litigation. *Id.* at *4-7. One of Becket's attorneys, Andrea Butler, previously worked alongside the attorneys awarded fees in that litigation at a prior firm. She was

in the same class at that firm as attorneys awarded $950/hour. Thomson Decl. ¶ 39.

## 2. Local counsel's requested rates are reasonable.

Lathrop GPM's rates are reasonable rates for the local Minnesota market. Accordingly, this Court should approve Lathrop GPM's rates as reasonable rates for their requested fee award of $57,182. Those rates are:

| Attorney | Charged Rate |
|---|---|
| Kathryn Nash ('01) | $565/hour |
| Richard Landon ('11) | $450/hour-$490/hour[4] |
| Emily Mawer ('14) | $450/hour |
| Dion Farganis ('17) | $370/hour |
| Litigation support | $290/hour |

These rates reflect the rates that Lathrop GPM's clients in the local Minnesota area pay for the firm's services. Landon Decl. ¶¶ 21-24. Indeed, they are the rates the Plaintiff Schools have paid Lathrop in this matter. Lathrop GPM's rates are "reasonable for [the] type of work by attorneys of similar skill and experience" performed in this case. Landon Decl. ¶ 24.

---

[4]  Lathrop currently charges $625/hour for Richard Landon's time. Lathrop discounted the rate it charged for his time to the Plaintiffs due to the firm's reduced role in the litigation and staffing changes made during the pendency of the case. Landon Decl. ¶ 23.

**C. The lodestar amount is reasonable.**

Based on the hours reasonably expended and primary counsel's reasonable D.C. rates and local counsel's reasonable Minnesota rates, the lodestar amount is **$3,480,651.** *See* Thomson Decl. Ex. A; Landon Decl. Ex. K. "The novelty and complexity of the issues [are] fully reflected in the number of billable hours recorded by counsel," and "the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates." *Blum v. Stenson*, 465 U.S. 886, 898 (1984). Accordingly, no lodestar adjustment is required. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("'strong presumption' that the lodestar represents the 'reasonable' fee.").

**III. Plaintiffs' non-taxable expenses are reasonable.**

Plaintiffs also seek non-taxable expenses totaling **$172,128.63.**[5] That amount consists of $120.50 for service of process and summons expenses, $2,727.15 for printing costs, and $28,442.62 for travel. Thomson Decl. Ex. B; Landon Decl. Ex. J. It also includes $140,838.36 for discovery fees related to collecting, processing, and storing discovery materials. Thomson Decl. Ex. B. According to typical practice, these types of discovery costs are normally charged to the client by firms in Minnesota. Landon Decl. ¶ 17. Likewise, such electronic discovery fees are not part of Becket's

---

[5]  Plaintiffs filed a Bill of Costs seeking taxable expenses contemporaneously with this Motion.

"normal office overhead," and Becket contracted with Consilio, an eDiscovery vendor, "specifically to handle the large volume of eDiscovery data that was requested and provided by Defendants in this particular case." Thomson Decl. ¶ 29. These expenses are reasonable and recoverable. *Jenkins v. Univ. of Minn.*, No. 13-1548, 2017 WL 4657853, at *5-6 (D. Minn. Oct. 13, 2017); *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996) ("out-of-pocket expenses of the kind normally charged to clients by attorneys" should be "included as part of the reasonable attorney's fees awarded").

## IV. Plaintiffs are entitled to interest.

Plaintiffs are also entitled to post-judgment interest. *See* 28 U.S.C. § 1961(a). That interest runs from the date of judgment and is "computed daily to the date of payment." *Id.* § 1961(b). The rate is "equal to the weekly average 1-year constant maturity Treasury yield" "for the calendar week preceding" the judgment date. *Id.* § 1961(a). Here, judgment was entered on August 25, 2025, and the preceding weekly average is 3.91%. *See* Bd. of Governors of the Fed. Rsrv. Sys., *Daily Mkt. Yield on U.S. Treasury Secs. at 1-Year Constant Maturity from August 18, 2025 to August 22, 2025*, https://perma.cc/JWM2-5B7A. Plaintiffs thus request the Court order Defendants to pay appropriate post-judgment interest.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for attorney's fees of **$3,480,651** and non-taxable expenses of

**$172,128.63**. The Court should also award Plaintiffs post-judgment interest.

Dated: November 21, 2025             Respectfully submitted,

<u>/s/ *Diana Verm Thomson*</u>
Eric S. Baxter*
Diana Verm Thomson*
   (DC Bar No. 479221)
Benjamin A. Fleshman*
Andrea R. Butler*
The Becket Fund for
   Religious Liberty
1919 Pennsylvania Ave. NW,
   Suite 400
Washington, DC 20006
Telephone: (202) 955-0095
Facsimile: (202) 955-0090
dthomson@becketfund.org

Richard C. Landon
   (No. 0392306)
Lathrop GPM
80 South Eighth Street
500 IDS Center
Minneapolis, MN 55402

***Admitted pro hac vice***

*Counsel for Plaintiffs*

21

**CERTIFICATE OF COMPLIANCE**

This memorandum complies with the word limit of Local Rule 7.1(f) because it contains 4,561 words. The word count was generated using Microsoft Word, and the word count function was set to include all text, including headings, footnotes, and quotations, except those portions exempted by Local Rule 7.1(f)(1)(C). This memorandum also complies with the type-size limitations set out in Local Rule 7.1(h).

/s/ *Diana Verm Thomson*
Diana Verm Thomson