**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| MELINDA and MARK LOE, on their own behalf and as next friends of their children R.L. and O.L.; DAWN ERICKSON, on her own behalf and as next friend of her child J.G.; CROWN COLLEGE; and UNIVERSITY OF NORTHWESTERN – ST. PAUL, | Case No. 23-CV-1527 (NEB/JFD) |
| Plaintiffs, | ORDER ON MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INTEREST |
| v. | |
| WILLIE JETT, in his official capacity as Minnesota Commissioner of Education; and MINNESOTA DEPARTMENT OF EDUCATION, | |
| Defendants. | |

After prevailing at summary judgment, Plaintiffs move for a total award of $3,652,779.63 for attorneys' fees, expenses, and post-judgment interest. (ECF No. 164.) Plaintiffs were represented by the Becket Fund for Religious Liberty (primary counsel) and Lathrop GPM (local counsel). The State of Minnesota, by and through the Minnesota Department of Education and its Commissioner Willie Jett (together, "MDE"), does not dispute Lathrop's rates and hours but hotly contests Becket's. Because Becket requests reasonable attorneys' fees and costs given the nature of the litigation, Plaintiffs' motion (ECF No. 164) is granted in part.

## BACKGROUND

MDE administers a program for Minnesota high school students—the postsecondary enrollment option ("PSEO")—through which the State reimburses participating postsecondary institutions for academic credits provided at no additional cost to the PSEO-enrolled students. Minn. Stat. § 124D.09, subdiv. 13. In 2023, the Minnesota State Legislature amended the Postsecondary Enrollment Options Act to prohibit participating institutions from requiring a faith statement from a secondary student seeking to enroll and making discriminatory admission decisions. Minn. Stat. § 124D.09, subdiv. 3(a), as amended by H.F. 2497, 5th Engrossment, 93d Leg. at 74.12–74.15 (Minn. 2023) (the "Amendment").

Plaintiffs, two private religious schools and the families of students seeking to benefit from the PSEO program at religious schools, argued that the Amendment violated the First Amendment of the United States Constitution. (ECF No. 1 ¶¶ 161–233.) MDE counterclaimed that the schools, not the State, were violating the Constitution (and the Minnesota Human Rights Act). (ECF No. 27 ¶¶ 40–78.) After extended discovery, the parties cross-moved for summary judgment on all claims and counterclaims. (ECF Nos. 76, 87.)

The Court granted summary judgment to Plaintiffs, striking the Amendment in its entirety. (ECF No. 147.) In doing so, the Court reasoned that the faith statement ban violated the Free Exercise Clause and could not be severed from the nondiscrimination requirement. (*Id.* at 57–58 & n.57.[1])

---

[1] Page numbers reflect ECF pagination.

ANALYSIS

Because Plaintiffs prevailed in their federal civil rights action, the Court may, in its discretion, award them reasonable attorneys' fees and costs. 42 U.S.C. 1988(b); *Hensley v. Eckerhart*, 461 U.S. 424, 426 (1983).

I.      **Attorneys' Fees**

Plaintiffs move for attorneys' fees and expenses totaling $3,652,779.63. (ECF No. 164; ECF No. 165 at 9.) Of that, Becket claims $3,423,469.00 in fees for 3,670.1 hours of work, charged at rates for similar work as First Amendment specialists in the Washington, D.C. market. (ECF No. 166 ¶¶ 3–5; ECF No. 166-1.) Lathrop requests $57,182.00 in attorneys' fees at local rates for 124.5 hours of work, which MDE does not contest. (ECF No. 167 ¶ 18; ECF No. 167-2; ECF No. 174 at 1.) Having reviewed the billing records and accompanying affidavits, the Court agrees that Lathrop's fees are reasonable.

But MDE requests that the Court do rough justice and drastically reduce Becket's award by applying local rates and cutting the hours expended by a flat percentage of 60%. (ECF No. 174 at 2.) MDE contends that $536,737.00 would be a reasonable fee for Becket. (*Id.* at 44.)

As the party seeking fees, Plaintiffs have the burden of establishing that Becket's fees are reasonable, which requires submitting evidence supporting the rates claimed and hours worked. *Hensley*, 461 U.S. at 433–34, 437. To determine a reasonable fee, courts begin by calculating the lodestar—that is, the number of hours reasonably expended multiplied by reasonable hourly rates. *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019). "The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Accordingly, the Court may take into

3

account its "overall sense of [the] suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

*Hourly rates.* Although "a reasonable hourly rate generally means the ordinary fee for similar work in the community," the appropriate rate may be determined by reference to "a market for a particular legal specialization" when local community rates would "not be sufficient to attract experienced counsel in a specialized legal field." *Little Rock Sch. Dist. v. State Ark. Dep't of Educ.*, 674 F.3d 990, 997 (8th Cir. 2012) (per curiam) (citation modified). No matter the picture MDE tries to paint, this is not a case where Plaintiffs skipped straight to out-of-state counsel. *Cf. Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001). Here, Plaintiffs had already hired local counsel, and Lathrop referred Plaintiffs to Becket due to "the novel and complex First Amendment issues implicated." (ECF No. 167 ¶ 11.) The Court concurs that this case involved challenging questions of Free Exercise law, and their choice of counsel in this specialized area was reasonable.

In these circumstances, it is reasonable to apply out-of-state rates from Becket's home market of Washington, D.C. Becket's requested rates, ranging from $648.00 to $1,404.00 per hour, fall on the lower end of rates charged by comparable practitioners in that market. (ECF No. 166-1; ECF No. 168 ¶¶ 18–20.) In the Court's opinion, Becket has displayed the excellence implied by its higher rate. *Cf. Miller v. Dugan*, 764 F.3d 826, 831–32 (8th Cir. 2014).

*Hours expended.* Plaintiffs bear the burden of demonstrating that their billing records reflect a reasonable number of hours, making a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433. When billing records reflect excessive or duplicative hours, a flat percentage reduction is an appropriate remedy. *Quigley v. Winter*, 598 F.3d 938, 958–59 (8th Cir. 2010)

(reducing hours expended by flat percentage without disturbing hourly rates). Becket spent 4,260.6 hours working on this case, which it voluntarily reduced to 3,670.1 hours in an exercise of billing judgment. (ECF No. 166 ¶¶ 23–26; ECF No. 166-1.) These reductions included 320.8 hours for entries deemed excessive, administrative, or vague as well as 104.2 hours billed by attorneys who worked marginally on the case. (ECF No. 166 ¶¶ 23–26; ECF No. 166-4.)

MDE catalogues several objections to the billing records, all of which boil down to the core contention that Becket overlawyered this case at every stage. (ECF No. 174 at 30, 41–42.) MDE points to, for example, 143.56 hours spent drafting the complaint; 452.35 hours on fact depositions attended by as many as four Becket attorneys at once; and 978 hours on cross-motions for summary judgment, including 143.09 hours on oral argument.[2] (ECF No. 174 at 30, 32–34, 36.) Accordingly, MDE requests that the Court apply a 60% flat reduction to Becket's hours. (*Id.* at 41–42.)

The Court acknowledges the sticker shock of Becket's request. Typically, courts justify applying expert rates because counsel's expertise translates to "handl[ing] the case in a shorter length of time than a local lawyer, without comparable experience, would have needed." *Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995) (per curiam). But here, Becket's First Amendment prowess did not bring about a

---

[2] MDE also argues that Becket cannot recover any fees for the time spent on the unfiled motion for preliminary injunction and the unsuccessful motion to dismiss MDE's counterclaim. (ECF No. 174 at 31–32.) But the Court's "rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Hensley*, 461 U.S. at 435; *see also Miller v. Bd. of Regents of Univ. of Minn.*, 402 F. Supp. 3d 568, 594 (D. Minn. 2019) ("The fact that Miller did not prevail on every motion and every argument does not detract from her victory, nor does it mean that time spent litigating unsuccessful motions was unreasonable.").

correspondingly efficient volume of hours, even as compared to similar civil rights cases litigated by Becket itself. *See, e.g., Franciscan Alliance, Inc. v. Becerra*, 681 F. Supp. 3d 631, 643 (N.D. Tex. 2023) (3,197.25 hours for religious liberties litigation spanning six years, including two appeals); *Bus. Leaders in Christ v. Univ. of Iowa*, No. 17-CV-80 (SMR/SBJ) (S.D. Iowa, Nov. 10, 2021), ECF No. 147 (2,233.5 hours for religious liberties litigation involving preliminary injunction, discovery with eight depositions, cross-motions for summary judgment, and one appeal).

Even so, the volume of hours Becket expended reflects the demands of sophisticated and successful constitutional litigation against a well-resourced government defendant. Prevailing counsel who achieved complete relief—as Plaintiffs did here—are entitled to a "fully compensatory fee." *Hensley*, 461 U.S. at 435. Nor can MDE "litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, n.11 (1986) (plurality opinion) (citation omitted). MDE asserted counterclaims and sought expanded discovery; Plaintiffs urged the Court to decide the case on summary judgment without expanded discovery. (ECF Nos. 27, 30, 52.)

Having considered the reasonableness and necessity of the requested fees, as well as MDE's many arguments in opposition, the Court reduces by 10%, which the Court deems necessary to account for the number of timekeepers assigned to the matter and the number of hours they put in. As the Court observes above, the Court would have expected a greater efficiency resulting from the lawyers' expertise. Using the adjusted number of hours, and multiplying by the respective hourly rates, the Court awards the lodestar of $3,081,122.00.

## II.      Expenses

Becket also seeks non-taxable expenses in the amount of $172,128.63. That breaks down into $120.50 for service of process and summons expenses (ECF No. 167-1); $2,727.15 for printing costs (ECF No. 166-2 at 11); $28,442.62 for travel (*id.* at 2–10); and $140,838.36 for e-discovery fees related to collecting, processing, and storing discovery materials (*id.* at 10–11; ECF No. 166 ¶ 29). Expenses that are not taxable "costs" within the meaning of Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C. Section 1920 may nevertheless be awarded if they are normally billed to clients. *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294–95 (8th Cir. 1996) (per curiam).

MDE primarily takes issue with the $140,838.36 requested for contracting with Consilio Inc., an e-discovery vendor. (ECF No. 174 at 45–46.) Becket and Lathrop attest that these e-discovery fees are an out-of-pocket expense typically billed to clients. (ECF No. 166 ¶ 29; ECF No. 167 ¶ 17.) Becket further represents that it contracted with Consilio specifically to handle the e-discovery data in this case and does not have a standing contract with the vendor, such that these expenses are not part of its overhead. (ECF No. 166 ¶ 29.) The Court thus considers these fees recoverable. *Pinkham*, 84 F.3d at 294– 95; *cf. Minn. Chamber of Commerce v. Choi*, No. 23-CV-2015 (ECT/JFD), 2025 WL 2017206, at *5 (D. Minn. July 18, 2025).

As to the travel expenses, MDE reiterates its concerns about overstaffing. (ECF No. 174 at 46–47.) For the same reasons discussed in the context of determining the reasonable number of billable hours, the Court likewise reduces the travel expenses by 10% to $25,598.36.

Altogether, the Court awards $169,284.37 in reasonable expenses.

### III.   Post-Judgment Interest

Finally, Plaintiffs request post-judgment interest on the award of attorneys' fees, accruing from the date of the entry of summary judgment. (ECF No. 165 at 26.) Plaintiffs are entitled to post-judgment interest on the attorneys' fees, but that interest "will accrue from the date the court recognizes the right to such fees in a judgment." *Jenkins by Agyei v. Missouri*, 931 F.2d 1273, 1277 (8th Cir. 1991). As such, Plaintiffs' request for post-judgment interest is granted at the rate set by 28 U.S.C. § 1961(a), accruing from the date of this Order.

### CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.   Plaintiffs' Motion for Attorneys' Fees (ECF No. 164) is GRANTED IN PART AND DENIED IN PART.

2.   Plaintiffs are awarded attorneys' fees and expenses in the following amounts:

    a.   $3,138,304.00 in reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b);

    b.   $169,284.37 in reasonable expenses pursuant to 42 U.S.C. § 1988(b);

    c.   Post-judgment interest on the total judgment amount, calculated pursuant

to the formula set forth in 28 U.S.C. § 1961.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 28, 2026                                    BY THE COURT:

                                                        s/Nancy E. Brasel
                                                        Nancy E. Brasel
                                                        United States District Judge